DEBTOR-IN-POSSESSION REVOLVING CREDIT AGREEMENT

Dated as of November 1, 2010

among

AMERICAN PACIFIC FINANCIAL CORPORATION

Debtor and Debtor In Possession under Chapter 11 of the Bankruptcy Code,

as Borrower,


AMERICAN PACIFIC MANAGEMENT CORPORATION

as Lender

# TABLE OF CONTENTS

**Page**

RECITALS ..........................................................................................................................4

ARTICLE I DEFINITIONS ...............................................................................................4

    1.1      Defined Terms. .................................................................................................4
    1.2      Other Definitional Provisions. .........................................................................9
    1.3      Payment Terms; References to Money. ..........................................................10

ARTICLE II AMOUNT AND TERMS OF REVOLVING LOANS.................................10

    2.1      Revolving Loan Commitments. ......................................................................10
    2.2      Revolving Notes.............................................................................................11
    2.3      Procedure for Revolving Loans and Payments...............................................11
    2.4      Permanent Reduction of Revolving Loan Commitment...................................11
    2.5      Computation of Interest. .................................................................................12
    2.6      Prepayments....................................................................................................12
    2.7      Use of Proceeds..............................................................................................13
    2.8      Separate  Loans Not To Exceed Commitment.................................................13
    2.9      Superpriority Nature of Obligations. ..............................................................13
    2.10    Payment of Obligations. ................................................................................13
    2.11    No Discharge; Survival of Claims. ................................................................13

ARTICLE III REPRESENTATIONS AND WARRANTIES.........................................14

    3.1      Corporate Existence; Compliance with Law. .................................................14
    3.2      Corporate Power, Authorization, Enforceable Obligations. ...........................14
    3.3      No Legal Bar...................................................................................................14
    3.4      No Material Litigation. ...................................................................................15
    3.5      No Default.......................................................................................................15
    3.6      Taxes...............................................................................................................15
    3.7      Purpose of Loans.............................................................................................15
    3.8      Accuracy and Completeness of Information. ..................................................15
    3.9      The Interim Order. ..........................................................................................15
    3.10    Priority of Claims...........................................................................................16
    3.11    Reorganization Matters...................................................................................16

ARTICLE IV CONDITIONS PRECEDENT ...................................................................16

    4.1      Conditions to the Initial Loans Upon Entry of the Interim Order...............................16
    4.2      Conditions to Additional Loans upon entry of the Final Order. .....................17

ARTICLE V NEGATIVE COVENANTS ........................................................................18

    5.1      Limitation on Indebtedness.............................................................................18
    5.2      Limitation on Liens.........................................................................................18
    5.3      Limitation on Sale of Assets. .........................................................................18

ARTICLE VI TERMINATION...................................................................................................19
    6.1     Termination..........................................................................................................19
    6.2     Survival of Obligations Upon Termination of Financing Arrangements. ...................19

ARTICLE VII EVENTS OF DEFAULT; RIGHTS AND REMEDIES ......................................19
    7.1     Events of Default. .................................................................................................19
    7.2     Remedies.............................................................................................................21

ARTICLE VIII MISCELLANEOUS ........................................................................................22
    8.1     Amendments and Waivers. ...................................................................................22
    8.2     No Waiver; Cumulative Remedies. .......................................................................22
    8.3     Survival of Representations and Warranties...........................................................22
    8.4     Successors and Assigns; Participations and Assignments. ........................................22
    8.5     Counterparts.........................................................................................................22
    8.6     Severability. .........................................................................................................23
    8.7     Governing Law. ....................................................................................................23
    8.8     Submission To Jurisdiction; Waivers.  Borrowers and Lender ..................................23
    8.9     No Waiver.............................................................................................................23
    8.10    Waiver of Claims. .................................................................................................24

**LIST OF EXHIBITS**

| EXHIBIT NO. | DESCRIPTION |
| --- | --- |
| A | Promissory Note |

THIS DEBTOR-IN-POSSESSION REVOLVING CREDIT AND GUARANTY AGREEMENT, dated as of September __, 2010, between AMERICAN PACIFIC FINANCIAL CORPORATION, ("Borrower"), debtor and a debtor-in-possession in a case pending under Chapter 11 of Title 11 of the Bankruptcy Code (as defined in Section 1.1 (the "Chapter 11 Case")); AND AMERICAN PACIFIC MANAGEMENT CORPORATION ("Lender").

## RECITALS

WHEREAS, on September 21, 2010 (the "Petition Date"), the Borrower filed a voluntary petition with the Bankruptcy Court (as defined in Section 1.1) initiating the Chapter 11 Case and has continued in the possession of its assets and in the management of its business pursuant to Bankruptcy Code Sections 1107 and 1108;

WHEREAS, an immediate and on-going need exists for the Borrower to obtain additional funds in order to continue the operation of its business as debtor-in-possession under Chapter 11 of the Bankruptcy Code and, accordingly, the Borrower has requested that the Lender extend post-petition financing to the Borrower;

WHEREAS, the Lender is willing to make the Revolving Loan (as defined in Section 1.1) to the Borrower upon the terms and conditions set forth herein;

WHEREAS, all Exhibits hereto, or expressly identified to this Agreement, are incorporated herein by reference, and taken together, shall constitute but a single agreement.

NOW, THEREFORE, in consideration of the premises and the mutual covenants hereinafter contained, and for other good and valuable consideration, the parties hereto agree as follows:

## ARTICLE I
## DEFINITIONS

1.1     Defined Terms.

Capitalized terms used in the Loan Documents shall have (unless otherwise provided elsewhere in the Loan Documents) the following respective meanings and all Section references in the following definitions shall refer to Sections of the Agreement:

"Affiliate" shall mean, as to any Person, any other Person which, directly or indirectly, is in control of, is controlled by, or is under common control with, such Person. For purposes of this definition, "control" of a Person shall mean the power, directly or indirectly, either (a) to vote 5.0% or more of the securities having ordinary voting power for the election of directors of such Person or (b) to direct or cause the direction of the management and policies of such Person, whether by contract or otherwise;

"Agreement" shall mean this Debtor-in-Possession Revolving Credit Agreement, as the same may from time to time be amended, modified or supplemented.

"Asset Sale" shall mean any disposition of Collateral or series of related dispositions of Collateral.

"Bankruptcy Code" shall mean 11 U.S.C. §§ 101, et seq. as amended.

"Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Nevada.

"Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure, as the same may from time to time be in effect and applicable to the Chapter 11 Cases.

"Borrower" shall mean and refer to American Pacific Financial Corporation.

