MCDONALD CARANO WILSON LLP
Kaaran Thomas, Esq. (NV Bar No. 7193)
Ryan J. Works, Esq. (NV Bar No. 9224)
2300 West Sahara Avenue, Suite 1000
Las Vegas, Nevada 89102
Telephone Number: (702) 873-4100
Facsimile Number: (702) 873-9966
kthomas@mcdonaldcarano.com
rworks@mcdonaldcarano.com

*Electronically Filed November 30, 2010*

*Proposed Counsel for Debtor In Possession*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>AMERICAN PACIFIC FINANCIAL CORPORATION,<br><br>Debtor. | Case No. BK-10-27855-BAM<br><br>Chapter 11<br><br>**RESPONSE TO THE ACTING UNITED STATES TRUSTEE'S OBJECTION TO DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION PROPOSED BY AMERICAN PACIFIC FINANCIAL CORPORATION (*DATED NOVEMBER 1, 2010*)**<br><br>Hearing Date: December 7, 2010<br>Hearing Time: 9:30 a.m. |

American Pacific Financial Corporation, debtor and debtor in possession (the "Debtor"), in the above-captioned chapter 11 bankruptcy case, files this Response to the *Acting United States Trustee's Objection to Disclosure Statement Describing Chapter 11 Plan of Reorganization Proposed by American Pacific Financial Corporation* (*Dated November 1, 2010*) [Docket No. 97] (the "Objection"). This Response is supported by the following Memorandum of Points and Authorities, the Debtor's recent Exhibit filing [Docket No. 98], the Declaration of Larry Polhill (the "Pohill Decl."), together with all Exhibits thereto, the pleadings and papers on file herein[1], and the arguments of counsel to be made at the hearing of this matter.

---

[1] Debtor asks that the Court take judicial notice of the pleadings and documents on the Court's docket in this matter, specifically [Docket No. 98]. *See* Fed. R. Evid. 201.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

1.  Unlike many Debtors, this Debtor worked with many of the members of the Committee for several months prior to the commencement of this case to obtain input on its proposed plan, the participation agreement and the management agreement, and had those documents in a substantially final form at the time the case was filed. *See* Polhill Decl. at ¶ 4.

2.  Since the formation of the Official Committee of Unsecured Creditors (the "Committee") on November 4, 2010, the Debtor has been in close communication with Committee members and has attended a Committee meeting to answer questions posed by Committee members. *Id*. at ¶ 5

3.  Because the Debtor is not currently realizing significant cash flow, Debtor's goal is to move through the bankruptcy process quickly to avoid incurring large administrative expenses that would impair the Debtor's ability to confirm its Plan of Reorganization (the "Plan"), which is a liquidating plan that permits Debtor's equity holders to retain their stock so that tax losses can be used to shelter income that will be paid to the Trust and forwarded to the unsecured creditor beneficiaries. *Id*. at ¶ 6

## II.

## RESPONSE TO OBJECTIONS

Most of the objections contained in paragraphs 14-22 of the Trustee's Objection were cured by the Debtor's filing of its *Supplemental Exhibits to Disclosure Statement (Dated November 1, 2010)*, which objections, and their resolution, are fully set forth below:

(**A**)  **Management Contract**. The management contract is attached to the Declaration of Larry Polhill as Exhibit "1."

(**B**)  **Exhibit 3 – Debtor's Unsecured Liabilities**. A revised Exhibit 3 was filed on the Exhibit Filing Date. [Docket No. 98].

(**C**)  **Exhibit 4 – Cure Claims**. A revised Exhibit 4 was filed on the Exhibit Filing Date. [Docket No. 98].

**(D) Exhibit 5 – Trust Agreement**. The Trust Agreement and the Security Agreement securing payment of the Participation Agreement were filed on the Exhibit Filing Date [Docket No. 98].

