MCDONALD CARANO WILSON LLP
KAARAN E. THOMAS (NV Bar No. 7193)
RYAN WORKS (NV Bar No. 9224)
100 West Liberty Street, 10th Floor
Reno, NV 89501
Telephone: (775) 788-2000
Facsimile: (775) 788-2020
Email: kthomas@mcdonaldcarano.com

*Counsel for American Pacific Financial Corporation ("APFC")*

*Electronically filed on January 26, 2011*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| IN RE AMERICAN PACIFIC FINANCIAL CORPORATION<br><br>**Debtor and Debtor-in-Possession** | Case No. 10-27855-BAM<br><br>Chapter 11 |
| **AMERICAN PACIFIC FINANCIAL CORPORATION**<br><br>          **Plaintiff,**<br>vs.<br><br>**KENNETH SILVERMAN, CHAPTER 7 TRUSTEE OF THE ESTATE OF NATUROPATHIC LABORATORIES INTERNATIONAL, INC**.<br><br>          **Defendant.** | Adv. No. _____<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT REGARDING VALIDITY PRIORITY AND EXTENT OF CLAIM AND ACCOUNTING FOR AND TURNOVER OF ESTATE FUNDS** |

American Pacific Financial Corporation ("APFC" or "Plaintiff") files this Complaint seeking a declaratory judgment pursuant to 28 U.S.C.A. § 2201 that the funds in Defendant's possession are property of the APFC bankruptcy estate free and clear of any liens and/or claims of Defendant, and an order requiring Defendant to provide and accounting for and turnover of said funds in Defendant's possession or control pursuant to 11 U.S.C.A. § 542 and for cause would show:

## Jurisdiction and Venue

1.  This Court has jurisdiction over this Chapter 11 proceeding under 28 U. S. C. §§ 157 and 1334. These matters constitute core proceedings under 28 U.S.C. §§ 157(b) (2) (E) and (K).

2.  Debtor's Chapter 11 case is pending in this District. Venue of this proceeding is proper in Nevada as it arises out of and relates to Debtor's Chapter 11 case under 28 U.S.C. §§ 959(a) and 1409.

3.  The statutory predicates for the declaratory relief requested in this Complaint are 28 U.S.C.A. § 2201 which provides:

> *(a)  In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(10) of the Tariff Act of 1930), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.*

and 11 U.S.C.A. Section 542 which provides for turnover of estate property.

## Parties

4.  On September 13, 2010 Plaintiff commenced this case seeking relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"). The Plaintiff continues to operate its businesses and possess its property as debtor-in-possession in accordance with Bankruptcy Code §§ 1107 and 1108.

5.  Kenneth Silverman, Chapter 7 Trustee ("Defendant") is the Chapter 7 trustee appointed by the United States Bankruptcy Court for the Southern District of New York in the case of Naturopathic Laboratories International, Inc. ("Naturopathic") Case No. 08-10022-rdd on September 4, 2010.

## Background Information

6.  Plaintiff has been involved in private equity and sub-debt investment in various types of companies since 1978.

7. Plaintiff's assets include loans and investments in distressed real estate development projects and in other types of operating companies in various industries.

8. Plaintiff added value to its acquisitions by aggressively managing the assets to maximize the return on investment.

9. However, because of the nature of its assets, Plaintiff has been heavily impacted by this recession and lack of liquidity in the economy.

10. Plaintiff commenced this case on September 13, 2010 and remains as a debtor-in-possession. Plaintiff filed its plan of reorganization and disclosure statement (the "Plan") on November 2, 2010. Plaintiff is currently working with the Official Committee of Unsecured Creditors regarding the structure of the Plan.

11. On or about January 2008, Naturopathic filed a Chapter 11 bankruptcy, Case No. 08-10022-rdd, in the United States Bankruptcy Court for the Southern District of New York. Prior to the filing of its bankruptcy petition Naturopathic had borrowed money from AMPAC Capital Solutions, LLC, a company that subsequently assigned all of its assets and liabilities to the Debtor on December 31, 2008.

12. On or about February 27, 2008 Naturopathic obtained a *Final Order Authorizing Use of Cash Collateral By Debtor Naturopathic Laboratories International, Inc., Pursuant to 11 U.S.C. Section 363* (the "Cash Collateral Order"). A true and correct copy of the final Cash Collateral Order is attached hereto as Exhibit "A". As adequate protection for the use of AMPAC's cash, AMPAC was granted a replacement lien in substantially all of the Debtor's assets. The liens were subject to (i) the claims of Chapter 11 professionals duly retained and to the extent awarded pursuant to Section s 330 and 331 of the Bankruptcy Code.

