1    MCDONALD CARANO WILSON LLP                    *Electronically filed on April 1, 2011*
     KAARAN E. THOMAS (NV Bar No. 7193)
2    100 W.  Liberty Street, 10th Floor
     P.O. Box 2670
3    Reno, NV 89505-2670
     Telephone: (775) 788-2000
4    Facsimile:  (775) 788-2020
     Email:  kthomas@mcdonaldcarano.com
5
     Attorneys for Debtor and Debtor in Possession
6

7                    **UNITED STATES BANKRUPTCY COURT**

8                         **DISTRICT OF NEVADA**

9    In re:                              Case No. 10-27855-BAM

10   AMERICAN PACIFIC FINANCIAL          **Chapter 11**
     CORPORATION,
11
              Debtor and Debtor in Possession,
12

13

14

15
        **FIRST AMENDED PLAN OF LIQUIDATION OF AMERICAN PACIFIC FINANCIAL**
16               **CORPORATION, DEBTOR AND DEBTOR IN POSSESSION**

17
                          **Dated:  April 1, 2011**
18

19

20

21

22

23

24

25

26

27

28

307248 v2

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

ARTICLE I   DEFINITIONS, RULES OF INTERPRETATION AND COMPUTATION OF TIME ............ 2

    A.  Scope of Definitions ............................................................................................ 2

    B.  Definitions ......................................................................................................... 2

    C.  Rules of Interpretation ....................................................................................... 12

    D.  Computation of Time ........................................................................................ 13

    E.  References to Monetary Figures ......................................................................... 13

    F.  Exhibits ............................................................................................................ 13

ARTICLE II   TREATMENT OF ADMINISTRATIVE CLAIMS AND PROFESSIONAL CLAIMS .......... 13

    A.  Administrative Claims and Professional Claims .................................................. 14

    B.  DIP Claims ....................................................................................................... 15

ARTICLE III   CLASSIFICATION OF CLAIMS AND INTERESTS ............................................... 15

ARTICLE IV   IDENTIFICATION OF CLASSES OF CLAIMS AND INTERESTS  IMPAIRED AND
UNIMPAIRED BY THE PLAN ............................................................................................. 15

    A.  Classes of Claims and Interests that are Unimpaired ........................................... 15

    B.  Impaired Classes of Claims ............................................................................... 15

ARTICLE V   PROVISIONS FOR TREATMENT OF CLAIMS AND INTERESTS ............................ 16

ARTICLE VI   ACCEPTANCE OR REJECTION OF THE PLAN;  EFFECT OF REJECTION BY ONE OR
MORE IMPAIRED CLASSES OF CLAIMS OR INTERESTS ....................................................... 19

    A.  Impaired Classes of Claims Entitled to Vote ...................................................... 19

    B.  Acceptance by Impaired Classes ....................................................................... 19

    C.  Confirmation Pursuant to Section 1129 (b) of the Bankruptcy Code .................... 19

ARTICLE VII   MEANS FOR IMPLEMENTATION OF THE PLAN .............................................. 20

    A.  General Means of Implementation ..................................................................... 20

        1.  Establishment of the Trust ......................................................................... 20

        2.  Exclusivity Period .................................................................................... 20

        3.  Corporate Action ...................................................................................... 20

        4.  Exemption from Certain Transfer Taxes and Recording Fees. ....................... 20

            (a)  Exemption ....................................................................................... 20

(b)    Subsequent Issuances ............................................................21

B.    Post-Effective Date Entities ........................................................21

C.    Preservation of Rights , Causes of Action and Defenses/No Waiver of Claims................22

D.    Injunction ..............................................................................24

ARTICLE VIII   EXECUTORY CONTRACTS AND LEASES .........................................25

A.    Executory Contracts .................................................................25

B.    Approval of Assumption or Rejection ...............................................25

C.    Cure of Defaults .....................................................................26

D.    Rejection Claim Bar Date and Requirements for Rejection Claims .................26

ARTICLE IX   CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVE DATE................26

ARTICLE X   DISTRIBUTION OF CONSIDERATION ..............................................27

A.    Objections to Claims ................................................................27

        1.    Deadlines ...................................................................27

        2.    Authority to File Claim Objections .......................................27

B.    Disputed Claims and Disputed Interests – Cash Reserves .........................27

        1.    General .....................................................................27

        2.    Establishment of Cash or Other Reserves .................................28

        3.    Estimation ..................................................................28

        4.    Distribution upon Allowance ..............................................28

        5.    Release of Reserves ........................................................28

        6.    Undeliverable or Returned Distributions .................................29

C.    De Minimis Distributions ...........................................................29

D.    Trustee Bond ........................................................................29

E.    Compensation .......................................................................30

F.    Manner of Payment under the Plan ................................................30

G.    Compliance with Tax Requirements ................................................30

ARTICLE XI   MISCELLANEOUS PROVISIONS .................................................30

A.    Limitation of Liability and Releases ...............................................30

B.    Execution of Documents and Corporate Action ...................................31

C.    Notice of Effective Date ............................................................31

D.    Retention of Jurisdiction ...........................................................31

E.    Binding Effect .......................................................................33

F.   Amendment, Modification and Severability ................................................................. 33

G.   Exhibits .................................................................................................................... 33

H.   No Admission ........................................................................................................... 34

I.    General Authority ..................................................................................................... 34

J.    Dissolution of Committee .......................................................................................... 34

K.   Binding Effect ........................................................................................................... 34

L.   Governing Law .......................................................................................................... 34

M.   Headings .................................................................................................................. 35

N.   No Waiver ................................................................................................................ 35

O.   Severability of Plan Provisions .................................................................................. 35

P.   Post-Confirmation Status Report ............................................................................... 35

Q.   Payment of US Trustee Fees ...................................................................................... 36

R.   Final Decree ............................................................................................................. 36

S.   Revocation, Withdrawal, Cram-Down or Non-Consummation ...................................... 36

T.   Notice to Certain Parties ............................................................................................ 36

ARTICLE XII   REQUEST FOR CONFIRMATION .................................................................. 37

# INTRODUCTION

American Pacific Financial Corporation ("Debtor"), as debtor and debtor in possession in the above-captioned Chapter 11 Case, hereby proposes the following Plan of Liquidation for the resolution of outstanding Claims and Interests against the Debtor.  Capitalized terms used herein shall have the meanings ascribed to such terms in Article I.B. of this Plan.  The Debtor is a proponent of this Plan within the meaning of Section 1129 of the Title 11 of the United States Code Sections 101, *et. seq.* (the "Bankruptcy Code").

Under Bankruptcy Code Section 1125 (b) a vote to accept or reject this Plan cannot be solicited from a Claimholder  or Interest holder until such time as the Disclosure Statement has been approved by the Bankruptcy Court and distributed to Claimholders and Interest holders. The Disclosure Statement for this case was approved on _____, 2011 and has been distributed simultaneously with this Plan to all parties whose votes are being solicited.  The Disclosure Statement contains, among other things, a discussion of the Debtor's history, business and Plan, a summary and analysis of the Plan and related matters that affect the treatment of the Claims and Interests of the Debtor. ALL CLAIMHOLDERS AND INTERESTHOLDERS ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT AND RELATED SOLICITATION MATERIALS IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.

Subject to certain restrictions and requirements set forth in Bankruptcy Code Section 1127 and Bankruptcy Rule 3019 and those restrictions on modifications set forth in Article X. F. of the Plan, the Debtor expressly reserves its respective rights to alter, amend, modify, revoke or withdraw this Plan with respect to such Debtor, one or more times, prior to this Plan's substantial consummation.