"Borrowing Availability" means, at any time, (a) the aggregate amount of the Maximum Commitment Amount at such time, *less* (b) the Carve-Out, *less* (c) the then Total Utilization of Revolving Loan Commitments.

"Business Day" shall mean a day other than a Saturday, Sunday or other day on which commercial banks in Nevada are authorized or required by law to close

"Change of Control" shall mean the occurrence of any of the following:

(a)    the acquisition directly or indirectly by any Person, or two or more Persons acting in concert (other than the Lenders) of (i) beneficial ownership (within the meaning of Rule 13d-3 of the Securities and Exchange Commission under the Securities Exchange Act of 1934) of thirty-five percent (35%) of the outstanding Voting Securities of the Parent or (ii) the power (whether or not exercised) to elect a majority of the Parent's directors;

(b)    Borrower's Chapter 11 Case shall be converted or dismissed.

"Chapter 11 Case" shall have the meaning ascribed thereto in the Preamble.

"Code" shall mean the Internal Revenue Code of 1986, as amended from time to time, and the regulations promulgated and rulings issued thereunder.

"Commitment Termination Date" shall mean the earliest of (a) the Maturity Date, (b) the date that is thirty (30) days after entry of the Interim Order by the Bankruptcy Court if the Final Order has not been entered by the Bankruptcy Court prior to the expiration of such thirty (30) day period, (c) the date of substantial consummation (as defined in section 1101 of the Bankruptcy Code and which for purposes of this Agreement shall be no later than the effective date) of a Reorganization Plan that is confirmed pursuant to an order of the Bankruptcy Court, and (d) the acceleration of the Revolving Loans and the termination of the Revolving Loan Commitments in accordance with the terms hereof, including Section 7.2.

*DIP Credit Agreement*

"Committees" shall mean collectively, the official committee of unsecured creditors and any other committee formed, appointed, or approved in the Chapter 11 Cases and each of such Committees shall be referred to herein as a Committee.

"Default" shall mean any of the events specified in Section 7.1, whether or not any requirement for the giving of notice, the lapse of time, or both, or any other condition, has been satisfied.

"Deposit Account" shall mean a "deposit account" as defined in Section 9-102 of the Uniform Commercial Code as in effect from time to time in the State of Nevada.

"Dollars" or "$" shall mean lawful currency of the United States of America.

"Event of Default" shall have the meaning ascribed thereto in Section 7.1.

"Existing Collateral" shall mean the Collateral supporting the Existing Credit Agreement.

"Final Closing Date" shall have the meaning ascribed thereto in Section 2.5.

"Final Order" means, collectively, the order of the Bankruptcy Court entered in the Chapter 11 Cases after a final hearing under Bankruptcy Rule 4001(c)(2) or such other procedures as approved by the Court which order shall be satisfactory in form and substance to Lender, and from which no appeal or motion to reconsider has been timely filed, or if timely filed, such appeal or motion to reconsider has been dismissed or denied (unless Lender waives such requirement), together with all extensions, modifications and amendments thereto, which, among other matters but not by way of limitation, authorizes the Borrower to obtain credit, incur Indebtedness, provides for the super priority of Lender's claims.

"Fiscal Year" shall mean any of the annual accounting periods of the Borrower ending on December 31 of each year.

"Initial Budget" shall mean collectively the Borrower's operating budget, on a consolidated basis, for the 13-week period commencing on the Interim Closing Date, which operating budget includes, on a line item basis, projected weekly cash receipts and all expenditures, all on a consolidated basis, proposed to be made during such 13-week period, and incorporates, without double counting, the variances permitted pursuant to the Postpetition Financing Orders, which operating budget additionally shall be in form and substance acceptable to the Lender.

"Interest Payment Date" means the first Business Day of each month.

"Interim Closing Date" shall mean November __, 2010.

"Interim Order" means, collectively, the order of the Bankruptcy Court entered in the Chapter 11 Cases after an interim hearing (assuming satisfaction of the standards prescribed in section 364 of the Bankruptcy Code and Bankruptcy Rule 4001 and other applicable law),

*DIP Credit Agreement*

together with all extensions, modifications, and amendments thereto, in form and substance satisfactory to Lender, which, among other matters but not by way of limitation, authorizes, on an interim basis, the Borrower to execute and perform under the terms of this Agreement.

"IRS" shall mean the Internal Revenue Service, or any successor thereto.

"Lender" shall have the meaning ascribed thereto in the preamble.

"Lien" shall mean (a) any mortgage, pledge, statutory deemed trust, hypothecation, assignment, deposit arrangement, encumbrance, lien (statutory or other), charge or other security interest or any preference, priority or other security agreement or preferential arrangement of any kind or nature whatsoever (including, without limitation, any conditional sale or other title retention agreement and any financing lease having substantially the same economic effect as any of the foregoing and the filing of any financing statement under the UCC (other than the filing of any such financing statement which states therein that such filing is a precautionary filing only and is filed in connection with "true leases" only) or comparable law of any jurisdiction), (b) any arrangement or agreement which prohibits any loan party from creating any mortgage, pledge, hypothecation, deposit arrangement, encumbrance, lien, charge or other security interest, or from entering into any agreement or arrangement described in clause (a) of this definition or (c) the sale, assignment, pledge or transfer for security of any accounts, general intangibles or chattel paper of any loan party with or without recourse.

"Litigation" shall have the meaning ascribed thereto in Section 3.4.

"Loans" shall mean the Revolving Loans.

"Loan Documents" shall mean the Agreement, the Revolving Notes and all other agreements, instruments, documents and certificates executed and delivered to, or in favor of, Lender and including all other pledges, powers of attorney, consents, assignments, contracts, notices, and all other written matter whether heretofore, now or hereafter executed by or on behalf of Borrower in connection with the Agreement or the transactions contemplated hereby. Any reference in the Agreement or any other Loan Document to a Loan Document shall include all exhibits thereto, and all amendments, restatements, supplements or other modifications thereto, and shall refer to such Agreement as the same may be in effect at any and all times such reference becomes operative.

"Material Adverse Effect" shall mean a material adverse effect on (a) the business, operations, property or condition (financial or otherwise) of the Borrower , (b) the ability of Borrower to fully and timely perform its Obligations or (c) the validity, priority or enforceability of this Agreement, any of the Revolving Notes or any of the other Loan Documents, or the rights or remedies of the Lenders hereunder or thereunder.

"Maturity Date" shall mean March 31, 2011.

"Maximum Commitment Amount" shall mean: (a) on and after the Interim Closing Date and prior to the Final Closing Date, $25,000, and (b) on and after the Final Closing Date, $75,000.

*DIP Credit Agreement*

"<u>Notes</u>" shall mean the Revolving Notes.