**(E) DIP Facility**. The DIP facility is attached as Exhibit to the *Motion for Authority to Obtain Credit Under Section 364(b), Rule 4001(c) or (d) with Proposed Order* [Docket No. 67]. The United States Trustee (the "Trustee") has pointed out that the credit agreement provides that funds cannot be used to make distributions under a reorganized plan. The Debtor assumes that the Trustee desires the Debtor to disclose that any use of the DIP facility, to fund payments to creditors, requires the DIP Lender's consent. Debtor will make this clarification on page 25 of its Disclosure Statement.

**(F) Cash Flows**. The seven year cash flow projections with footnotes were filed as a supplement to the Disclosure Statement on the Exhibit Filing Date [Docket No. 98].

**(G) Liquidation Analysis.** The Trustee asserts in paragraph 16 of its Objection, that the Liquidation Analysis should contain a statement of "reorganization value." Since the Debtor is not reorganizing it would not propose to include such a statement.

**(H) Equity interests Retaining Stock**. The absolute priority rule applies only if a class of unsecured creditors rejects the plan. Since this plan was negotiated with the largest unsecured creditors prior to the Petition Date, and since the retention of stock is for the purpose of preserving tax benefits, Debtor has assumed the absolute priority rule will not come into play. In the event a class rejects the Plan, Debtor reserves the option to modify its Plan, which option is discussed in the Disclosure Statement at Sections X.E. and XIII.

**(I) Releases**. The Trustee's objection refers to the exculpation clause in Plan Article XI.A, which provides:

**Limitation of Liability and Releases**

None of the Debtor, the Debtor in Possession, the Committee, the Members of Committee nor any of the Released Parties shall have or incur any liability to any Entity for any act taken or omission made in good faith in connection with or related to the Chapter 11 Case or the Estate, including objections to or estimations of claims, disposition of assets or formulating, determining not to solicit acceptances or rejections to or confirming the Plan, or any contract, instrument,

release or other document created in connection therewith.

The claims that are the subject of this provision are to a large extent claims belonging to the bankruptcy estate. To such extent, The Trustee's Lowenschuss-based argument does not apply because the causes of action being released belong to the estate. In a recent case, In re Lighthouse Lodge, LLC, 2010 WL 4053984 (Bankr. N.D. Cal. 2010), Judge Efremsky examined an exculpation clause in a creditor plan, responding to the Debtor's objection that the provision was a third party release. The clause stated:

> As of the Effective Date, this Plan will be deemed to satisfy, waive, and release in full any and all claims of the Debtor or the Estate against any of the officers, directors, agents, advisors, servicers, representatives, consultants, attorneys, or accountants of the Proponent (whether as the holder of the ORIX Loan or any other capacity) from any claims arising out of or in connection with any act or failure to act in connection with rights and duties arising under or related to the Case from the Petition Date to and including the Effective Date, except any claims expressly created or preserved under the terms of this Plan or any documents executed, or to be executed, in connection with this Plan.
>
> . . .
>
> Except as expressly provided in this Plan or any other document executed or to be executed in connection with this Plan, neither the Proponent (in any capacity) nor any of its officers, directors, shareholders, partners, members, managers, agents, advisors, representatives, servicers, consultants, attorneys, or accountants, will have any liability to or on behalf of the Estate for actions taken or omitted to be taken under or in connection with this Plan or the Case from the Petition Date to and including the Effective Date.

The objecting parties based their arguments on Lowenschuss, as does this Trustee. Judge Efremsky noted:

> The reliance on § 524(e) by the Debtor and Geneva is misplaced. Lowenschuss clearly holds that bankruptcy courts do not have the equitable power under § 105(a) to discharge the liabilities of non-debtors through chapter 11 plan confirmations, contrary to the provisions of § 524(e). Lowenchuss, 61 F.3d at 1401-02. However, the claims that ORIX proposes to release in ¶ 8.2 of the ORIX Plan are limited to claims belonging to the Debtor or the bankruptcy estate. Indeed, § 524(e) specifically states that "discharge of a debt of a debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e)(emphasis added). Here, the release provision is not attempting to release ORIX from any debts of the Debtor, nor does it shield ORIX from liability to creditors. Rather, the claims at issue, if any, are assets of the bankruptcy estate.