13. On or about September 4, 2009, following Debtor's conversion to a Chapter 7 on September 3, 2009, Kenneth Silverman ("Defendant") was appointed Chapter 7 Trustee. Upon information and belief, and relying upon pleadings filed by the United States' Trustee in the Naturopathic case, the gross receipts of the Naturopathic estate as of January 13, 2011, are $52,089.71 (together with all funds in the estate as of September 13, 2010, the "Funds"). Plaintiff has no knowledge regarding previous disbursements of funds from Plaintiff's collateral.

14. On or about September 16, 2010, Naturopathic's counsel filed a *Motion to Compel AMPAC Capital Solutions, LLC to Pay Allowed Fees and Expenses of Debtor's Counsel Pursuant to the Terms of Cash Collateral and Financing Orders Carve-Out* (the "*Motion to Compel*") in the Naturopathic bankruptcy case. The hearing to consider the Motion to Compel was set for August 9, 2010.

15. On or about August 18, 2010 the hearing to consider the *Motion to Compel* was adjourned to October 5, 2010.

16. Plaintiff commenced this Chapter 11 case on September 13, 2010. Debtor's counsel notified the Defendant through his counsel of the filing of the Chapter 11 case. Since that time all hearings in the Naturopathic case have been adjourned.

17. Upon information and belief, the Defendant also seeks reimbursement of his attorney's fees from the Funds. Despite repeated demands, Defendant has refused to turnover the Funds.

<u>Existence of Case or Controversy</u>

18. An actual case or controversy exists because the law regarding rights of one bankruptcy estate against funds in another bankruptcy estate is unsettled. An immediate justiciable issue exists regarding Plaintiff's and Defendant's respective rights in and to the Funds in the Naturopathic estate.

**FIRST CAUSE OF ACTION**

**DECLARATION THAT NATUROPATHIC FUNDS ARE PROPERTY OF APFC ESTATE**

19. Plaintiff reasserts each of paragraphs 1through18 above as though fully set forth herein.

20. Plaintiff seeks a declaration from this Court that the Funds being held by Defendant are property of the APFC estate and that neither Defendant nor any of the professionals of the Naturopathic bankruptcy case have a claim on the Funds.

21. Bankruptcy Code Section 541 defines property of the estate as:

302874

4 of 6

(1) . . . all legal or equitable interests of the debtor in property as of the commencement of the case. The Funds and all monies in Defendant's hands as of the APFC filed its petition commencing this case, September 13, 2010, constitute property of the APFC estate.

22. Title 28 of the United States Code, Section 959(a) provides:

*(a) Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property. Such actions shall be subject to the general equity power of such court so far as the same may be necessary to the ends of justice, but this shall not deprive a litigant of his right to trial by jury.*

23. The one court that has addressed the issue of a turnover proceeding by one estate against another noted: "It may seem strange to include bankruptcy estates among the entities that may be the object of a Section 542 turnover order. If, though, as case law instructs, a bankruptcy estate can gain no greater rights in property than those held by the debtor, it certainly would seem to follow that a bankruptcy estate would be no more immune to a turnover proceeding commenced by another bankruptcy estate than would the targeted debtor itself have been immune had it not been placed in bankruptcy. As such, a targeted bankruptcy estate would also presumably be faced with the same fight-or-settle decision were its property ever to become the object of another estate's turnover motion." In re Cyberco Holdings, Inc., 431 B.R. 404, 427, (Bkrtcy.W.D.Mich. 2010, citing Matter of Lewellyn, 26 B.R. 246 (Bkrtcy.Iowa, 1982.)

## SECOND CAUSE OF ACTION
## TURNOVER PURSUANT TO 11 U.S.C. SECTION 542

24. Plaintiff reasserts each of paragraphs 1-23 as though fully set forth herein.

25. Bankruptcy Code Section 542 requires an entity other than a custodian, in possession, custody or control, during the case, of property that the trustee may use, sell or lease to deliver the property to the trustee and account for the property unless the property is of inconsequential value to the estate.

26. Defendant is a person in possession of the Funds who is required to render an accounting for, and to turnover, the Funds.