# ARTICLE I.

## DEFINITIONS, RULES OF INTERPRETATION AND COMPUTATION OF TIME

**A.**    **Scope of Definitions**

For purposes of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in Article I.B. of this Plan.  Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

**B.**    **Definitions**

**"Administrative Claim"** means a Claim for any cost or expense of administration of the Chapter 11 Case allowed under Sections 503(b), 507(b) or 546(c)(2) of the Bankruptcy Code and entitled to priority under Section 507(a)(1) of the Bankruptcy Code, including, without limitation: (a) fees payable under 28 U.S.C. § 1930; (b) actual and necessary costs and expenses incurred in the ordinary course of the Debtor's business; (c) actual and necessary costs and expenses of preserving the Debtor's Estate or administering the Chapter 11 Case; (d) DIP Claims; and (e) all Professional Fees to the extent allowed by Final Order under Sections 330, 331, or 503 of the Bankruptcy Code.

**"Administrative Claims Bar Date"** means the deadline for filing proofs or requests for payment of Administrative Claims, which shall be forty-five (45) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court, except with respect to Professional Claims.

**"Affiliate"** has the meaning given such term by Section 101(2) of the Bankruptcy Code.

**"Allowed ... Claim"** or **"Allowed ... Interest"** means, respectively, except as otherwise allowed or provided for in this Plan, a Claim or an Interest, proof of which was timely and properly filed or, if no proof of claim or proof of interest was filed, which has been or hereafter is listed by

the Debtor in its Schedules as liquidated in amount and not disputed or contingent, and in either case, as to which no objection to the allowance thereof has been interposed on or before the later of: (a) 45 days after the Effective Date; or (b) such other applicable period of limitation as may be fixed or extended by the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder.

**"APFC"** means American Pacific Financial Corporation, a California corporation, Debtor and Debtor in Possession.

**"Asset Sale"** means, collectively, the sale or sales of the Debtor's assets whether substantially in their entirety or in several lots.

**"Avoidance Actins"** means Causes of Action against Persons arising under any of Sections 510, 547, 548, 549, 550 and 551 of the Bankruptcy Code, or under similar or related state or federal statutes and common law, including fraudulent transfer laws, whether or not litigation has been commenced as of the Confirmation Date to prosecute such Avoidance Claims.

**"Ballot"** means each of the ballot forms that are distributed with the Disclosure Statement to Claimholders or Interestholders included in Classes that are Impaired under this Plan and entitled to vote to accept or reject this Plan.

**"Bankruptcy Code"** means the Bankruptcy Reform Act of 1978, as amended and codified in title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as in effect on the date hereof.

**"Bankruptcy Court"** means the United States Bankruptcy Court for the District of Nevada or such other court as may have jurisdiction over the Chapter 11 Case.

**"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Case or proceedings therein, and the Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Case or proceedings therein, as the case may be.

"**Bar Date**" means the deadline set by the Bankruptcy Court pursuant to the Bar Date Order or other Final Order for filing proofs of claim in the Chapter 11 Case.

"**Board of Advisors**".   The Board of Advisors initially shall be composed of two persons selected by a majority vote by the Official Committee of Unsecured Creditors.  Future changes to the trustee and/or advisory board shall be determined pursuant to the terms of the Trust Agreement.

"**Business Day**" means any day, excluding Saturdays, Sundays and "legal holidays" (as defined in Bankruptcy Rule 9006(a)), on which commercial banks are open for business in Nevada.

"**Cash**" means cash or cash equivalents.

"**Causes of Action**" means any and all actions, proceedings, causes of action, demands, suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims, whether known, unknown, suspected or unsuspected, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise, including Avoidance Claims, unless otherwise waived or released by the Debtor.

"**Chapter 11 Case**" means the Chapter 11 Case of the Debtor pending in the Bankruptcy Court under Case No. 10-27855-BAM.

"**Claim**" means a "claim," as defined in Section 101 of the Bankruptcy Code, against the Debtor.

"**Claimholder**" means a holder of a Claim.

"**Class**" means a category of Claimholders or Interestholders.

"**Confirmation Date**" means the date of entry of the Confirmation Order.

**"Confirmation Hearing"** means the hearing before the Bankruptcy Court held to consider confirmation of this Plan and related matters under Section 1128 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

**"Confirmation Order"** means the order entered by the Bankruptcy Court confirming this Plan.

**"Creditor"** means any holder of a Claim, whether or not such Claim is an Allowed Claim, encompassed within the statutory definition set forth in Section 101(10) of the Bankruptcy Code.

**"Creditors' Committee"** means the Official Committee of Unsecured Creditors appointed pursuant to Section 1102(a) of the Bankruptcy Code in the Chapter 11 Cases, as the membership thereof may change from time to time.

**"Cure"** means: (a) the cure of any non-monetary defaults to the extent required, if at all, pursuant to Section 365 of the Bankruptcy Code; and (b) with respect to monetary defaults, the distribution within a reasonable period of time following the Effective Date of Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption (or assumption and assignment) of an executory contract or unexpired lease, pursuant to Section 365 of the Bankruptcy Code, in an amount equal to all unpaid monetary obligations or such other amount as may be agreed upon by the parties, under such executory contract or unexpired lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable non-bankruptcy law.

**"Debtor"** means American Pacific Financial Corporation.

**"DIP Credit Agreement"** means that certain Debtor in Possession Loan Agreement, dated as of _____, as amended, supplemented or otherwise modified from time to time, and all documents executed in connection therewith, by and among the Debtor and the DIP Lender, which was executed by the Debtor.

**"DIP Claim"** means all "Obligations" (as defined in the DIP Order) outstanding under the DIP Order as of the Effective Date.

**"DIP Order"** means, collectively, (i) the interim order that was entered by the Bankruptcy Court on _____ authorizing and approving the DIP Facility and the agreements related thereto, and (ii) any and all orders entered by the Bankruptcy Court authorizing and approving amendments to the DIP Credit Agreement.

**"DIP Lenders"** means the lenders from time to time party to the DIP Credit Agreement.

**"Disallowed Claim" or "Disallowed Interest"** means a Claim or any portion thereof, or an Interest or any portion thereof, that: (a) has been disallowed by a Final Order; (b) is Scheduled at zero or as contingent, disputed or unliquidated and as to which a proof of claim or interest bar date has been established but no proof of claim or interest has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law; or (c) is not Scheduled and as to which a proof of claim or interest bar date has been set but no proof of claim or interest has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law.

**"Disclosure Statement"** means the written disclosure statement that relates to this Plan, as approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017; as such disclosure statement may be amended, modified or supplemented from time to time.

**"Disputed Claim or Disputed Interest"** means a claim or any portion thereof, or any Interest or any portion thereof, that is neither an Allowed Claim nor a Disallowed Claim, or an Allowed Interest or a Disallowed Interest, as the case may be, and includes, without limitation,

Claims or Interests that (a) have not been Scheduled by the Debtor or have been Scheduled at zero, or have been Scheduled as unknown, contingent, unliquidated or disputed and are the subject of a timely filed proof of claim or interest that differs in nature, amount or priority from the Schedules, or (b) are the subject of an objection filed with the Bankruptcy Court, which has not been withdrawn or overruled by a Final Order of the Bankruptcy Court.

**"Distribution Date"** means the date, selected by the Debtor, occurring as soon as practicable after the Effective Date as determined by the Debtor and/or the Trustee, upon which distributions to holders of Allowed Claims and Allowed Interests entitled to receive distributions under this Plan shall commence.

**"Effective Date"** means the Business Day determined by the Debtor on which all conditions to the consummation of this Plan have been either satisfied or waived as provided in this Plan and is the day upon which this Plan is substantially consummated.

**"Estate"** means the bankruptcy Estate of the Debtor created pursuant to Section 541 of the Bankruptcy Code.

**"Exhibit"** means an exhibit annexed to either this Plan, in a supplement to the Plan or as an appendix to the Disclosure Statement.