"<u>Notice of Revolving Loan</u>" shall have the meaning ascribed thereto in <u>Section 2.3</u>.

"<u>Obligations</u>" shall mean the unpaid principal of and interest on (including, without limitation, interest accruing after the maturity of the Revolving Loans) the Revolving Notes and under this Agreement, or any other document made, delivered or given in connection therewith or herewith, whether on account of principal, interest, reimbursement obligations, fees, indemnities, costs, or expenses.

"<u>Person</u>" shall mean an individual, partnership, corporation, limited liability company, business trust, joint stock company, trust, unincorporated association, joint venture, governmental authority or other entity of whatever nature.

"<u>Petition Date</u>" shall have the meaning ascribed thereto in the Recitals.

"<u>Postpetition Financing Orders</u>" shall mean the Interim Order and the Final Order.

"<u>Reimbursement Date</u>" shall have the meaning ascribed to it in <u>Section 2.4</u>.

"<u>Reorganization Plan</u>" shall mean a plan of reorganization or liquidation filed by the Borrower in the Chapter 11 Case.

"<u>Requirement of Law</u>" as to any Person shall mean the certificate of incorporation and bylaws or other organizational or governing documents of such Person, and any law, treaty, rule or regulation or determination of an arbitrator or a court or other governmental authority, in each case, applicable to or binding upon such Person or any of its property or to which such Person or any of its property is subject.

"<u>Responsible Officer</u>" shall mean, as to any Person, the chairman of the board of directors, the chief executive officer, the president, the vice president of such Person or, with respect to financial matters, the chief financial officer, the treasurer, the assistant treasurer (if the assistant treasurer is an officer or serves in the capacity of the chief financial officer of such Person) or controller (if the controller is an officer or serves in the capacity of the chief financial officer of such Person) of such Person.

"<u>Revolving Loan</u>" shall have the meaning ascribed thereto in <u>Section 2.1</u>, as such Revolving Loans may be increased by interest and Fees capitalized and added to the principal balance thereto pursuant to the terms of this Agreement.

"<u>Revolving Loan Commitment</u>" means Lender's commitment to make Revolving Loans to the Borrower as set forth herein.

"<u>Revolving Note</u>" shall have the meaning ascribed thereto in <u>Section 2.2</u>.

"<u>Subsidiary</u>" or "<u>Subsidiaries</u>" of a Person shall mean a corporation, partnership or other entity of which shares of stock or other ownership interests having ordinary voting power (other than stock or such other ownership interests having such power only by reason of the occurrence of a contingency) to elect a majority of the board of directors or other managers of such corporation, partnership or other entity are at the time owned, or the management of which is otherwise controlled, directly or indirectly through one or more intermediaries, or both, by such Person. Unless otherwise indicated, all references to Subsidiaries are to the Subsidiaries of Borrower.

"<u>Superpriority Claim</u>" shall mean a claim against the Borrower in which is an administrative expense claim having priority over any or all administrative expenses of the kind specified in Sections 503(b) or 507(b) of the Bankruptcy Code and over any and all administrative expenses or other claims arising under Sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code.

"<u>Supporting Obligations</u>" means all "supporting obligations" as such term is defined in the Uniform Commercial Code, including letters of credit and guaranties issued in support of accounts, chattel paper, documents, general intangibles, instruments, or investment property.

"<u>Total Utilization of Revolving Loan Commitments</u>" means, as at any date of determination, the sum of the aggregate principal amount of all outstanding Revolving Loans including interest and Fees that are capitalized and added to the principal balance of the Revolving Loans pursuant to the terms of this Agreement.

"<u>Voting Securities</u>" shall mean any class of capital stock of the Borrower or any of the Subsidiaries, as applicable, pursuant to which the holders thereof has the general voting power under ordinary circumstances to vote for the election of directors (irrespective of whether or not at the time any other class will has or might has voting power by reason of the occurrence of any contingency).

1.2    <u>Other Definitional Provisions</u>.

(a)    Unless otherwise specified therein, all terms defined in this Agreement shall have their respective defined meanings when used in the Notes or other document made or delivered pursuant hereto.

(b)    As used herein, in the Notes or other document made or delivered pursuant hereto, accounting terms relating to either Borrower and accounting terms partly defined in <u>Section 1.1</u>, to the extent not defined, shall have the respective meanings given to them under  normal and customary use.

(c)    The words "hereof", "herein" and "hereunder" and words of similar import when used in this Agreement shall refer to this Agreement as a whole, including all Exhibits, as the same may from time to time be amended, restated, modified or supplemented, and not to any particular section, subsection or clause contained in the Agreement or any such

*DIP Credit Agreement*

Exhibit.  The meanings given to terms defined herein shall be equally applicable to both the singular and plural forms of such terms.

(d)    Unless the context otherwise requires, each reference herein to any agreement, document or instrument (including the Loan Documents) shall be deemed a reference to such agreement, document or instrument as amended, restated, supplemented or otherwise modified from time to time.

(e)    The term "includes" and "including" shall not be construed to imply any limitation.

(f)    In this Agreement, in the computation of periods of time from a specified date to a later specified date, the word "from" means "from and including" and the words "to" and "until" each mean "to but excluding".  Periods of days referred to in this Agreement shall be counted in calendar days unless Business Days are expressly prescribed. Any period determined hereunder by reference to a month or months or year or years shall end on the day in the relevant calendar month in the relevant year, if applicable, immediately preceding the date numerically corresponding to the first day of such period, provided that if such period commences on the last day of a calendar month (or on a day for which there is no numerically corresponding day in the calendar month during which such period is to end), such period shall, unless otherwise expressly required by the other provisions of this Agreement, end on the last day of the calendar month.

        1.3    <u>Payment Terms; References to Money</u>.

Except as expressly set forth herein to the contrary, (a) all payments made by the Borrower shall be made in Dollars in respect of principal and interest on the Revolving Loans, and (b) to the extent not otherwise indicated, all amounts of money referenced herein shall mean and be references to amounts of money denominated in Dollars.

## ARTICLE II
## AMOUNT AND TERMS OF REVOLVING LOANS

        2.1    Revolving Loan Commitments.

Subject to the terms and conditions hereof (including without limitation the conditions precedent set forth in <u>ARTICLE IV</u> hereof),

Lender severally agrees to make Revolving Loans (each, a "<u>Revolving Loan</u>") to Borrower from time to time until the Commitment Termination Date in an aggregate principal amount at any one time outstanding not to exceed the Borrowing Availability; <u>provided</u> that Lender shall not be permitted or required to make any Revolving Loan if:

(a)    after giving effect thereto, the sum of the outstanding aggregate principal amount of Revolving Loan would exceed Lender's Revolving Loan Commitment; or

(b)      after giving effect thereto, the aggregate outstanding principal amount of Revolving Loan outstanding would exceed the Borrowing Availability.