In another Ninth Circuit case, DJS Properties, L.P. v. Simplot (In re Simplot), 397 B.R.

493 (D. Idaho 2008) the Idaho District court analyzed an exculpation clause and noted that several courts had approved the provisions over objections, as 'reasonable and customary and in the best interests of the estates,' in conformity with applicable law and necessary for the negotiation of the Plan." citing In re Enron Corp., 326 B.R. 497, 504 (S.D.N.Y. 2005). The court concluded that the bankruptcy court did not clearly err in approving the provisions in question and after an extensive review of cases dealing with the issue, the district court listed four factors to be considered when reviewing such clauses: (a) Are these provisions standard in the industry? (b) Is insurance prohibitively expensive? (c) Would the professional serve without such a provision? (d) Is the professional likely to face claims, or, more precisely, has the case been "bitterly contested". DJS Properties at 506.

The Simplot analysis appears to require an analysis of the Plan provisions as part of the confirmation hearing, taking into account the facts and circumstances of the case at that time. Simplot, at 506. Nevertheless, should the Court find the language in Debtor's plan objectionable, Debtor would propose to modify the language in a manner acceptable to this Court.

**(J) Range of possible dividends**. The seven year cash flows, [Docket No. 98; Exhibit 7] provide the range of possible dividends.

**(K) Avoidance Actions.** The Debtor is indeed unaware at this time, of any avoidance actions, which is why the "nature and amount of distributions under the Debtor's Plan will depend on the recovery realized, *if any*." (emphasis added). Although the Debtor is unaware of any avoidance actions at this time, should any avoidance actions become known, the Debtor would take appropriate action.

**(L) Collection of Accounts Receivable**. The Debtor will supplement the Disclosure Statement with an explanation regarding collection of accounts receivable; however, it goes without saying that the Debtor will use its best efforts, and all of its sparse resources to attempt collection on all of its outstanding accounts receivable. *See* Polhill Decl. at ¶ 9.

**(M) Payment of Claims**. The Debtor will supplement the Disclosure Statement with an explanation regarding payment of priority, administrative and convenience claims due on or before the Effective Date. However, in a nutshell, this Debtor depends heavily upon the proposed DIP

financing arrangement set forth in the *Debtor's Application for an Order Authorizing the Debtor to Obtain Postpetition Financing on an Unsecured Basis* [Docket No. 67]. This is the primary source of payment of the priority and administrative claims that are expected to approximate $75,000 to $100,000.

With respect to the convenience class claims, which are expected to approximate $31,157, the Debtor is currently ahead of budget and has income that it recently received which includes a royalty payment from Luminair in the amount of $15,000.00 and an annual payment from Kinbasket Resort in the amount of $27,500. Polhill Decl. at ¶ 8. Because the Debtor proposes to pay the convenience class over a period of 6 months, it is anticipated that its current assets, coupled with any future income, will be more than adequate to satisfy this class of claims.

Finally, with respect to the San Bernardino tax assessment, the county has a program where back taxes can be amortized over a period of up to 60 months, which program the Debtor will enroll in should it decide to retain possession of the real property that generated the tax obligation. *See* Polhill Decl. at ¶ 10.

### III.
### CONCLUSION

WHEREFORE, the Debtor prays that the Court approve the Disclosure Statement with the modifications set forth herein and for such other relief as is just under the circumstances.

SUBMITED this **30th** Day of November, 2010.

**MCDONALD CARANO WILSON LLP**

By:   /s/ Kaaran E. Thomas
   KAARAN E. THOMAS, ESQ. (5859)
   RYAN WORKS, ESQ. (8164)
   2300 W. Sahara Ave., No. 10, Suite 1000
   Las Vegas, Nevada 89102
   *[Proposed] Counsel to American Pacific Financial Corporation*