27. Plaintiff has made demand upon Defendant for turnover of the Funds. Defendant has failed and refused to surrender the funds or to render an accounting; accordingly, Plaintiff is entitled to interest, attorney's fees and costs of court of and from the Defendant.

1  WHEREFORE, American Pacific Financial Corporation prays that the Court declare that the Funds are property of this estate free and clear of any liens or claims of the Defendant; that Defendant account for and turnover the Funds; for interest until date of payment and for attorneys fees and costs of court, and for such other and further relief as is just.

SIGNED this 26th day of January, 2011.

McDONALD CARANO WILSON LLP

By: /s/ Kaaran E. Thomas
    Kaaran E. Thomas
    Nevada Bar No. 7193

*Counsel for American Pacific Financial Corporation, Debtor and Debtor-in-Possession*

*EXHIBIT A*

*EXHIBIT A*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:

NATUROPATHIC LABORATORIES
INTERNATIONAL, INC.,

Debtor.

------------------------------------------------------------X

Chapter 11
Case No. 08 B 10022 (RDD)

## FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL BY DEBTOR NATUROPATHIC LABORATORIES INTERNATIONAL, INC., PURSUANT TO 11 U.S.C. SECTION 363

**UPON** the application ("Application") of the above-captioned Debtor and Debtor-in-Possession for authority to, inter alia, use the cash collateral of AMPAC Capital Solutions, LLC, a Nevada limited liability company ("AMPAC"), on an interim and final basis pursuant to 11 U.S.C. Sections 363(c)(2) and 361 and Federal Rule of Bankruptcy Procedure 4001, and an final hearing ("Final Hearing") having been held on March 18, 2008, and there being no objections to the Application, and upon the record taken at the Final Hearing, and all of the pleadings heretofore filed in this proceeding, it is hereby found and determined as follows:

A. On or about January 4, 2008 (the "Petition Date") the Debtor filed a voluntary petition (the "Petition") for relief under Chapter 11 of the Bankruptcy Code (the "Code"), and has continued in possession of its property and the management of its business pursuant to 11 U.S.C. §§1107 and 1108.

B. As of the date hereof, the Office of the United States Trustee has not appointed an Official Creditors' Committee as provided for in Section 1102 of the Code. No trustee or examiner has been appointed in this proceeding.

1

C. Debtor manufactures and distributes products that assist in the relief of aches and pains associated with minor arthritis. Debtor sells its products under the trade names JOINT-RITIS® and Nature's Chemist®. Debtor's customers have historically included the nation's largest retail pharmacies as well as several well known wholesalers and distributors. Debtor also sells directly to consumers.

D. Pursuant to the terms of that certain Amended and Restated Security Agreement dated as of April 23, 2004 (the "Security Agreement") by and between the Debtor and AMPAC, as described in the Application, AMPAC has asserted a security interest in the following including cash collateral, as such term is defined in the Bankruptcy Code (the "Cash Collateral"):

> All personal property and other assets of Debtor, wherever located, and now owned or hereafter acquired or arising, and whether owned or consigned by or to, or leased from or to, Debtor (all of which being hereinafter collectively referred to as the "Collateral") including, but not limited to: (i) Accounts, Chattel Paper, Goods, Inventory, Equipment, Instruments including Promissory Notes, Investment Property, Documents, Deposit Accounts, and all other Bank Accounts and all funds on deposit therein, Letter-of-Credit Rights, General Intangibles, Intellectual Property, Supporting Obligations, Commercial Tort Claims specifically described on Schedule A (as may be supplemented), all money, Cash or cash equivalents; all records and related data applicable to the Collateral and (ii) to the extent not listed above as original Collateral, Proceeds and products of the foregoing and all accessions to, substitutions and replacements for, and rents and profits of, each of the foregoing.
>
> All property of Debtor held by AMPAC now or hereafter in the possession or custody of or in transit to AMPAC, for any purpose, including safekeeping, collection or pledge, for the account of Debtor, or as to which Debtor may have any right or power.

E. As of the Petition Date, Debtor owes AMPAC approximately $3,859,538 in secured debt ("Prepetition Obligations").

F. The use of the Cash Collateral is essential to the continued operation of Debtor's business, and the preservation of Debtor's estate.