**"Exhibit Filing Date"** means the date on which Exhibits to this Plan or the Disclosure Statement shall be filed with the Bankruptcy Court, which date shall be at least ten (10) days prior to the commencement of the hearing to consider approval of the Disclosure Statement.

**"Face Amount"** means: (a) when used in reference to a Disputed or Disallowed Claim, the full stated liquidated amount claimed by the Claimholder in any proof of claim timely filed with the Bankruptcy Court or otherwise deemed timely filed by any Final Order of the Bankruptcy Court or other applicable bankruptcy law, or the amount of the Claim acknowledged by the Debtor in any objection Filed to such Claim or in the Schedules as a noncontingent, liquidated and undisputed

Claim, estimated by the Bankruptcy Court pursuant to Section 502(c) of the Bankruptcy Code or proposed by the Debtor or the Trustee and approved by the United States trustee, if no proof of Claim has been Filed by the Bar Date or has otherwise been deemed timely Filed under applicable law or if the proof of Claim specifies an unliquidated amount.; and (b) when used in reference to an Allowed Claim, the allowed amount of such Claim.

**"Final Order"** means an order or judgment, the operation or effect of which has not been stayed, reversed or amended and as to which order or judgment (or any revision, modification or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending.

**"Impaired"** refers to any Claim or Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

**"Interest"** means all equity interests in the Debtor, including all issued, unissued, authorized or outstanding shares of stock, together with any warrants, options or contract rights to purchase or acquire such interests at any time.

**"Interestholder"** means a holder of an Interest.

**"Net Sale Proceeds"** shall mean the Cash proceeds received by the Trust from the Asset Sale less the cost of sale and an allocated cost of overhead. The overhead shall be agreed upon by the Liquidation Trustee and the holder of an Allowed Secured Claim at the time the claim holder determines whether their collateral should be transferred to the Trust.

**"Person"** means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit (as defined in Section 101(27) of the Bankruptcy Code) or other entity.

**"Petition Date"** means with respect to Debtor 09/21/2010   the date on which Debtor filed its petition for relief in the Bankruptcy Court.

**"Plan"** means this plan of Liquidation for the resolution of outstanding Claims and Interests in the Chapter 11 Case, as herein proposed by the Debtor including all Exhibits, supplements, appendices and schedules hereto, either in their present form or as the same may be further altered, amended or modified from time to time in accordance with the Bankruptcy Code and Bankruptcy Rules.

**"Priority Tax Claims"** means any and all Claims of a governmental unit of the kind specified in Section 507(a)(8) of the Bankruptcy Code.

**"Professional"** means those Persons retained in the Chapter 11 Case by orders of the Bankruptcy Court pursuant to Sections 327 and 1103 of the Bankruptcy Code or otherwise; provided, however, that Professional does not include those Persons retained pursuant to the Ordinary Course Professional Order.

**"Professional Claim"** means an Administrative Claim of a Professional for compensation for services rendered or reimbursement of costs, expenses or other charges and disbursements incurred relating to services rendered or expenses incurred after the Petition Date and prior to and including the Effective Date.

**"Professional Fee Bar Date"** means the deadline by which all applications for compensation or expense reimbursement, including Professional Claims, must be filed, which deadline shall be forty-five (45) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court.

**"Pro Rata"** means, at any time, the proportion that the Face Amount of a Claim in a particular Class or Classes bears to the aggregate Face Amount of all Claims (including Disputed

Claims, but excluding Disallowed Claims) in such Class or Classes, unless the Plan provides otherwise.

**"Purchaser"** means the purchaser or purchasers of the Sale Assets.

**"Released Parties"** means, collectively, (i) all officers, directors, managers and members of the Debtor, and all independent contractors employed by the Debtor, in each case, as of the date of the commencement of the hearing on the Disclosure Statement, (ii) the Statutory Committees and all members of the Statutory Committees in their respective capacities as such, (iii) the DIP Lenders in their capacities as such, (iv) all Professionals and (v) with respect to each of the above-named Persons, such Person's affiliates, principals, employees, agents, officers, directors, members, managers, financial advisors, attorneys and other professionals, in their capacities as such.

**"Retained Actions"** means all Claims, Causes of Action, rights of action, suits and proceedings, whether in law or in equity, whether known or unknown, which the Debtor or the Debtor's Estate may hold against any Person, including, without limitation, (a) Claims and Causes of Action brought prior to the Effective Date, (b) Claims, Causes of Action brought as part of the Adversary Proceeding, (c) Claims and Causes of Action against any Persons for failure to pay for products or services provided or rendered by the Debtor, (d) Claims and Causes of Action seeking the recovery of any of the Debtor's accounts receivable, other receivables or rights to payment created or arising in the ordinary course of the Debtor's businesses, including without limitation, claim overpayments and tax refunds and (e) Avoidance Claims, if any, in existence as of the Confirmation Date.

**"Scheduled"** means, with respect to any Claim or Interest, the status, priority, and amount, if any, of such Claim or Interest as set forth in the Schedules.

**"Schedules"** means the schedules of assets and liabilities and the statements of financial affairs filed in the Chapter 11 Case by the Debtor, as such schedules or statements have been or

may be further modified, amended or supplemented from time to time in accordance with Bankruptcy Rule 1009 or orders of the Bankruptcy Court.

"**Secured Claims**" means all Claims secured by a security interest in or a lien on property in which the Debtor's Estate has an interest or that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value, as of the Effective Date or such other date as is established by the Bankruptcy Court, of such Claimholder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined by a Final Order of the Bankruptcy Court or as otherwise agreed upon in writing by the Debtor and the Claimholder.

"**Secured Tax Claims**" means the Secured Claim of any governmental taxing authority to the extent of the value of the security interests securing such claims (taking into effect the value of collateral and the priority and scope of the liens ) as determined by Final Order in the Adversary Proceeding.

"**Statutory Committees**" means the Creditors' Committee.

"**Trust**" means the Liquidating Trust which will be the successor to the Debtor under the Plan.

"**Trust Agreement**" means the agreement governing the Liquidating Trust, attached as Exhibit 5 to the Disclosure Statement.

"**Trust Assets**" means all property of the estate" of the Debtor in Possession, as that term is defined in Bankruptcy Code Section 541 and all Avoidance Actions and Retained Actions.

"**Trustee**" means the person designated by the Official Committee of Unsecured Creditors to serve as trustee for the Trust, pursuant to this Plan and the Trust Agreement.  Future changes to the trustee and/or advisory board shall be determined pursuant to the terms of the Trust Agreement.

"**Unsecured Claims**" means any Claim that is not a Secured Claim or Administrative Claim, including, but not limited to, any deficiency claim belonging to a Claimholder that asserted a Secured Claim.

"**Voting Deadline**" means the date established by the Bankruptcy Court by which holders of Allowed Claims and Interests are determined for purposes of such holders' right to submit Ballots.

## C.    <u>Rules of Interpretation</u>

For purposes of this Plan, unless otherwise provided herein, (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) each pronoun stated in the masculine, feminine or neuter includes the masculine, feminine and neuter; (c) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (d) any reference in this Plan to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified or supplemented pursuant to this Plan; (e) any reference to an entity as a holder of a Claim or Interest includes that entity's successors and assigns; (f) all references in this Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to this Plan; (g) the words "herein," "hereunder" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (h) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (i) subject to the provisions of any contract, certificates of incorporation, by-laws, instrument, release or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in

accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules; and (j) the rules of construction set forth in Section 102 of the Bankruptcy Code will apply.

**D.      Computation of Time**

In computing any period of time prescribed or allowed by this Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.

**E.      References to Monetary Figures**

All references in this Plan to monetary figures shall refer to United States of America currency, unless otherwise expressly provided.