Until the Commitment Termination Date, the Borrower may from time to time borrow, prepay the Revolving Loans in whole or in part, and re-borrow under this Section 2.1, all in accordance with the terms and conditions hereof (subject in particular to any reductions in Revolving Loan Commitments pursuant to Sections 2.4 and 0) and in accordance with the applicable Budget.  Each Revolving Loan shall be denominated in Dollars.

2.2      Revolving Notes.

The Revolving Loan made by Lender shall be evidenced by a promissory note of the Borrower made to the order of Lender substantially in the form of Exhibit A (a "Revolving Note"), with appropriate insertions as to date and principal amount, payable to the order of Lender and in a principal amount equal to the lesser of (a) the amount of the Revolving Loan Commitment and (b) the aggregate unpaid principal amount of all Revolving Loans made by Lender.  Each Revolving Note shall (i) be dated the Interim Closing Date, (ii) be stated to mature on the Maturity Date or such earlier date the Revolving Loans shall be due and payable in full, whether by acceleration or otherwise, pursuant to the terms of this Agreement and (iii) provide for the payment of interest.

2.3      Procedure for Revolving Loans and Payments.

(a)      The Borrower may borrow under the Revolving Loan Commitments until the Commitment Termination Date on any Business Day; provided that (i) the Borrower may not make more than one borrowing per calendar week Each borrowing under the Revolving Loan Commitment shall be in an amount equal to not less than $10,000 or a whole multiple of $10,000 in excess thereof.  Prior to 2:00 p.m. Nevada time on the Borrowing Date requested by the Borrower, Lender will make the amount of the Revolving Loan available to the account of the Borrower.

(b)      The Revolving Loan (including all interest and fees capitalized and added to the principal balance of the Revolving Loan) shall be paid in full on the Commitment Termination Date, pursuant to the terms herein.  Lender's Obligation to make Revolving Loan shall terminate at the close of business on the Business Day immediately preceding the Maturity Date, unless sooner terminated in accordance with the terms hereof.

2.4      Permanent Reduction of Revolving Loan Commitment.

The Borrower shall have the right, upon not less than five Business Days' notice, to terminate the Revolving Loan Commitment or, from time to time, to reduce permanently the amount of the Revolving Loan Commitment in whole, but not in part.  Such reduction of the Revolving Loan Commitment shall be accompanied by payment in full of all outstanding principal and accrued interest thereon, to and including the date of such prepayment, together with any additional amounts owing and any outstanding fees and expenses due and owing.

2.5      Interest Rates and Payment Dates.

*DIP Credit Agreement*

(a)     Each Revolving Loan (and all amounts capitalized and added to the principal balance of the Revolving Loans) shall bear interest at a rate *per annum* of six per cent (6.0%).

(b)     Notwithstanding the foregoing, in the event an Event of Default has occurred and is continuing, the Revolving Loan shall bear interest at a rate *per annum* equal to the rate set forth above plus 1.0% from the date of occurrence of such Event of Default until the date such Event of Default is cured or waived (after as well as before judgment).  In addition, should any interest on Revolving Loan or any other obligations payable hereunder not be paid when due (whether at the stated maturity, by acceleration or otherwise), such overdue amount shall bear interest (to the extent permitted by law in the case of interest on interest) at a rate *per annum* equal to rate set forth above <u>plus</u> 1.0%, in each case, from the date of such non-payment until such amount is paid in full (after as well as before judgment).

(c)     Accrued interest on the Revolving Loan will be capitalized and added to the outstanding principal balance of the Revolving Loan as of each Interest Payment Date.  Amounts representing interest which are capitalized and added to the outstanding principal balance of Revolving Loan, shall thereafter bear interest in accordance with this Section and otherwise be treated as a Revolving Loan for all purposes of this Agreement (except for purposes of determining the Total Utilization of Revolving Loan Commitments).   Interest accruing pursuant to <u>Section 2.5(b)</u> shall be payable from time to time on demand.

2.6     <u>Computation of Interest</u>.

(a)     Interest shall be calculated for the actual number of days elapsed on the basis of a hypothetical year of 360 days.

(b)     Each determination of an interest rate pursuant to any provision of this Agreement shall be conclusive and binding on the Borrower and the Lender in the absence of manifest error

2.7     <u>Prepayments</u>.

(a)     <u>Optional Prepayments</u>.  Borrower may, at any time and from time to time prepay the Revolving Loans, in whole or in part, without premium or penalty, upon irrevocable written notice to the Lender by 11:00 a.m. (Nevada time) on such date of prepayment, in each case specifying the date and amount of prepayment.  If any such notice is given, the amount specified in such notice shall be due and payable on the date specified therein, together with any amounts payable, accrued interest to such date on the amount prepaid and any outstanding fees and expenses then due and owing.

(b)     <u>Mandatory Prepayments</u>.

(i)     If at any time the Total Utilization of the Revolving Loan Commitments exceeds the Maximum Commitment Amount, Borrower shall repay the aggregate outstanding Revolving Loan to the extent required to eliminate such excess.

*DIP Credit Agreement*

2.8     Use of Proceeds.

The Borrower shall utilize the proceeds of the Revolving Loan solely (a) to pay certain fees and expenses of professionals retained by the Borrower.  Borrower shall not be permitted to use the proceeds of the Loans: (i) to finance in any way, any action, suit, arbitration, proceeding, application, motion or other litigation of any type adverse to the interests of Lender or its rights and remedies under this Agreement, the other Loan Documents, the Interim Order or the Final Order, (ii) to finance the payment of, or application for authority to pay, any prepetition claim without the Lender's prior written consent, (iii) to make any distribution under a Reorganization Plan in any Chapter 11 Case, (iv) to make any payment in settlement of any claim, action or proceeding, before any court, arbitrator or other governmental body without the prior written consent of Lender.

2.9     Separate  Loans Not To Exceed Commitment.

All Loans to the Borrower and all of the other Obligations of Borrower arising under this Agreement and the other Loan Documents shall constitute separate loans to the Borrower, evidence by a separate promissory note executed by the Borrower; provided, however, that the total outstanding balance of all loans by Borrower shall not exceed the Commitment amount.

2.10     Superpriority Nature of Obligations.

Borrower hereby covenants, represents and warrants that, upon entry of the Interim Order (and the Final Order, as applicable), the Obligations of the Borrower hereunder and under the Loan Documents: (i) pursuant to Section 364(c)(1) of the Bankruptcy Code, shall at all times constitute allowed administrative expense claims in the Chapter 11 Cases having priority over all claims against the Borrower now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kinds and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code (such superpriority status would be applicable to any proceeds from avoidance actions under the Bankruptcy Code).