G.  On February 6, 2008 this Court entered an Order authorizing the Debtor to use Cash Collateral on an interim basis for the period of January 4, 2008 through and including March 18, 2008 (the "Interim Order") and scheduled a final hearing on the Debtor's request to use Cash Collateral for March 18, 2008. Entry of the Interim Order was required to allow the Debtor to meet its imminent and necessary business obligations.

H.  Continued use of Cash Collateral on a final basis is necessary to prevent immediate and irreparable harm to the Debtor's estate in that without authorization to use Cash Collateral, the Debtor's ability to sustain its operations and meet its current necessary and integral business obligations will be impossible.

I.  The value of Debtor's estate will be maximized by the continuation of Debtor as a going business, and the use of Cash Collateral is essential to such operation.

**BASED UPON THE FOREGOING,** it is hereby ordered as follows:

1.  This Court has jurisdiction over these proceedings and the parties and property affected hereby pursuant to 28 U.S.C. §1334 and this is a "core" proceeding pursuant to 28 U.S.C. §157. Venue is proper in this Court pursuant to 28 U.S.C. §1408. Notice of the hearing on the Motion was adequate and appropriate in the current circumstances of this Chapter 11 case as contemplated by 11 U.S.C. §102(a) and Fed. R. Bankr. P. 4001(b)(2).

2.  The motion is GRANTED and the Debtor is authorized to use Cash Collateral subject to the terms of this Order, which collectively constitute adequate protection for that use, in an aggregate amount up to but not in excess of the actual anticipated cash needs of the Debtor, which amount shall not exceed the amount set forth in the Budget consented to by AMPAC. The Debtor may only use Cash Collateral as provided in the Budget.

3.  In addition to the existing rights and interests of AMPAC in the Cash Collateral and for the purpose of adequately protecting AMPAC from Collateral Diminution,[1] AMPAC is hereby granted replacement liens ("Replacement Liens") in the following:

> All personal property and other assets of Debtor, wherever located, and now owned or hereafter acquired or arising, and whether owned or consigned by or to, or leased from or to, Debtor (all of which being hereinafter collectively referred to as the "Collateral") including, but not limited to: (i) Accounts, Chattel Paper, Goods, Inventory, Equipment, Instruments including Promissory Notes, Investment Property, Documents, Deposit Accounts, and all other Bank Accounts and all funds on deposit therein, Letter-of-Credit Rights, General Intangibles, Intellectual Property, Supporting Obligations, Commercial Tort Claims specifically described on Schedule A (as may be supplemented), all money, Cash or cash equivalents; all records and related data applicable to the Collateral and (ii) to the extent not listed above as original Collateral, Proceeds and products of the foregoing and all accessions to, substitutions and replacements for, and rents and profits of, each of the foregoing, except for actions under Chapter 5 of the Bankruptcy Code.
>
> All property of Debtor held by AMPAC now or hereafter in the possession or custody of or in transit to AMPAC, for any purpose, including safekeeping, collection or pledge, for the account of Debtor, or as to which Debtor may have any right or power.

to the extent that said liens were valid, perfected and enforceable as of the Petition Date in the continuing order of priority of its pre-petition liens without determination herein as to the nature, extent and validity of said pre-petition liens and claims and to the extent Collateral Diminution occurs during the Chapter 11 case, subject to: (i) the claims of Chapter 11 professionals duly retained and to the extent awarded pursuant to Sections 330 or 331 of the Bankruptcy Code; (ii) United States Trustee fees pursuant to 28 U.S.C. Section 1930 and 31 U.S.C. Section 3717; and (iii) the fees and commissions of a hypothetical Chapter 7 trustee in an amount not to exceed $75,000. The Replacement Liens granted hereby shall not attach to the proceeds of any recoveries of estate causes of action under Sections 542 through 553 of the Bankruptcy Code.

---

[1] For purposes of this Order, "Collateral Diminution" shall mean any diminution in value of AMPAC's interests in Debtor's property as of the Filing Date by reason of Debtor's use of Cash Collateral in accordance with this Order.

4.  The security interests and liens herein granted and regranted: (i) are and shall be in addition to all security interests, liens and rights of set-off existing in favor of AMPAC on the Petition Date; (ii) shall secure the payment of indebtedness to AMPAC in an amount equal to the aggregate Cash Collateral used or consumed by the Debtor; and (iii) shall be deemed to be perfected without the necessity of any further action by AMPAC or the Debtor. Without limitation, therefore, AMPAC shall not be required to file financing statements or other documents in any jurisdiction or take any other action to validate or perfect the liens and security interests granted by this Order.