**F.      Exhibits**

All Exhibits are incorporated into and are a part of this Plan as if set forth in full herein and, to the extent not annexed hereto, such exhibits shall be filed with the Bankruptcy Court on or before the Exhibit Filing Date.  After the Exhibit Filing Date, copies of Exhibits can be obtained upon written request to McDonald Carano Wilson LLP, 100 W. Liberty Street, 10th Floor, Reno, Nevada 89501 (Attn:  Kaaran E. Thomas, Esq.), counsel to the Debtor.  To the extent any Exhibit is inconsistent with the terms of this Plan, unless otherwise ordered by the Bankruptcy Court, the non-Exhibit portion of this Plan shall control.

**ARTICLE II.**

**TREATMENT OF ADMINISTRATIVE CLAIMS AND PROFESSIONAL CLAIMS**

All Claims and Interests, except Administrative Claims, DIP Claims and Professional Claims, are placed in the following Classes.  In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, DIP Claims and Professional Claims, as described in Article II.A, have not been classified and thus are excluded from the following Classes.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Equity Interest

qualifies within the description of that Class and is classified in other Classes to the extent that any remainder of the Claim or Interest qualifies within the description of such other Classes.

**A.    Administrative Claims and Professional Claims**

On the Distribution Date occurring after the later of (a) the date an Administrative Claim or Professional Claim becomes an Allowed Administrative Claim or an Allowed Professional Claim, or (b) the date an Administrative Claim or Professional Claim becomes payable pursuant to any agreement between the Debtor (or the Trustee) and the holder of such Administrative Claim or Professional Claim, an Allowed Administrative Claimholder or holder of an Allowed Professional Claim shall receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Administrative Claim or Professional Claim, (i) Cash equal to the unpaid portion of such Allowed Administrative Claim or (ii) such other treatment as to which the Debtor or the Trustee and such Claimholder shall have agreed upon in writing; provided, however, that: (y) DIP Claims shall be deemed Allowed Claims as of the Effective Date, which DIP Claims shall be paid in accordance with this Plan; and (z) Allowed Administrative Claims with respect to liabilities incurred by the Debtor in the ordinary course of business during the Chapter 11 Case, shall be paid in the ordinary course of business in accordance with the terms and conditions of any agreement or Final Orders of the Bankruptcy Court relating thereto.

If there are insufficient funds to pay Allowed Professional Claims in full at the Confirmation Date or Effective Date, a holder of an Allowed Professional Claim may elect as its sole discretion to continue to receive payments until paid in full on its claim from the Trust. Such payments shall be made prior to any distribution by the Trust for distribution to unsecured creditors. Notice of such election shall be provided to the Trust within 60 days of the Effective Date, or within 60 days of such later date that the claimant knows or should know that its Allowed Professional Claim will not be paid in full absent such election.

**B.**     **DIP Claims**

The DIP Claims shall be fully and finally satisfied in accordance with their terms on or before the Effective Date or receive such other treatment as to which the Debtor and the DIP Lender shall have agreed upon in writing.

## ARTICLE III.

## CLASSIFICATION OF CLAIMS AND INTERESTS

Pursuant to Bankruptcy Code Section 1122, set forth below is a designation of Classes of Claims against and Interests in the Debtor. A Claim or Interest is placed in a particular Class for the purposes of voting on this Plan and of receiving distributions pursuant to this Plan only to the extent that such Claim or Interest is an Allowed Claim or an Allowed Interest in that Class and such Claim or Interest has not been paid, released, or otherwise settled prior to the Effective Date. This Plan constitutes a separate plan proposed by the Debtor.

Class 1 (Secured Claims)

Class 2 (Priority Claims)

Class 3 (Unsecured Claims)

Class 4 (Administrative Convenience Claims)

Class 5 (Equity Interests)

## ARTICLE IV.

## IDENTIFICATION OF CLASSES OF CLAIMS AND INTERESTS IMPAIRED AND UNIMPAIRED BY THE PLAN

**A.**     **Classes of Claims and Interests that are Unimpaired**

There are no classes of unimpaired claims.

**B.**     **Impaired Classes of Claims**

All of the classes of Claims are impaired.

# ARTICLE V.

## **PROVISIONS FOR TREATMENT OF CLAIMS AND INTERESTS**

The treatment of Claims and Interests as provided in this Article V represents a compromise and full and final settlement pursuant to Bankruptcy Code Section 1123(b)(3) and Bankruptcy Rule 9019, of the various Claims and Interests of Parties in interest in the Chapter 11 Case.

**Class 1 (Secured Claims).** Impaired.

Class 1 consists of all of the holders of Allowed Secured Claims secured by valid, perfected and enforceable liens and security interests in property of the estate.

Class 1A consists of all Allowed Secured Claims secured by Debtor's property in Hesperia California with a book value of $1,233,718.43:

| | | | |
|---|---|---|---|
| Waveta Taylor 1st lien parcel 1: | Debt | $55,931.67 |
| Mercer Pension 2nd lien parcel 1: | Debt | $1,000,408.40 |
| William Mudd 3rd lien parcel 1: | Debt | 400,000.00 |
| Charles McCamey 1st lien parcel 4: | Debt | $300,000.00 |
| William Mudd 2nd lien parcel 4: | Debt | $400,000.00 |
| William Mudd 1st lien parcel 5: | Debt | $400,000.00 |

This property is also encumbered by the lien securing payment of taxes to San Bernardino County. (Class 1B)

And all Allowed Secured Claims secured by Debtor's two lots on Scotch Lane in Colton California, with a book value of $411,608.37, have the following lien holders:

| | | | |
|---|---|---|---|
| Ada Albright 1st lien: | Debt | $50,000.00 |

Treatment:  Class 1A creditors will retain their liens on the property securing payment of their Allowed Secured Claims.  They will have the election to either receive their collateral on the

Effective Date or have their collateral assigned to the Trust.  If they elect to have their collateral assigned to the Trust, and if the Liquidating Trustee agrees to accept the Collateral, the Trust will manage and sell the collateral.  Class 1A creditors will receive the Net Proceeds from sale of their collateral. The secured claimant shall retain its liens until the secured claim is paid in full.

Class 1B consists of the Allowed Secured Claim of San Bernardino County Tax Assessor. Class 1B shall retain the liens securing payment of its Allowed Secured Claim. On or before the Effective Date, at the election of the Liquidating Trustee, the property securing the Class 1B Claim will either be abandoned or transferred to the Liquidating Trust subject to the Class 1B claim.  If the Liquidating Trust acquires the property the Liquidating Trustee will pay the Class 1B claim over 5 years.  Payments shall start on the Effective Date. The claim shall be paid in full with all applicable costs, fees, charges, (including late charges) and interest in accordance with sections 11 USC 506(b) and 511 and in the manner described in 11USC 1129(c).  The secured claimant shall retain its liens until the secured claim is paid in full.   The current taxes for the year 2011-12 will also be paid timely in the normal and ordinary course of business in full with all applicable costs, fees, charges, (including late charges) and interest in accordance with sections 11 USC 506(b) and 511.

The Class 1B Claim will be paid upon the sale/transfer of the real property, to the extent sale proceeds are sufficient to pay the claim.  Payment will be made at the close of escrow and directly from the sale proceeds in full.

In the event the Trust abandons  the real property securing the San Bernardino Secured Claim, the Secured Tax Claim will continue to remain as a lien on the property and the Debtor, the Estate and the Trust will be not liable for the Secured Tax Claim. The Trust shall have no liability for any deficiency owing to Class 1B after its collateral is sold.

The property securing the Class 1B claim shall be sold within five (5) years from the Effective Date.

**Class 2 (Priority Claims).**

Class 2 consists of the holders of Allowed Priority Claims.  Priority claims are Prepetition

unsecured claims that are entitled to be paid ahead of other general Prepetition Allowed Unsecured Claims by virtue of Bankruptcy Code Section 507.  The holder of Priority Claims is Larry R. Polhill (2008 wages for $11,000).