2.11     Payment of Obligations.

Upon the maturity (whether by acceleration or otherwise) of any of the Obligations under this Agreement or any of the other Loan Documents, the Lender shall be entitled to immediate payment of such Obligations without further application to or order of the Bankruptcy Court.

2.12     No Discharge; Survival of Claims.

Borrower agrees that to the extent the Obligations hereunder are not satisfied in full, (i) its Obligations arising hereunder shall not be discharged by the entry of a order confirming a Reorganization Plan (and the Borrower pursuant to Section 1141(d)(4) of the Bankruptcy Code hereby waives any such discharge) and (ii) the superpriority administrative claim granted to Lender pursuant to the Interim Order and Final Order shall not be affected in any manner by the entry of an order confirming a Reorganization Plan in any Chapter 11 Case.

*DIP Credit Agreement*

ARTICLE III
REPRESENTATIONS AND WARRANTIES

To induce Lender to make the Loans, the Borrower makes the following representations and warranties to Lender with respect to Borrower, each and all of which shall survive the execution and delivery of this Agreement.

3.1     Corporate Existence; Compliance with Law.

Borrower (a) is  duly organized, validly existing and in good standing under the laws of its jurisdiction of incorporation; (b) is duly qualified as a foreign corporation and is in good standing under the laws of each jurisdiction where its ownership or lease of property or the conduct of its business requires such qualification, except where the failure to be so qualified could not reasonably be expected to have a Material Adverse Effect; (c) subject to the entry of the Interim Order (or the Final Order, when applicable) by the Bankruptcy Court, has the requisite corporate power and authority and the legal right to effect the transactions contemplated hereby and by the other Loan Documents to which it is a party; (d) subject to the entry of the Interim Order (or the Final Order, when applicable) by the Bankruptcy Court, has the requisite corporate power and authority and the legal right to including, without limitation, to own, pledge, mortgage or otherwise encumber and operate its properties, to lease the property it operates under lease and to conduct its business as now, heretofore and proposed to be conducted; and (e) is in compliance with all Requirements of Law except to the extent that the failure to comply therewith could not reasonably be expected to have a Material Adverse Effect.

3.2     Corporate Power, Authorization, Enforceable Obligations.

Upon entry by the Bankruptcy Court of the Interim Order (or the Final Order, when applicable), Borrower has the corporate power and authority, and the legal right, to make, deliver and perform the Loan Documents to which it is a party and to authorize the execution, delivery and performance of the Loan Documents to which it is a party.  Borrower has the appropriate power and authority to borrow hereunder and has taken all necessary corporate action to authorize the borrowings on the terms and conditions set forth in this Agreement and in the Notes. Subject to the entry of the Interim Order and the Final Order, the Agreement has been, and each other Loan Document to which it is a party will be, duly executed and delivered on behalf of Borrower. This Agreement constitutes, and each other Loan Document to which Borrower is a party when executed and delivered will constitute, a legal, valid and binding obligation of the Borrower, enforceable against the applicable Borrower in accordance with its terms,(whether enforcement is sought by proceedings in equity or at law).

3.3     No Legal Bar.

Except for the effect of the filing of the Chapter 11 Case, the execution, delivery and performance of the Loan Documents to which Borrower is a party, the borrowings by each Borrower hereunder and the use of the proceeds thereof (a) will not violate any Requirement of Law or Contractual Obligation of Borrower, (b) will not accelerate or result in the acceleration of any payment obligations of Borrower, and (c) will not result in, or require, the creation or

*DIP Credit Agreement*

imposition of any Lien on any of the respective properties or revenues of any Borrower pursuant to any such Requirement of Law or Contractual Obligation.

3.4      No Material Litigation.

No litigation, investigation or proceeding of or before any arbitrator or governmental authority (collectively, "Litigation") is pending or, to the knowledge of Borrower, threatened by or against Borrower (a) with respect to any of the Loan Documents or any of the transactions contemplated hereby or thereby, or (b) which could reasonably be expected to have a Material Adverse Effect.

3.5      No Default.

Borrower is not in default under, or with respect to, any of its Contractual Obligations in any respect which could reasonably be expected to have a Material Adverse Effect.  Immediately after giving effect to this Agreement, no Default or Event of Default has occurred and is continuing.

3.6      Taxes.

Borrower has filed or caused to be filed all tax returns which, to the knowledge of the Borrower are required to be filed.  Each Borrower has paid all taxes shown to be due and payable on said returns or on any assessments made against it or any of its property and all other taxes, fees or other charges imposed on it or any of its property by any governmental authority (other than any tax, fee or other charge the amount or validity of which is currently being contested in good faith by appropriate proceedings and with respect to which reserves in conformity with customary usage has been provided on the books of such Loan Party); and, no tax Lien has been filed, and, to the knowledge of Borrower, no claim is being asserted, with respect to any such tax, fee or other charge.

3.7      Purpose of Loans.

The Borrower shall not use the proceeds of any Revolving Loan hereunder (a) other than in accordance with this Agreement.

3.8      Accuracy and Completeness of Information.

All information, reports and other papers and data with respect to the Borrower (other than projections) furnished to the Lender by or on behalf of Borrower, were, at the time furnished, complete and correct in all material respects, or has been subsequently supplemented by other information, reports or other papers or data, to the extent necessary to give the Lender a true and accurate knowledge of the subject matter in all material respects. There is no fact known to any Loan Party which has, or could reasonably be expected to have, a Material Adverse Effect.

3.9      The Interim Order.

On the date of the making of the initial Revolving Loan hereunder, the Interim Order shall have been entered and shall not has been stayed, amended (without the Lender's prior written consent, which consent shall be in their sole discretion), vacated, reversed, rescinded or otherwise modified in any respect. On the date of the making of any Revolving Loan, the Interim Order or the Final Order, as the case may be, shall have been entered and shall not has been amended, stayed, vacated or rescinded without the Lender's consent. Upon the maturity (whether by the acceleration or otherwise) of any of the Obligations of the Borrower hereunder and under the other Loan Documents, the Lender shall be entitled to immediate payment of such obligations, and to enforce the remedies provided for hereunder, without further application to or order by the Bankruptcy Court.

3.10    <u>Priority of Claims</u>.

Upon the entry of the Interim Order, the Superpriority Claim status shall be as set forth herein.

3.11    <u>Reorganization Matters</u>.