5.  AMPAC reserves its rights to hereafter request additional adequate protection and to object to the adequacy of the adequate protection granted herein.

6.  On each Friday during the Cash Collateral Period, the Debtor shall provide AMPAC a report of all cash received and distributed by it during the prior business week. All financial and other reports provided by the Debtor to AMPAC shall be kept confidential by all recipients unless publicly filed with the Court.

7.  The Debtor shall maintain all necessary insurance, including, without limitation, life, fire, hazard, comprehensive, public liability, and workmen's compensation as may be currently in effect, and obtain such additional insurance in an amount as is appropriate for the businesses in which the Debtor is engaged, naming AMPAC as loss payee with respect thereto. The Debtor shall provide AMPAC with proof of all such coverage, as well as prompt notification of any change in such coverage which may hereafter occur.

8.  Notwithstanding anything to the contrary in this Order, the Debtor's authority to use Cash Collateral pursuant to this Order shall terminate immediately and automatically, (a)

upon the fifth (5th) business day following the delivery of written notice to the Debtor, its Bankruptcy Counsel, any official committee of unsecured creditors, and the Office of the United States Trustee, Attn: Serene Nakano, by AMPAC of any breach or default by the Debtor of the terms and provision of this Order, unless the Debtor shall have cured such breach or default within such five (5) business day period, or (b) without notice of any kind upon the entry of an order of the Court providing for the dismissal or conversion of any of the Chapter 11 case to a Chapter 7 case or appointment of a trustee without the written consent of AMPAC.

9. As requested by the Office of the United States Trustee, the first sentence of paragraph 7(d) of the Fourth Amendment to Revolving Credit Agreement shall be stricken, and shall instead read, "The Company shall pay, on written demand, all reasonable attorney fees and related costs incurred by AMPAC in connection with the negotiation, documentation, and execution of this document."

10. The provisions of this Order shall remain in full force and effect unless modified or vacated by subsequent order of this Court with the consent of AMPAC and the Debtor. If any or all of the provisions of this Order are hereafter modified, vacated, or stayed by subsequent order of this Court or any other court, such stay, modification or vacation shall not affect the validity and enforceability of any lien, priority or benefit, or application of payment authorized hereby with respect to any indebtedness of the Debtor to AMPAC.

11. The findings contained in this Interim Order are binding upon the Debtor and all parties in interest (including but not limited to any statutory committee appointed in the Chapter 11 Case), and any application of Cash Collateral under this Order shall be indefeasible, unless (a) an adversary proceeding or contested matter challenging the validity, enforceability or

priority of the Cash Collateral, the Prepetition Obligations, the Replacement Liens, or the liens securing the Prepetition Obligations (the "Prepetition Liens") is properly commenced no later than ninety days from the entry of this order, and (b) a final order is entered in favor of the plaintiff or movant in any such timely and properly filed adversary proceeding or contested matter. If no such adversary proceeding or contested matter is properly commenced as of such date, the Cash Collateral and the Prepetition Obligations shall constitute allowed claims for all purposes in the Chapter 11 Case and any subsequent Chapter 7 case, the Replacement Liens and the Prepetition Liens shall be deemed legal, valid, binding, perfected, and otherwise unavoidable, and the Cash Collateral, the Prepetition Obligations, the Replacement Liens, and the Prepetition Liens shall not be subject to avoidance, or any other similar challenge by any party in interest seeking to exercise the rights of the Debtor's estate, including, without limitation, and successor(s) thereto. If any such proceeding or contested matter is properly commenced, the Bankruptcy Court shall determine the validity, enforceability, and priority of the Cash Collateral, the Prepetition Obligations, the Replacement Liens and the Prepetition Liens, but only with respect to and to the extent of the objections raised in such adversary proceeding or contested matter, and all other matters and objections not raised in such adversary proceeding or contested matter shall be deemed forever waived.

12. This Order shall be binding upon any subsequently appointed or elected trustee in a successor case under Chapter 7 of the Code.

13. The Bankruptcy Court shall retain jurisdiction with respect to all matters pertaining to this Order.

7

**SO ORDERED:**

Dated: New York, New York
      March 18, 2008

/s/Robert D. Drain
HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

8