Priority Wage Claims will receive trust certificates for payment of their claims without interest. The Priority Wage claims will be paid from liquidation of Trust Assets before payment to Class 3 and Class 4 Claims.

**Class 3 (Unsecured Claims)**.

Class 3 consists of general Prepetition Allowed Unsecured Claims in excess of Five Thousand Dollars ($5,000.00), which will receive certificates in the Liquidating Trust.

Each holder of an Allowed Unsecured Claim against APFC shall receive a trust certificate entitling it to its Pro Rata distribution of the Class 3 Participation Agreement from the Trust, up to the amount of its Allowed Claim together with interest at the federal judgment rate. Notwithstanding the foregoing, the holder of a Claim in Class 3 may receive such other less favorable treatment as to which the holder of such claim and the Debtor or Trustee, as applicable, have agreed upon in writing.

**Class 4 (Administrative Convenience Claims)**.

Class 4 consists of Prepetition Allowed Unsecured Claims of Five Thousand Dollars ($5,000.00) or less.  Up to five (5) holders of Allowed Claims in Class 3 may elect to reduce the amount of their claims to $5,000.00 to participate in Class 4.

Each holder of an Allowed Administrative Convenience Claim against APFC shall receive Cash in the amount of fifty (50%) percent of its Allowed Claim out of the first distribution from the Trust after Administrative Claims and Claims in classes 1 and 2 are paid in full

**Class 5 (Equity Interests)**.

Class 5 consists of Equity Interests (shares) in the Debtor. All Equity Interests are owned by Mr. Larry Polhill.

On the Effective Date, the Debtor's Equity Interest Holder's stock shall be cancelled.  Class 5 shall receive trust certificates entitling them to receive any Trust Assets remaining after all creditors are paid in full with interest.

### ARTICLE VI.

### ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF REJECTION BY ONE OR MORE IMPAIRED CLASSES OF CLAIMS OR INTERESTS

**A.      Impaired Classes of Claims Entitled to Vote**

Except as otherwise provided in Orders of the Bankruptcy Court pertaining to solicitation of votes on this Plan holders of Allowed Claims in each Impaired Class are entitled to vote in their respective classes as a class to accept or reject the Plan.

**B.      Acceptance by Impaired Classes**

Pursuant to Bankruptcy Code Section 1126(c) and except as provided in Bankruptcy Code Section 1126(e), an Impaired Class (Classes 1, 3 and 4) has accepted the Plan if the Plan is accepted by the holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.

**C.      Confirmation Pursuant to Section 1129 (b) of the Bankruptcy Code**

If any impaired classes of Claims entitled to vote should not accept this Plan by the requisite statutory majorities provided in Bankruptcy Code Section 1126 (c), Debtor reserves the right to request that the Bankruptcy Court confirm this Plan under Section 1129 (b) of the Bankruptcy Code.

# ARTICLE VII.

## MEANS FOR IMPLEMENTATION OF THE PLAN

**A.    General Means of Implementation**

**1.    Establishment of the Trust.**  On the Effective Date, the Debtor, on its own behalf and on behalf of the holders of the holders of Allowed Claims will take all steps necessary to establish the Trust pursuant to the Trust Agreement.

The Debtor will transfer all the Trust Assets, including the Avoidance Actions and Retained Actions, to the Trustee, who will own and manage the Trust Property in consultation with the Advisory Board, and will be responsible for funding the costs and expenses of the Trust.

The Creditors Committee will select the Trustee and any advisory committee to serve in connection with the Trust.

**2.    Exclusivity Period.**  Debtor will retain the exclusive right to amend or modify this Plan and to solicit acceptances of any amendments to or modifications of this Plan, through and until the Effective Date.

**3.    Corporate Action.**  Each of the matters provided for in this Plan involving the corporate structure of the Debtor or corporate action to be taken by or required of the Debtor shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized approved and, to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by stockholders, creditors or directors of the Debtor.

**4.    Exemption from Certain Transfer Taxes and Recording Fees.**

**(a)    Exemption**.  Pursuant to Bankruptcy Code Section 1146 (c), any transfers from the Debtor to a Trust or to any other Person or entity pursuant to this Plan, or any agreement regarding the transfer of title to or ownership of any of the Debtor's real or personal property will not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax,

mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the Confirmation Order will direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

      **(b)  Subsequent Issuances**.  All subsequent issuances, transfers or exchanges of any instrument of transfer by Debtor in the Chapter 11 Case, whether in connection with a sale, transfer, or the making, delivery or recording of any deed or other instrument or transfer shall be deemed in furtherance of the Plan.

**B.**      <u>Post-Effective Date Entities</u>

      The Trust shall be governed and created pursuant to the Plan and the Trust Agreement.  A copy of the proposed Trust Agreement shall be included in the Plan Documents Supplement.  The Trust shall have the discretion, subject to the terms of the Trust Agreement, to retain and compensate professionals, to obtain and store Debtor's records, to compensate the Trustee, object to Claims, realize assets, whether by suit, compromise, release or otherwise, and take all actions reasonable to maximize the recovery to beneficiaries of the Trust.

      The Trustee shall be designated; and Debtor shall provide all disclosures required respecting the Trustee pursuant to Bankruptcy Code Sections 1129 (a)(4) and (a)(5), not less than ten days before the Confirmation Hearing.  The Trustee shall be approved by the Court at the Confirmation Hearing.

      The APFC Holders of Allowed Claims and Interests will hold all beneficial interests in the Trust

**C.**     <u>**Preservation of Rights , Causes of Action and Defenses/No Waiver of Claims**</u>

Except as expressly released or otherwise expressly provided in the Plan, pursuant to Bankruptcy Code section 1123(b), the Trust shall be vested with and shall retain and may enforce any claims, rights, and causes of action that the Debtor or the Estates may hold or have against any entity, all of which are hereby preserved, including the Avoidance Actions and Retained Actions, and all rights of disallowance, offset, recharacterization and/or equitable subordination with respect to Claims, and causes of action that have been or may be brought by or on behalf of the Debtor, the Estate, or the Trust.  Such claims, rights and causes of action shall remain assets of and vest in the Trust, whether or not litigation relating thereto is pending on the Effective Date, and whether or not any such claims, rights and causes of action have been listed or referred to in the Plan, the Disclosure Statement, or any other document filed with the Court.  Neither the Debtor, the Estates, nor the Trust waives, releases, relinquishes, forfeits, or abandons (nor shall they be estopped or otherwise precluded or impaired from asserting) any claims, rights and causes of action, including the Avoidance Actions and Retained Actions, or defenses that constitute property of the Debtor or its Estate: (a) whether or not such claims, rights, causes of action, including the Avoidance Actions and Retained Actions, or defenses have been listed or referred to in this Plan, the Disclosure Statement, or any other document filed with the Court, (b) whether or not such claims, rights, causes of action, including the Avoidance Actions and Retained Actions or defenses are currently known to the Debtor, and (c) whether or not a defendant in any litigation relating to such claims, rights and causes of action, including the Avoidance Actions and Retained Actions, filed a proof of claim in any of the Case, filed a notice of appearance or any other pleading or notice in any of the Cases, voted for or against this Plan, or received or retained any consideration under this Plan. Without in any manner limiting the scope of the foregoing, notwithstanding any otherwise applicable principle of law or equity, including any principles of judicial estoppel, res judicata, collateral estoppel, issue preclusion, or any similar doctrine, the failure to list, disclose, describe, identify, analyze or refer to any claims, rights and causes of action, including the Avoidance Actions and Retained Actions, or defenses in the Plan, the Disclosure Statement, or any other

document filed with the Court shall in no manner waive, eliminate, modify, release, or alter the right of the Estate or the Trust to commence, prosecute, defend against, settle, recover on account of, and realize upon any such claims, rights and causes of action, including the Avoidance Actions and Retained Actions, that the Debtor or its Estate have or may have as of the Effective Date.