(a)    The Chapter 11 Cases were commenced on the Petition Date in accordance with applicable law and proper notice thereof and the proper notice for the hearing for the approval of the Interim Order has been given and proper notice for the hearing for the approval of the Final Order will be given.

(b)    After the entry of the Interim Order, and pursuant to and to the extent permitted in the Interim Order and the Final Order, the Obligations will constitute allowed administrative expense claims in the Chapter 11 Cases having priority over all administrative expense claims and unsecured claims against Borrower now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expense claims of the kind specified in Sections 105, 326, 330, 331, 503(b), 506(c), 507(a), 507(b), 546(c), 726, 1114 or any other provision of the Bankruptcy Code, as provided under Section 364(c)(1) of the Bankruptcy Code.

(c)    The Interim Order (with respect to the period prior to entry of the Final Order) or the Final Order (with respect to the period on and after entry of the Final Order), as the case may be, is in full force and effect has not been reversed, stayed, modified or amended.

(d)    Notwithstanding the provisions of Section 362 of the Bankruptcy Code, upon the maturity (whether by acceleration or otherwise) of any of the Obligations, Lender shall be entitled to immediate payment of such Obligations and to enforce the remedies provided for hereunder, without further application to or order by the Bankruptcy Court.

ARTICLE IV
CONDITIONS PRECEDENT

4.1    <u>Conditions to the Initial Loans Upon Entry of the Interim Order</u>.

*DIP Credit Agreement*

The obligations of the Lenders to make the initial Revolving Loans in an amount not to exceed the Maximum Commitment Amount on the Interim Closing Date, or to take, fulfill, or perform any other action hereunder, until the following conditions has been satisfied or provided for in a manner satisfactory to the Lenders, or waived in writing by the Lender:

(a)    <u>Loan Documents</u>.  The Lender shall have received this Agreement, the Revolving Note and all other Loan Documents, each other agreement, documents and instruments relating to the loan and other credit transactions contemplated by this Agreement, each duly executed where appropriate and in form and substance satisfactory to the Lender.

(b)    <u>No Material Adverse Effect</u>.  No Material Adverse Effect shall have occurred with respect to Borrower, other than those which customarily occur as a result of events leading up to and following the commencement of a proceeding under Chapter 11 of the Bankruptcy Code and the commencement of the Chapter 11 Cases.

(c)    <u>Interim Order</u>.  Lender shall have received a copy of the Interim Order, inter alia, approving the transactions contemplated hereby and finding that the Lender is extending credit to the Borrower in good faith within the meaning of section 364(e) of the Bankruptcy Code.  Such Interim Order (i) shall be in form and substance satisfactory to Lender, (ii) shall have been entered upon an application of the Borrower reasonably satisfactory in form and substance to Lender, (iii) shall be in full force and effect and (iv) shall not has been stayed, reversed, vacated or rescinded or, without the consent of the Lender, modified or amended in any respect and, if the Interim Order is the subject of a pending appeal in any respect, neither the making of such Loans nor the performance by the Borrower of any of its Obligations hereunder or under the Loan Documents or under any other instrument or agreement referred to herein shall be the subject of a presently effective stay pending appeal.

(d)    <u>Litigation</u>.  No litigation shall have been commenced or be pending which has not been stayed by the commencement of the Chapter 11 Cases and which, if successful, would has a Material Adverse Effect on Borrower taken as a whole, their business or ability to repay the Revolving Loans or which would challenge this Agreement, Postpetition Financing Orders or the transaction contemplated thereby.

4.2    <u>Conditions to Additional Loans upon entry of the Final Order</u>.

The obligations of the Lender to make the additional Revolving Loans in an amount not to exceed the Maximum Commitment Amount on the Final Closing Date, or to take, fulfill, or perform any other action hereunder, until the following conditions has been satisfied or provided for in a manner satisfactory to the Lender:

(a)    <u>Conditions Set Forth In Section 4.1</u>.  Each of the conditions precedent set forth in Section 4.1 shall be in full force and continuing effect.

(b)    <u>Final Order</u>.  In no later than thirty (30) days after the Interim Closing Date, Lender shall have received a copy of the Final Order, <u>inter alia</u>, approving the transactions contemplated hereby and finding that the Lender is extending credit to the Borrower in good faith within the meaning of section 364(e) of the Bankruptcy Code.  Such Final Order (i) shall be

in form and substance satisfactory to Lender, (ii) shall have been entered upon an application of the Borrower reasonably satisfactory in form and substance to the Lender, (iii) shall be in full force and effect and (iv) shall not has been stayed, reversed, vacated or rescinded or, without the consent of the Lender, modified or amended in any respect and, if the Final Order is the subject of a pending appeal in any respect, neither the making of such Loans nor the performance by the Borrower of any of its Obligations hereunder or under the Loan Documents or under any other instrument or agreement referred to herein shall be the subject of a presently effective stay pending appeal..

## ARTICLE V
## NEGATIVE COVENANTS

From the date hereof and for so long as the Revolving Loan Commitments remain in effect, any Revolving Note remains outstanding and unpaid or any Obligation is owing to the Lender hereunder, Borrower hereby agrees that it will not, (and will not apply, unless in connection with an amendment to the Agreement that is reasonably likely to be approved by the Lender to the Bankruptcy Court for authority to):

5.1     Limitation on Indebtedness.

Create, incur, assume or permit to exist any Indebtedness, or enter into any agreement or binding commitment to create, incur, assume or suffer to exist any Indebtedness, except:

(a)     the Revolving Loans and the other Obligations created under this Agreement;

5.2     Limitation on Liens.

Create, incur, assume or permit to exist any Lien on or with respect to its Accounts or any of its other properties, assets or revenues, (whether now owned or hereafter acquired), except for the "Permitted Encumbrances":

(a)     inchoate Liens for taxes, assessments or governmental charges or levies or Liens for taxes, assessments, governmental charges or levies not yet due or which are being contested in good faith by appropriate proceedings; *provided* that adequate reserves with respect thereto are maintained on the books of the Borrower;

5.3     Limitation on Sale of Assets.

Convey, sell, lease, assign, transfer or otherwise dispose of any of its property, business or assets (including, without limitation, any Capital Stock, receivables and fee or leasehold interests), whether now owned or hereafter acquired, in each case, in one transaction or a series of transactions to any Person, except:

(a)     as otherwise approved in writing prior to the consummation thereof by Lender; and

*DIP Credit Agreement*

(b)    the sale or other disposition of obsolete or worn out property in the ordinary course of business and having a book value not exceeding $10,000 in the aggregate in any Fiscal Year, provided that the Net Disposition Proceeds of each transaction (if any) are applied in prepayment of the Revolving Loans.