The Debtor expressly reserves all its claims, rights and causes of action, including the Avoidance Actions and Retained Actions, and defenses for later adjudication by the Trust and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches will apply to such claims, rights and causes of action, including the Avoidance Actions and Retained Actions and defenses upon or after the confirmation or consummation of the Plan based on the Disclosure Statement, the Plan or the Confirmation Order.  In addition, the Trust expressly reserves the right to pursue or adopt claims, rights and causes of action, including the Avoidance Actions and Retained Actions that are alleged in any lawsuits in which the Debtor is a defendant or an interested party, against any entity, including the plaintiffs or co-defendants in such lawsuits.  Any entity to whom the Debtor has incurred an obligation (whether on account of services, purchase, sale of goods or otherwise), or who has received services from the Debtor, or who has received money or property from the Debtor, or who has transacted business with the Debtor, or who has leased equipment or property from or to the Debtor should assume that such obligation, receipt, transfer or transaction may be reviewed by the Trust subsequent to the Effective Date and may be the subject of an action after the Effective Date, whether or not: (a) such entity has Filed a proof of Claim against the Debtor in this Case; (b) such entity's proof of Claim has been objected to by the Debtor; (c) such entity's Claim was included in the Debtor's Schedules; or (d) such entity's scheduled Claim has been objected to by the Debtor or has been identified by the Debtor as contingent, unliquidated or disputed.

**Neither the failure to list a Claim in the Schedules filed by the Debtor, the failure of the Debtor or any other person to object to any Claim for purposes of voting, the failure of the Debtor or any other person to object to a Claim or Administrative Claim before confirmation**

1    **or consummation of the Plan or the Effective Date, the failure of any person to assert a claim**

2    **or cause of action before confirmation or consummation of the Plan or the Effective Date, the**

3    **absence of a proof of claim having been filed with respect to a Claim, nor any action or**

4    **inaction of the Debtor or any other person with respect to a Claim, or Administrative Claim,**

5    **other than a legally effective express waiver or release, shall be deemed a waiver or release of**

6    **the right of the Debtor, the Estate or the Trust, before or after solicitation of votes on the Plan**

7    **or before or after the Confirmation Date or the Effective Date to (a) object to or examine such**

8    **Claim or Administrative Claim, in whole or in part or (b) retain and either assign or**

9    **exclusively assert, pursue, prosecute, utilize, otherwise act or otherwise enforce any claim or**

10   **cause of action against the holder of any such Claim.**

11   **D.      Injunction**

12   Holders of Claims against and Equity Interest in the Debtor may not pursue (1) property of

13   the Estate other than through the Claims and Equity Interests allowance process; or (2) the

14   Released Parties.

15   No holder of a Claim or Equity Interest may receive any payment from or seek recourse

16   against any assets that are distributed or to be distributed under the Plan except for those assets

17   required to be distributed to such holder as expressly provided for in the Plan.  As of the Effective

18   Date, all Entities are precluded from asserting against the Estate, the Trust or any assets that are

19   distributed or to be distributed under the Plan any Claims, rights, Causes of Action, liabilities or

20   interests based upon any act or omission , transaction or other activity of any kind or nature that

21   occurred prior to the Effective Date, other than as expressly provided in the Plan or Confirmation

22   Order, regardless of the filing, lack of filing, allowance or disallowance of such a Claim or Equity

23   interest and regardless of whether such an Entity has voted to accept or reject the Plan.

24   Except as otherwise provided in the Plan or the Confirmation Order, on and after the

25   Effective Date all Entities that have held, currently hold or may hold a debt, Claim, other liability

26

27

28

or Interest against or in the Debtor shall be permanently enjoined from taking any of the following

actions on account of such debt Claim, liability, Interest or right: (A) commencing or continuing in

any manner any action or other proceeding on account of such debt, Claim, liability Interest or

right against assets or proceeds thereof that are to be distributed under the Plan, other than to

enforce any right to a distribution with respect to such assets or the process thereof as may be

provided under the Plan; (B) enforcing, attaching, collecting or recovering in any manner any

judgment, award, decree or order against any assets to be distributed under the Plan, other than as

permitted under subparagraph (A) above; and (C) creating, perfecting or enforcing any lien or

encumbrance against any assets to be distributed under the Plan, other than as permitted by the Pan,

provided that nothing contained herein shall limit the rights of any distribute under the Plan from

taking any actions in respect of property distributed or to be distributed to it under the Plan.

### ARTICLE VIII.

### EXECUTORY CONTRACTS AND LEASES

**A.**    **Executory Contracts**

All executory contracts and unexpired leases set forth on Exhibit "4" to the Disclosure

Statement [to be filed on the Exhibit Filing Date] will be assumed by the Debtor and assigned to

the Trust or a designated assignee under Section 365 of the Bankruptcy Code,  by Order of the

Bankruptcy Court.  All remaining executory contracts and unexpired leases shall be deemed

rejected under Section 365 of the Bankruptcy Code.

**B.**    **Approval of Assumption or Rejection**

Entry of the Confirmation Order shall constitute: (i) the approval pursuant to Bankruptcy

Code Section 365(a) of the assumption of the executory contracts and unexpired leases set forth on

Exhibit "4".  Entry of the Confirmation Order shall constitute the approval, pursuant to Bankruptcy

Code Section 365, of the rejection of the executory contracts and unexpired leases that are not

listed on Exhibit "4".

**C.    Cure of Defaults**

To the extent that such cure Claims constitute monetary defaults, the cure amount Claims associated with each assumed executory contract and unexpired lease will be satisfied by the Debtor or the Trust pursuant to Section 365 of the Bankruptcy Code.

**D.    Rejection Claim Bar Date and Requirements for Rejection Claims**

Claims arising from the rejection of an Executory Contract or Unexpired Lease (a "Rejection Claim") must be filed thirty (30) days after the Effective Date (the "Executory Contracts Bar Date") or such Claims will be forever barred and will not be enforceable against the Trust or the Trust Assets.  The Rejection Claim must state the specific amount of damages asserted and provide documents supporting the calculation.  Any Rejection Claim that does not comply with this requirement will be deemed Disallowed.

**ARTICLE IX.**

**CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVE DATE**

- The Confirmation Order shall have become a Final Order;

- No request for revocation of the Confirmation Order under section 1144 of the Bankruptcy Code has been made, or, if made, remains pending;

- Each exhibit, document or agreement to be executed in connection with the Plan shall be in final form acceptable to the Debtor and the DIP Lender and their respective counsel,  and the Trust Agreement shall be in final form acceptable to the foregoing entities;

- The Class 3 Trust Agreement shall have been executed and delivered;

- The Exit Facility shall each be in full force and effect and all conditions therein to the obligations of the parties to such loans shall have been satisfied or waived as set forth in the Exit Facility Documents;

- All other agreements, writings and undertakings required under the Plan shall be executed and ready for consummation; and

- Debtor may waive any of the above conditions to the Effective Date, in whole or in part and in its sole and absolute discretion by Filing a written waiver.

## ARTICLE X.

## DISTRIBUTION OF CONSIDERATION

**A.**     **Objections to Claims**

     **1.**     **Deadlines.** Unless otherwise extended by the Court, objections to the allowance of Claims shall be Filed and served upon the Entities asserting such Claims as follows: (A) for any and all Claims to which the General Bar Date applies, forty-five (45) days after the Effective Date; (B) for any and all Claims to which the Administrative Claims Bar Date applies, thirty (30) days after the Administrative Claims Bar Date; and (C) for any and all Claims to which the Executory Contracts Bar Date applies, thirty (30) days after the expiration of that Bar Date.