Incur, create, assume, suffer to exist or permit any other Superpriority Claim or Lien which is pari passu with or senior to the claims of the Lender granted pursuant to this Agreement and the Postpetition Financing Orders.

ARTICLE VI
TERMINATION

6.1    Termination.

The financing arrangements contemplated hereby shall be in effect until the Commitment Termination Date, and the Loans and all other Obligations shall be automatically due and payable in full on such date.

6.2    Survival of Obligations Upon Termination of Financing Arrangements.

Except as otherwise expressly provided for in the Loan Documents, no termination or cancellation (regardless of cause or procedure) of any financing arrangement under this Agreement shall in any way affect or impair the obligations, duties and liabilities of the Borrower or the rights of Lender relating to any unpaid portion of the Loans or any other Obligations, due or not due, liquidated, contingent or unliquidated or any transaction or event occurring prior to such termination, or any transaction or event, the performance of which is required after the Commitment Termination Date.   Except as otherwise expressly provided herein or in any other Loan Document, all undertakings, agreements, covenants, warranties and representations of or binding upon the Borrower, and all rights of Lender, all as contained in the Loan Documents, shall not terminate or expire, but rather shall survive any such termination or cancellation and shall continue in full force and effect until the Commitment Termination Date.

ARTICLE VII
EVENTS OF DEFAULT; RIGHTS AND REMEDIES

7.1    Events of Default.

Notwithstanding the provisions of section 362 of the Bankruptcy Code and without application or motion to the Bankruptcy Court or any notice to Borrower, and subject to Section 7.2, the occurrence of any one or more of the following events (regardless of the reason therefor) shall constitute an "Event of Default" hereunder:

(a)    (i) Borrower shall fail to pay any principal of any Revolving Note when due in accordance with the terms thereof or hereof or (ii) Borrowers shall fail to pay any interest on any Revolving Note, any other Obligation or any other amount payable hereunder, within three days after any such interest or other amount becomes due in accordance with the terms thereof or hereof; or

*DIP Credit Agreement*

(b)    One or more judgments or decrees shall be entered after the Petition Date against the Borrower involving in the aggregate a liability (to the extent not covered by third-party insurance as to which the insurer has acknowledged coverage) of $10,000 or more, net of insurance proceeds, and all such judgments or decrees shall not has been vacated, discharged, stayed or bonded pending appeal within 30 days from the entry thereof; or

(c)    The occurrence of any additional "Event of Default" identified in the Interim Order (or, when applicable, analogous paragraph of the Final Order) not identified herein; or

(d)    The occurrence of any of the following in the Chapter 11 Case:

(i)    the dismissal of the Chapter 11 Case, or the conversion of the Chapter 11 Case from one under Chapter 11 to one under Chapter 7 of the Bankruptcy Code or Borrower shall file a motion or other pleading seeking the dismissal of the any of the Chapter 11 Case under section 1112 of the Bankruptcy Code or otherwise;

(ii)    the appointment of an interim or permanent trustee in the Chapter 11 Case or the appointment of a receiver or an examiner in the Chapter 11 Case with expanded powers to operate or manage the financial affairs, the business, or reorganization of any of the Borrower (powers beyond those set forth under sections 1106(a)(3) and (4) of the Bankruptcy Code) under section 1106(b) of the Bankruptcy Code);

(iii)    the entry of an order of competent jurisdiction (1) reversing, staying, vacating or rescinding either the Interim Order or the Final Order, or either otherwise ceases to be in full force and effect (except in the case of the replacement of the Interim Order with the entry of the Final Order) or (2) amending, supplementing or otherwise modifying the Interim Order or the Final Order without the written consent of all of the Lender or the filing of a motion for reconsideration (x) in respect of the total Revolving Loan Commitments, without Lender's consent;

(iv)    Borrower materially violates or breaches the Postpetition Financing Orders or file any pleadings seeking, joining in, or otherwise consenting to any material violation or breach of the Postpetition Financing Orders;

(v)    the bringing of a motion, taking of any action or the filing of any Reorganization Plan or disclosure statement attendant thereto by any of the Borrower in the Chapter 11 Cases:  (w) to obtain additional financing under section 364(c) or (d) of the Bankruptcy Code not otherwise permitted pursuant to this Agreement; (x) to grant any Lien other than Permitted Encumbrances upon or affecting any Collateral; or (z) any other action or actions adverse to Lender's rights and remedies hereunder;

*DIP Credit Agreement*

(vi)    the entry of an order in any of the Chapter 11 Cases granting any other super priority administrative claim or Lien equal or superior to that granted to the Lender;

(vii)    the Final Order is not entered within 30 days following the expiration of the Interim Order;

(viii)    the entry of an order in any of the Chapter 11 Cases avoiding or requiring repayment of any portion of the payments made on account of the Obligations owing under this Agreement;

(ix)    the entry of an order in any of the Chapter 11 Cases confirming a plan or plans of reorganization that does not contain a provision for termination of the Revolving Loan Commitments and repayment in full in cash of all of the Obligations under this Agreement on or before the effective date of such plan or plans;

(x)    the Bankruptcy Court shall enter an order or orders granting relief from or modifying the automatic stay applicable under Section 362 of the Bankruptcy Code to permit one or more creditors to execute upon, enforce or perfect a lien on any assets of the Borrower;

(xi)    Commencement of any suit against the Lender that would in any way reduce, set off, or subordinate the Obligations under this Agreement; if any such suit is commenced by any party other than the Borrowers, and in the reasonable judgment of the Lender, such suit has a reasonable possibility of success, and if successful, would be reasonably likely to has a material adverse effect on (x) the Borrowers or (y) Borrowers' business or their ability to repay the Revolving Loans made under this Agreement;

(xii)    the payment of, or application for authority to pay, any prepetition claim without the Lender's prior written consent or pursuant to an order of the Bankruptcy Court after notice and hearing unless otherwise permitted under this Agreement; or

7.2    Remedies.

Upon the occurrence and during the continuance of an Event of Default, and without further order of or application to the Bankruptcy Court, the Lender shall, by notice to the Borrowers (with a copy to counsel for the Committee appointed in the Chapter 11 Cases, and to the United States Trustee for the District of Nevada), take one or more of the following actions, at the same or different times: (i) terminate forthwith the Revolving Loan Commitments; (ii) declare the Loans or any portion thereof then outstanding to be forthwith due and payable, whereupon the principal of such Loans together with accrued interest thereon and any unpaid accrued Fees and all other liabilities of the Borrowers accrued hereunder and under any other Loan Document, shall become forthwith due and payable, without presentment, demand, protest or any other notice of any kind, all of which are hereby expressly waived by the Borrower,

*DIP Credit Agreement,*

anything contained herein or in any other Loan Document to the contrary notwithstanding; and (iii) take any other action or exercise any and all other rights or remedies under the Loan Documents, and under applicable law available to the Lender.