     **2.**     **Authority to File Claim Objections.** Any Party In Interest, including the Debtor or the Class 3 Trustee, may file an objection to any Claim or Interest, regardless of whether the applicable Claims Bar Date occurs before or after the Effective Date. The Trustee shall have the authority to settle any Claim or Interest in accordance with the terms of the Trust Agreement.

**B.**     **Disputed Claims and Disputed Interests – Cash Reserves**

     **1.**     **General.** On the Effective Date, no distributions shall be made unless a Claim is an Allowed Claim on the Effective Date. Except as may otherwise be agreed with respect to any Disputed Claim or Disputed Interest, no payment or distribution will thereafter be made with respect to all or any portion of a Disputed Claim or Disputed Interest until such Claim or Interest is an Allowed Claim or Interest. Payments to all holders of Claims and Interests must be made in accordance with the Plan.

295098 v2

**2.      Establishment of Cash or Other Reserves.**  Prior to making any distribution of Cash or APFC Class 3 Trust Interests on Allowed Claims in accordance with the terms of this Plan, the Trust shall establish a reserve for each Disputed Claim.  The reserve shall equal the amount of Cash or Trust Interests, as applicable, that would have been distributable had such Disputed Claim been Allowed on the Effective Date in the amount set forth in the Proof of Claim or, if no Proof of Claim has been filed, the amount set forth in the Schedules as not disputed, contingent or unliquidated.

The Debtor or the Trustee may file a Motion seeking an Order setting a reserve in an amount different than specified above.

**3.      Estimation.**  As to any Disputed Claim, the Debtor or the Trustee may request in their sole discretion that the Court estimate such Claim pursuant to Section 502(c) of the Bankruptcy Code and set a Cash reserve based upon this estimation.

**4.      Distribution upon Allowance.**  Within five (5) Business Days of a Disputed Claim becoming an Allowed Claim the holder of such Claim shall be paid in Cash or in Trust Interests in accordance with this Plan and Trust Agreement, as applicable, from the reserve for such Claim. The amount of Cash or Trust Interests released from the reserve to make such a distribution shall be calculated on a Pro Rata basis so that the holder of the newly Allowed Claim receives a distribution equal to the total percentage distributions made prior to the date that its Claim was Allowed to the holders of other Allowed Claims in the same Class or with the same Priority.

**5.      Release of Reserves.**  If a Disputed Claim or any portion thereof is Disallowed, the reserve shall be released for Distribution to holders of Allowed Claims in accordance with the Plan. If a Disputed Claim or any portion thereof becomes an Allowed Claim in an amount that is less than the reserve for such Claim the excess reserve related to such Claim shall be released for distribution to holders of Allowed Claims in accordance with the Plan and the Trust Agreement.

6.    **Undeliverable or Returned Distributions.**  If (1) the Debtor or the Trustee shall be unable, at the time that the distribution to holders of Allowed Claims is to be made under the Plan to deliver the portion of such distribution to a holder of an Allowed Claim (2) any amount paid to the holder of an Allowed Claim is returned as undeliverable and the Debtor or Trustee are unable, after reasonable effort, to ascertain a correct address for the holder entitled thereto within three (3) months of its return, or (3) any check distributed in payment of an Allowed Claim is neither returned nor negotiated within three  (3) months of the date distributed, then, in every such case, the Allowed Claim shall be deemed disallowed and the holder thereof shall have no further right to payment against or distribution from the Debtor, the Estate or the Trust.

C.    **De Minimis Distributions**

Neither the Debtor nor the Trustee shall make any distributions to the holder of an Allowed Claim in an Impaired Class if the amount to be distributed on account of such Claim is less than two hundred and fifty ($250) dollars.  Any holder of an Allowed Claim on account of which the amount to be distributed is less than two hundred fifty ($250) dollars will have its Claim for such distribution discharged and will be forever barred from asserting any such claim against the Trust or its property.  Any such distributions that are retained on account of this provision will be made available for distribution to holders of all other Allowed Claims that are permissible under the terms of the Plan.

D.    **Trustee Bond**

The Trustee shall serve without posting a bond unless otherwise required by the Court or determined by the Debtor to be necessary, and shall be released from all liability for the performance of its actions hereunder or under the Trust Agreement except to the extent such actions may be in perpetration of an actual fraud, the result of gross negligence or willful misconduct or in violation of the specific provisions of this Plan or directly controlling orders of

the Bankruptcy Court.

**E.**     **Compensation**

The Trustee shall receive, without the need for Court approval, a fee in the amount set forth in the Trust Agreement. In addition, the Trustee will be entitled to reasonable out of pocket expenses incurred in connection with services rendered in accordance with the Trust Agreement.

**F.**     **Manner of Payment under the Plan**

Cash payments made pursuant to the Plan shall be in United States Dollars by checks drawn on a domestic bank selected by the Trustee or by wire transfer from a domestic bank, at the option of the Trustee

**G.**     **Compliance with Tax Requirements**

In connection with the Plan, to the extent applicable, the Debtor and the Trustee shall comply with all withholding and reporting requirements imposed on them by any governmental unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.

**ARTICLE XI.**

**MISCELLANEOUS PROVISIONS**

**A.**     **Limitation of Liability and Releases**

None of the Debtor, the Debtor in Possession, the Committee, the Members of Committee nor any of the Released Parties shall have or incur any liability to any Entity for any act taken or omission made in good faith in connection with or related to the Chapter 11 Case or the Estate, including objections to or estimations of claims, disposition of assets or formulating, determining not to solicit acceptances or rejections to or confirming the Plan, or any contract, instrument, release or other document created in connection therewith.

**B.      Execution of Documents and Corporate Action**

The Debtor and Debtor in Possession, without any action by holders of Interests, shall execute such documents and take such other action as is necessary to effectuate the transactions provided for in the Plan; or such documents shall be deemed to be executed.

**C.      Notice of Effective Date**

As soon as practicable after the occurrence of the Effective Date, but no later than ten (10) days thereafter, the Debtor shall File and serve on each holder of a Claim a written notice of the occurrence of the Effective Date.

**D.      Retention of Jurisdiction**

Under Bankruptcy Code Sections 105 (a) and 1142, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of and related to the Chapter 11 Case, the assets and liabilities of the Estate, the Trust and the Plan to the fullest extent permitted by law, including, but not limited to:

Allowing, disallowing, determining, liquidating, classifying, estimating or establishing the priority or secured or unsecured status of any Claim not otherwise allowed under the Plan, including resolving any request for payment of any Administrative Expense Claim;

Hearing and determining all applications for compensation and reimbursement of expenses of Professionals under the Plan or under Bankruptcy Code Sections 330, 331, 503(b) 1103 and 1129(a)(4); provided, however, that from and after the Effective Date, the fees and expenses of the Trust shall be made in the ordinary course of business and shall not be subject to Bankruptcy Court approval;

Hearing and determining all matters related to any executory contracts and unexpired leases to which the Debtor is a party or with respect to which the Debtor may be liable;

Effectuating performance of and payments under the provisions of the Plan;

Hearing and determining all adversary proceedings, motions, applications, requests for disgorgement and contested or litigated matters arising out of, arising under or related to the Chapter 11 Case;

Entering such Orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order, including the Trust Agreement;

Hearing and determining disputes arising in connection with the interpretation, implementation, consummation or enforcement of the Plan, including disputes arising under agreements, documents or instruments created in connection with the Plan such as the Trust Agreement;

Modifying the Plan or the Trust Agreement at the request of the Debtor or the Trustee in accordance with the terms of the Trust Agreement and as provided by applicable law, including to cure any omission or to reconcile any inconsistencies;

Issuing injunctions, entering and implementing other orders or taking such other actions as may be necessary or appropriate to restrain interference by any Entity with implementation, consummation or enforcement of the Plan, the  or the Confirmation Order;

Entering and implementing such Orders as may be necessary or appropriate if the Confirmation Order is by any reason stayed, reversed, revoked, modified or vacated;

Enforcing all orders, judgments, injunctions, releases, exculpations and rulings entered in connection with the Chapter 11 Case;

Hearing and determining all matters concerning state, local and federal Taxes in accordance with Bankruptcy Code Sections 346, 505 and 1146;

Approving compromises and settlements under Rule 9019 of the Bankruptcy Rules to the extent required under or included in the Plan;

Hearing and determining such other matters pertaining to the Trust Assets including the Avoidance Actions and Retained Actions;

Hearing and determining such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

Entering a final decree closing the Chapter 11 Estate.

**E.    Binding Effect**

The rights, benefits and obligations of any Entity or Person named or referred to in the Plan are binding on, and will inure to the benefit of, any permitted heirs, executors, administrators, successors or assigns of such Entity or Person.

**F.    Amendment, Modification and Severability**

1.    The Plan may be amended or modified before the Effective Date by the Debtor to the extent provided by Bankruptcy Code Section 1127.

2.    The Debtor reserves the right to modify or amend the Plan upon a determination by the Court that the Plan, as it is currently drafted, is not confirmable pursuant to Bankruptcy Code Section 1129.

3.    A modification of the Trust Agreement by the beneficiaries thereof shall not constitute a modification of the Plan.

**G.    Exhibits**

Any Exhibits to the Plan not filed herewith will be Filed no later than Ten (10) days prior to the commencement of the Confirmation Hearing.  The Exhibits will not be served with the Plan, but rather, copies of all such exhibits will be available upon request to the Debtor's counsel.

**H.**    <u>**No Admission**</u>

Except as specifically provided in the Plan, nothing contained in the Plan shall be deemed or construed in any way as an admission by the Debtor or the Estate with respect to any matter set forth in the Plan, including the amount or allowability of any Claim, or the value of any property of the Estates.

**I.**    <u>**General Authority**</u>

The Debtor and the 3 Trust shall execute such documents and take such other actions as are necessary to effectuate the transactions provided for in the Plan, including, but not limited to the authority to contract for employment services for administrative purposes.

**J.**    <u>**Dissolution of Committee**</u>

On the Effective Date, the Committee of Unsecured Creditors shall be disbanded and its members shall be released and discharged from all rights and duties arising from, or related to the Chapter 11 Case.

**K.**    <u>**Binding Effect**</u>

The Plan and all rights and obligations thereunder shall be binding upon and inure to the benefit of the Debtor, the Committee, the Trust, the holders of Claims and Interests and their respective successors and assigns.

**L.**    <u>**Governing Law**</u>

Unless a rule of law or procedure is supplied by federal law (including Bankruptcy code and Bankruptcy Rules) or by way of an express choice of law provision in any agreement, contract, document or instrument provided for or executed in connection with the Plan, the rights and obligations arising under the Plan and any agreement, contract, document or instrument provided for or executed in connection with the Plan, shall be governed by, and construed and enforced in accordance with, the laws of the State of Nevada, without giving effect to the principles of conflict

of laws thereof.

**M.    Headings**

The headings used in the Plan are inserted for convenience only and neither constitute a

portion of the Plan nor in any manner affect the construction of the provisions of the Plan.

**N.    No Waiver**

The failure of Debtor or any other entity to object to any Claim or Interest for purposes of

voting shall not be deemed to be a waiver of any entity's right, including the Debtor or the

Trustee's right to object to or examine such Claim or Interest, in whole or in part.

**O.    Severability of Plan Provisions**

If, prior to the Confirmation Date, any term or provision of the Plan is held by the Court to

be illegal, impermissible, invalid, void or unenforceable, or otherwise to constitute grounds for

denying confirmation of the Plan, the Court shall, with the consent of the Debtor, have the power to

interpret, modify or delete such term or provision (or portions thereof) to make it valid or

enforceable to the maximum extent practicable, consistent with the original purpose of the term or

provision held to be invalid, void or unenforceable, and such term or provision shall then be

operative as interpreted, modified or deleted,  Notwithstanding any such interpretation,

modification or deletion, the remainder of the terms and provisions of the Plan shall in no way be

affected, impaired or invalidated by such interpretation, modification or deletion.

**P.    Post-Confirmation Status Report**

Within ninety (90) days of the Effective Date, the Trustee shall file a status report setting

forth what progress has been made towards consummation of the confirmed Plan.  The status report

shall be served on the US Trustee, the Debtor, counsel for the Debtor and any Entities who have

filed a request for such reports with the Court.

**Q.** **Payment of US Trustee Fees**

Debtor and, if necessary the Trustee, shall pay all fees payable to the Office of the United States Trustee pursuant to 28 U.S.C. Section 589a.

**R.** **Final Decree**

Once the Estate has been fully administered, as referred to in Bankruptcy Rule 3022, the Debtor shall file a final report and account of all receipts and disbursements, and serve that report on the US Trustee and other entities entitled to service under any applicable law. Any such final report shall include a request that the Court enter a Final Decree in the Chapter 11 Case of the Debtor.

**S.** **Revocation, Withdrawal, Cram-Down or Non-Consummation**

The Debtor reserves the right to revoke or withdraw the Plan at any time prior to the Confirmation Date and to file subsequent plans. If the Debtor revokes or withdraws the Plan, or if Confirmation or consummation does not occur, then (1) the Plan shall be null and void in all respects, (2) any settlement or compromise embodied in the Plan rejection or assumption of any executory contracts or leases affected by the Plan and any document or agreement executed pursuant to the Plan shall be deemed null and void and (3) nothing contained in the Plan and no acts taken in preparation for consummation of the Plan shall (A) constitute or be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other Entity, (B) prejudice in any manner the rights of the Debtor or any Entity in any further proceedings involving the Debtor, or (C) constitute an admission of any sort by the Debtor.

Notwithstanding the above, the Asset Sale shall proceed.

**T.** **Notice to Certain Parties**

All notices and documents to be effective for the following parties shall be in writing (including email or facsimile transmission) and, unless otherwise expressly provided herein, shall

be deemed to have been duly given or made when actually delivered or, in the case of notice by

facsimile transmission, when received and telephonically confirmed, addressed as follows:

To Debtor:                              American Pacific Financial Corporation
                                        22365 Barton Road, Ste 210_____
                                        Grand Terrace, CA 92313 _____
                                        Attention:  Larry R. Polhill ____
                                        Email:  lpolhill@ampac.com _____
                                        Facsimile: (909) 387-0810 ____

With copies to:                         McDonald Carano Wilson
                                        100 West Liberty Street, 10th Floor
                                        P.O. Box 2670
                                        Reno, NV  89505-2670
                                        Attention:  Kaaran E. Thomas
                                        Email:  kthomas@mcdonaldcarano.com
                                        Facsimile:  (775) 788-2020

To the DIP Lender:                      _____
                                        _____
                                        Attention: _____
                                        Email: _____
                                        Facsimile: _____

To the Official Committee of Unsecured  _____
Creditors:                              _____
                                        _____
                                        Email: _____
                                        Facsimile:

## ARTICLE XII.

### REQUEST FOR CONFIRMATION

The Debtor hereby requests that the Court confirm the Plan pursuant to Bankruptcy Code

Section 1129(a) or, if necessary, pursuant to Bankruptcy Code Section 1129 (b).

DATED this 1st day of April, 2011.

AMERICAN PACIFIC FINANCIAL
CORPORATION

By_____
    Larry R. Polhill
    Its:  President

295098 v2

MCDONALD CARANO WILSON LLP

By:      /s/ Kaaran E. Thomas
            Kaaran E. Thomas
            Nevada Bar No. 7193
            100 West Liberty St., 10th Floor
            P.O. Box 2670
            Reno, Nevada 89505-2670
            Phone:  (775) 788-2000

            Attorney for Debtor and Debtor in Possession