ARTICLE VIII
MISCELLANEOUS

8.1    <u>Amendments and Waivers</u>.

Neither this Agreement, any Revolving Note or any other Loan Document, nor any terms hereof or thereof may be amended, restated, supplemented or modified except in writing signed by each of the parties hereto

8.2    <u>No Waiver; Cumulative Remedies</u>.

No failure to exercise and no delay in exercising, on the part of Lender, any right, remedy, power or privilege hereunder or under the other Loan Documents shall operate as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.  The rights, remedies, powers and privileges herein provided are cumulative and not exclusive of any rights, remedies, powers and privileges provided by law.

8.3    <u>Survival of Representations and Warranties</u>.

All representations and warranties made hereunder, in the other Loan Documents and in any document, certificate or statement delivered pursuant hereto or in connection herewith shall survive the execution and delivery of this Agreement and the Revolving Notes and the making of the Loans hereunder.

8.4    <u>Successors and Assigns; Participations and Assignments</u>.

(a)    This Agreement shall be binding upon and inure to the benefit of the Borrower and the Lender and their respective successors and assigns, including any trustee appointed in this case.

(b)    Lender may, in accordance with applicable law, sell or assign its rights under this Agreement and any Obligations of Borrower hereunder.

(c)    The Borrower authorizes Lender to disclose to any Assignee (each, a "Transferee") and any prospective Transferee, any and all financial information in Lender's possession concerning the Borrower which has been delivered to Lender.

8.5    <u>Counterparts</u>.

This Agreement may be executed by one or more of the parties to this Agreement on any number of separate counterparts (including by telecopy), and all said counterparts taken together

*DIP Credit Agreement*

shall be deemed to constitute one and the same instrument. A set of the copies of this Agreement signed by all the parties shall be lodged with the Borrower and the Lender.

8.6    Severability.

Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

8.7    Governing Law.

THIS AGREEMENT AND THE REVOLVING NOTES AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES UNDER THIS AGREEMENT AND THE REVOLVING NOTES SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEVADA WITHOUT REGARD TO THE PRINCIPLES OF CONFLICT OF LAWS THEREOF OTHER THAN SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW OF THE STATE OF NEVADA.

Submission To Jurisdiction; Waivers.    Borrower and Lender hereby irrevocably and unconditionally:

(a)    submit for themselves and their property in any legal action or proceeding relating to this Agreement and the other Loan Documents to which it is a party, or for recognition and enforcement of any judgment in respect thereof, to the jurisdiction of the Bankruptcy Court;

(b)    consent that any such action or proceeding may be brought in the Bankruptcy Court and waive any objection that they may now or hereafter have to the venue of any such action or proceeding in any such court or that such action or proceeding was brought in an inconvenient court and agree not to plead or claim the same;

(c)    agree that nothing contained herein shall affect the right to effect service of process in any other manner permitted by law or shall limit the right to sue in any other jurisdiction; and

(d)    waive, to the maximum extent not prohibited by law, any right they may have to claim or recover in any legal action or proceeding referred to in this Section any special, exemplary, punitive or consequential damages.

8.8    No Waiver.

No failure on the part of Lender to exercise, and no delay in exercising, any right, power or remedy hereunder or any of the other Loan Documents shall operate as a waiver thereof, nor shall any single or partial exercise of any such right, power or remedy preclude any other or

*DIP Credit Agreement*

further exercise thereof or the exercise of any other right, power or remedy. All remedies hereunder are cumulative and are not exclusive of any other remedies provided by law.

        8.9      <u>Waiver of Claims</u>.

Upon the effectiveness of this Agreement, the Borrower shall be deemed to have (a) released and forever discharged Lender and its respective subsidiaries, agents, employees, officers, directors, managers, attorneys, affiliates, successors and assigns (collectively, the "<u>Released Parties</u>") of and from any and all liabilities, claims, obligations, indebtedness, liens, causes of action and rights of any kind, character or nature whatsoever, whether known or unknown, whether fixed or contingent, and whether liquidated or unliquidated, that the Borrower may have or claim to have against any such Released Party and which arises out of or is connected in any way with any action of commission or omission of the Borrower existing or occurring on or prior to the date of this Agreement, including without limitation any claims, liabilities or obligations relating to or arising out of or in connection with any of the transactions contemplated by any of the Loan Documents, from the beginning of time until the execution and delivery of this Agreement (collectively, the "<u>Released Claims</u>") and (b) agrees forever to refrain from commencing, instituting or prosecuting any law suit, action or other proceeding against any of the Released Parties with respect to any of such Released Claims.

*    *    *    *

IN WITNESS WHEREOF, the parties hereto has caused this Agreement to be duly executed and delivered by their proper and duly authorized officers as of the day and year first above written.

 

AMERICAN PACIFIC FINANCIAL
CORPORATION, Borrower

By: _____
    Name:
    Title:

 

AMERICAN PACIFIC MANAGEMENT
CORPORATION, Lender

By: _____
    Name:
    Title:

*DIP Credit Agreement*

## PROMISSORY NOTE

$xx,000.00                    Grand Terrace, California    November 1, 2010

In installments as herein stated, for value received, the undersigned, American Pacific Financial Corporation, a California corporation, promises to pay to AmPac Management Corporation, a Nevada Corporation, or order, at 7380 S. Eastern Ave., #150, Las Vegas, NV 89123, the principal sum of xxx thousand Dollars, ($xx,000.00) with interest from the date of funds drawn, on unpaid principal at the rate of six per cent (6.0%) per annum, compounded monthly.  Payment shall be payable on the 31st day of March, 2011, at which time all unpaid principal and interest will be due and payable.

Each payment shall be credited first on interest then due; and the remainder on principal; and interest shall thereupon cease upon the principal so credited.  In the event of any default in the payment of any installment of principal or interest as herein provided all sums so due, including interest, shall bear interest at the rate set forth above, but such unpaid interest so compounded shall not exceed an amount equal to simple interest on the unpaid principal at the maximum rate permitted by law.  Should default be made in payment of any installment when due, the whole sum of principal and interest shall, at the option of the holder of this note, become immediately due.  Principal and interest payable in lawful money of the United States.  If suit or action shall be instituted in any Court to collect any sum becoming due on this note, the undersigned promises to pay such sum as the Court may adjudge reasonable as attorney's fees in said suit or action.

Borrower reserves the privilege to prepay this promissory note in part or in whole at any time prior to the maturity date without penalty.

American Pacific Financial Corporation
A California corporation


_____
By: