HOLLEY, DRIGGS, WALCH, PUZEY & THOMPSON          E-filed: January 8, 2015
Richard F. Holley, Esq. (NV Bar No. 3077)
Email: rholley@cdwnvlaw.com
Ogonna M. Atamoh, Esq. (NV Bar No. 7589)
Email: oatamoh@nevadafirm.com
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101
Telephone:     (702) 791-0308
Facsimile:      (702) 791-1912

WINSTON & STRAWN LLP
Rolf S. Woolner (CA Bar No. 143127) [admitted *pro hac vice*]
rwoolner@winston.com
Justin E. Rawlins (CA Bar No. 209915) [admitted *pro hac vice*]
jrawlins@winston.com
William R. Shafton (CA Bar No. 265468) [admitted *pro hac vice*]
wshafton@winston.com
333 S. Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Telephone:     (213) 615-1700
Facsimile:      (213) 615-1750

*Attorneys for Dotan Y. Melech, Chapter 7 Trustee*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>AMERICAN PACIFIC FINANCIAL CORPORATION,<br><br>    Debtor. | Case No. BK-S-10-27855-GS<br>Chapter 7<br><br>**TRUSTEE'S POSITION RE CREDITOR RESPONSES TO TRUSTEE'S MOTION TO APPROVE NOTICE TO HOLDERS OF TARDILY FILED CLAIMS AND TO ESTABLISH A DEADLINE FOR SUCH CLAIMANTS TO SUBMIT EVIDENCE THAT THEY DID NOT HAVE NOTICE OR ACTUAL KNOWLEDGE OF CASE IN TIME TO FILE A TIMELY PROOF OF CLAIM (ECF NO. 1471)**<br><br>Date of Hearing:     January 22, 2015<br>Time of Hearing:     9:00 a.m.<br><br>Judge: Hon. Gary Spraker |

    Dotan Y. Melech, the Chapter 7 Trustee (the "Trustee") of American Pacific Financial

Corporation ("APFC" or the "Debtor"), by and through his counsel of record, the law firm of

Holley, Driggs, Walch, Puzey & Thompson and the law firm of Winston & Strawn LLP, files

this *Trustee's Position re Creditor Responses to Trustee's Motion to Approve Notice to Holders*

1   *of Tardily Filed Claims and to Establish a Deadline for Such Claimants to Submit Evidence That*

2   *They did not Have Notice or Actual Knowledge of Case in Time to File a Timely Proof of Claim*

3   *(Dkt. No. 1471)* (the "Trustee's Position Paper"), pursuant to the Court's Order of December 16,

4   2014 [Dkt. No. 1659], to advise the court and the creditors filing responses to the *Notice to*

5   *Holders of Tardily Filed Claims* (Dkt. No. 1516) ("Notice") as to the Trustee's position

6   regarding the filed responses.

7                    **HOLLEY, DRIGGS, WALCH,**
                     **PUZEY & THOMPSON**

8

9   _____
    Richard F. Holley, Esq. (NV Bar No. 3077)

10  Ogonna M. Atamoh, Esq. (NV Bar No. 7589)
    400 South Fourth Street, Third Floor

11  Las Vegas, Nevada 89101
    Telephone: 702/791-0308

12  Facsimile: 702/791-1912

13  *Attorneys for Dotan Y. Melech, Chapter 7*
    *Trustee*

14

15                       **INTRODUCTION**

16          On December 16, 2014, the Bankruptcy Court issued its *Order Setting Status and*

17  *Scheduling Conference on Trustee's Motion to Approve Notice to Holders of Tardily Filed*

18  *Claims and to Establish a Deadline for Such Claimants to Submit Evidence that They did not*

19  *Have Notice or Actual Knowledge of Case in Time to File a Timely Proof of Claim* (Dkt. No.

20  1659) ("Status and Scheduling Order"). In the Status and Scheduling Order, the Court directed

21  the Trustee to advise the Court and those creditors who responded to the Notice of his position

22  regarding the creditor responses. This filing is the Trustee's Position Paper. Since the Trustee

23  filed his Amended Status Report Regarding Notice to Holders of Tardily Filed Claims [Dkt. No.

24  1608] on December 11, 2014, six (6) additional creditors filed late proofs of claim in the

25  aggregate amount of $367,339.06[1]. As of the filing of this Trustee's Position Paper, the late-filed

26

27  _____
    [1] It should be noted that the claim of Nona Vinyard in the amount of $157,500.00 is part of this amount, but is already accounted for under Category III (Individuals Who Filed Timely Proofs of Claim but Claim not Reflected in Court Docket).

28

                              - 2 -

claims total 55 in number and $7,812,862.44 in amount. An updated list of tardily filed claims is attached hereto as **Exhibit "A"**. An Updated Status Report identifying individuals who filed responses to the Notice of tardily filed claims, individuals who filed new proofs of claim, and individuals who filed timely proofs of claim--but which claims are not reflected in the Court record--was filed on January 8, 2015 [Dkt. No. 1724].

Upon being appointed in this case, the Trustee had hoped to recover sufficient assets such that all creditors could receive a distribution. Unfortunately, this simply was not possible. Notwithstanding the sizeable settlement approved by the Court and payment toward that settlement of approximately $30 million, late-filed claims will not receive any distribution in this case unless such claims are treated as being timely filed.[2]

The Trustee has given serious consideration to the Court's directive to provide his position regarding the treatment of late-filed claims. The Trustee is very mindful of the difficulties creditors have encountered during the course of this arduous case. He is also acutely aware that many creditors invested their life savings with the Debtor and that any distribution from this bankruptcy case, however small, will provide some measure of relief. As a result, the Trustee has made every effort to ensure all creditors are treated fairly and, where possible, that late-filed claims are treated as timely filed to the extent permitted under applicable law. Unfortunately, the exceptions to allow a tardily filed claim to be treated as a timely filed claim for distribution purposes are restrictive in the Chapter 7 context and simply do not appear to the Trustee to permit all late-filed claims to be treated as timely filed claims.

. . .

. . .

. . .

. . .

. . .

. . .

---

[2] On December 19, 2014, the Trustee made an initial distribution in the amount of $10,753,124.73 to creditors with allowed general unsecured claims. *See* Notice of Trustee's Interim Final Report and Applications for Compensation and Deadline to Object (NFR) [Dkt. No. 1491].

- 3 -

09250-04/1449531_2.doc

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    PROCEDURAL HISTORY

1.    On September 21, 2010 (the "Petition Date"), the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code [Dkt. No. 1].

2.    On May 19, 2011, an Order was entered approving the appointment of Christopher R. Barclay as Chapter 11 Trustee [Dkt. No. 322].

3.    On December 9, 2011, the Chapter 11 Trustee filed a Motion to Convert Case from Chapter 11 to Chapter 7 ("Motion to Convert") [Dkt. No. 446]. A hearing was held on the Motion to Convert on February 9, 2012.

4.    On February 15, 2012, the court entered an Order Granting Trustee's Motion to Convert Case from Chapter 11 to Chapter 7 [Dkt. No. 574] and on the same day Dotan Y. Melech was appointed the Chapter 7 Trustee [Dkt. No. 577].

5.    On February 15, 2012, the court issued a *Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines* [Dkt. No. 577] ("Notice of Chapter 7 Case") [Dkt. No. 577]. The Notice of Chapter 7 Case was served on the mailing matrix for the bankruptcy case by the Clerk of the Court on February 17, 2012 [Dkt. No. 582].

6.    Pursuant to the Notice of Chapter 7 Case, the deadline for non-governmental creditors to file proofs of claim in the converted Chapter 7 case was June 19, 2012 (the "Claims Bar Date") [Dkt. No. 577].

7.    On October 31, 2014, the Trustee filed the *Trustee's Motion to Approve Notice to Holders of Tardily Filed Claims and to Establish a Deadline for Such Claimants to Submit Evidence That They did not Have Notice or Actual Knowledge of the Case in Time to File a Timely Proof of Claim* [Dkt. No. 1471] ("Trustee's Motion to Approve Notice").

8.    On November 14, 2014, the court entered an order granting the Trustee's Motion to Approve Notice and directed creditors who filed proofs of claim after the Claims Bar Date and directed those creditors to file a response on or before December 5, 2014 [Dkt. No. 1512] ("Notice Order"). Twenty-six (26) creditors filed responses with the Bankruptcy Court. *See* Dkt. No. 1724 ("Updated Status Report").

09250-04/1449531_2.doc

## II.    TRUSTEE'S POSITION REGARDING RESPONSES TO NOTICE

**A.    The Exceptions for Permitting Tardily Filed Claims to be Treated as Timely Filed for Distribution Purposes are Limited and Narrowly Construed by Courts Addressing the Issue**

Rule 3002(c) sets forth the deadline for filing a timely proof a claim and states in relevant part as follows:

> (c) Time for Filing.
>
> In a chapter 7 liquidation, chapter 12 family farmer's debt adjustment, or chapter 13 individual's debt adjustment case, a proof of claim is timely filed if it is filed not later than 90 days after the first date set for the meeting of creditors called under §341(a) of the Code…

Section 726(a) of the Bankruptcy Code governs distributions for timely and tardily filed proofs of claim and provides in relevant part as follows:

> Except as provided in section 510 of this title, property of the estate shall be distributed--
>
> (1) first, in payment of [certain priority claims] . . . ;
>
> (2) second, in payment of any allowed unsecured claim, other than a claim of a kind specified in paragraph (1), (3), or (4) of this subsection, proof of which is--
>
> (A) timely filed under section 501(a) of this title;
>
> (B) timely filed under section 501(b) or 501(c) of this title; or
>
> (C) tardily filed under section 501(a) of this title, if--
>
> (i) the creditor that holds such claim did not have notice or actual knowledge of the case in time for timely filing of a proof of such claim under section 501(a) of this title; and
>
> (ii) proof of such claim is filed in time to permit payment of such claim;
>
> (3) third, in payment of any allowed unsecured claim proof of which is tardily filed under section 501(a) of this title, other than a claim of the kind specified in paragraph (2)(C) of this subsection;

11 U.S.C. § 726(a). Section 726 mandates that late-filed general unsecured claims are not entitled to distribution pro rata with timely filed claims if the holders of tardily filed claims had

- 5 -

notice or actual knowledge of the bankruptcy case in time to timely file their claims.[3] *See In re Osman*, 164 B.R. 709 (Bankr. S.D. Ga. 1993); *In re Columbia Ribbon & Carbon Mfg. Co.*, 54 B.R. 714 (Bankr. S.D.N.Y. 1985) (creditor without prior notice who files tardy claim entitled to distribution if final distribution has not been made).[4]

It is important to note that the notice requirement under section 726 in a case originally filed under chapter 11, but later converted to a case under chapter 7, focuses on whether a creditor had notice of the converted case and not whether the creditor was aware of the original chapter 11 filing. In *In re Corporacion De Servicios Medico-Hospitalarios De Fajardo, Inc.*, 149 B.R. 746 (Bankr. D. P.R. 1993), the Chapter 7 trustee failed to update the mailing matrix, and as a result, six creditors did not receive notice of the conversion of the case from Chapter 11 to Chapter 7, or the first meeting of creditors under Chapter 7 or the bar date for filing proofs of claim. *Id.* at 747. Under section 726(a)(2)(C), it was undisputed that five of the creditors received notice of the Chapter 7 case after the bar date expired. *Id.* The Court held that "[e]ven had these creditors been aware of the prior Chapter 11 bankruptcy case, we do not believe this satisfies the 'notice or actual knowledge of the case' language contained in § 726(a)(2)(C). The only logical interpretation of that sentence is to read the term 'case' as referring to the Chapter 7 bankruptcy case, and not to the prior Chapter 11 case." *Id.*

The court rejected the trustee's argument that once a creditor has any knowledge that a debtor is in bankruptcy, no matter how long, or under which chapter, that it thereupon assumes

---

[3] For example, in *In re Coastal Alaska Airlines*, 920 F.2d 1428 (9th Cir. 1990), held that a creditor did not qualify for distribution on its tardily filed claim under section 726(a)(2)(C), because the creditor had notice of the bankruptcy case two months before the bar date. The court rejected the argument that the creditor, who had not been listed by the debtor and did not receive formal notice of the bar date, was entitled to the same treatment as a creditor who had no notice of the case, pointing out that the creditor could have received notice of the bar date by adding itself to the list of creditors. *Id.* at 1433. *Accord In re P & L Credit and Collection Servs., Inc.*, 248 B.R. 32 (W.D.N.Y. 2000). A similar result was reached in *In re Ray Brooks Machinery, Inc.*, 113 B.R. 56 (Bankr. M.D. Ala. 1989), *aff'd*, 113 B.R. 66 (M.D. Ala. 1989), *aff'd*, 898 F.2d 159 (11th Cir. 1990). *Accord In re Winders*, 201 B.R. 288 (D. Kan. 1996), where the court held that actual notice of the case was sufficient to disqualify a creditor from receiving distributions under this section, even if the creditor had not received notice of the bar date for filing claims.

[4] The legislative history indicates that although it is in the interest of the estate to encourage timely filing, when tardy filing is not the result of a failure to act by the creditor, the normal subordination penalty should not apply. *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 383 (1977), reprinted in App. Pt. 4(d)(i) *infra*; S. Rep. No. 989, 95th Cong., 2d Sess. 96-97 (1978), reprinted in App. Pt. 4(e)(i) *infra*.

the continuing obligation to monitor the case throughout its lifetime, in the event a conversion results. The court found that such a rule "would place an unreasonable burden on creditors, who are not receiving notices, to constantly inquire of the court about possible bar dates." *Id.* Instead, the court relied upon the First Circuit's ruling in *In the Matter of Intaco Puerto Rico, Inc.*, 494 F.2d 94 (1st Cir. 1974), which reasoned as follows:

> The fact that the creditor may, as here, be generally aware of the pending reorganization, does not of itself impose upon him an affirmative burden to intervene in that matter and present his claim. The trustee cannot avoid his statutory responsibility under Chapter X, to formally provide the required notice, simply because of a creditor's possible familiarity with general aspects of the proceedings. As the Supreme Court has stated, the creditor has a right to assume that proper and adequate notice will be provided before his claims are forever barred. *See also In re Perpetual Corp.*, 112 Bankr. 27 (Bankr. M.D. Tenn. 1990) (court held that both actual knowledge of the Chapter 11 filing and of its conversion to Chapter 7 are necessary to constitute notice for timely filing).

*See In re Corporacion De Servicios Medico-Hospitalarios De Fajardo, Inc.*, 149 B.R. at 750 (*quoting In re Intaco Puerto Rico, Inc.*, 494 F.2d at 99);[5] *see also Perry v. First Citizens Federal Credit Union*, 304 B.R. 14, 15 (D. Mass. 2004) (creditor knew of Chapter 11 case, but learned of conversion to Chapter 7 nearly 2 years later as a result of being served with a subpoena in a related adversary case. Court relied on holding in *In re Corporacion De Servicios Medico-Hospitalarios De Fajardo, Inc.*, and allowed tardy filed proof of claim on the basis that knowledge of Chapter 11 filing did not constitute notice or actual knowledge of Chapter 7 conversion).[6]

---

[5] The decision has been criticized by a number of courts. *See In re Chavis*, 160 B.R. 804 (Bankr. S.D. Ohio 1993); *In re Zimmerman*, 156 B.R. 192 (Bankr. W.D. Mich. 1993); *In re Tucker*, 174 B.R. 732 (Bankr. N.D. Ill. 1994; however, the *In re Corporacion De Servicios Medico-Hospitalarios De Fajardo, Inc.* decision was subsequently cited by *United States v. Towers (In re Pacific Atl. Trading Co.)*, 33 F.3d 1064 (9th Cir. 1994), for the proposition that "Rule 3002(c)'s time limits simply demark whether a claim is timely or late for purposes of distribution under section 726." *Id.* at 1067 (*citing In re Corporacion de Servicios Medico-Hospitalarios de Fajardo, Inc.*, 149 Bankr. at 750; *In re Rago*, 149 Bankr. 882, 885 (Bankr. N.D. Ill. 1992); *In re Hausladen*, 146 Bankr. 557, 560 (Bankr. D. Minn. 1992). Rule 3002(c) does not disallow a late claim.

[6] The court in *In re Corporacion de Servicios Medico-Hospitalarios de Fajardo, Inc.* agreed with *Hausladen* and *In re Rago*, particularly with their analysis "that because Code § 726 expressly provides for the payment of no-notice tardily filed claims on the same tier as timely filed claims, that Rule 3002 cannot be construed as an absolute bar to the filing of claims after the 90 day deadline has passed." *Id.* at 750. Instead, the *In re Corporacion de Servicios*

As a result, the Trustee's focus regarding notice in the APFC bankruptcy case has been whether a creditor who filed a tardy proof of claim received notice or had actual knowledge that the chapter 11 case was converted to a case under chapter 7 in time to file a timely proof of claim.[7] While this nuance to the notice requirement seemingly provides relief to creditors who were not aware that the APFC bankruptcy case was converted to a case under chapter 7, the case law addressing late-filed claims in a Chapter 7 case is rather restrictive when it comes to addressing exceptions to the notice requirement. In other words, if a creditor had knowledge of the Chapter 7 bankruptcy case in time to file a timely proof of claim but failed to do so, such tardily filed claim is not elevated to timely filed status except under limited and rigidly defined extraordinary circumstances. These so called "exceptions" include the "mailbox presumption", "incompetence" and "due process" violations, which are discussed in more detail below. "Excusable neglect" is not recognized as an exception to having a late-filed claim treated as timely filed claim for distribution purposes.[8]

**B.      Claims of Creditors who did not File a Response to the Notice Order Should be Treated as Tardily Filed Claims Pursuant to Section 726(a)(3) of the Bankruptcy Code.**

Pursuant to the Notice Order, the Court required creditors with late claims to file a response explaining why their proofs of claim were tardily filed. A number of creditors failed to file a response. In the absence of any evidence to demonstrate that these creditors did not have

_____ (continued)

*Medico-Hospitalarios de Fajardo, Inc.* court held that "Rule 3002(c) simply determines whether a claim is to be classified as *timely* or *tardily* filed, for priority of distribution." *Id.*

[7] As discussed below in more detail, the Trustee believes that there are several creditors who filed tardy proof of claims that may fall within this exception.

[8] In Chapter 7 cases, courts have no discretion or authority to extend the bar date once it has expired. *In re Buchanan*, 2011 Bankr. LEXIS 5194 at *5, n.1 (Bankr. N.D. Ga. Oct. 11, 2011). Neither excusable neglect nor the Court's general equitable powers may serve as a basis for extending the claims bar date in a Chapter 7 case when the request for an extension is made after its expiration. *Id.* (*citing* FED. R. BANKR. P. 3002(c); FED. R. BANKR. P. 9006(b)(1); *In re Brooks*, 370 B.R. 194 (Bankr. C.D. Ill. 2007); *In re Damiano*, 04-98349-jem, 2005 Bankr. LEXIS 2687 (Bankr. N.D. Ga. Dec. 13, 2005); *In re Carlin Inv. Co.*, 158 BR 690 (Bankr. N.D. Ohio 1993) (holding excusable neglect principles are inapplicable in Chapter 7 cases). Bankruptcy Code and the Federal Rules of Bankruptcy Procedure do not define "excusable neglect", the United States Supreme Court has found that "[through] Rule 9006(b)(1), Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstance beyond the party's control." *In re Trump Taj Majal*, 156 B.R. 928, 937 (Bankr. D.N.J. 1993) (*quoting Pioneer Invest.*, 113 S. Ct. at 1495).

"notice or actual knowledge" of the case in time to timely file their respective proofs of claim, these creditors are not eligible for distribution under section 726(a)(2)(C). The claims of those creditors who failed to file such a response to the Notice Order should be treated as tardily filed claims and subordinated to the third tier of distributions pursuant to section 726(a)(3). A list of the creditors with late-filed claims who failed to file a response pursuant to the Notice Order is attached is **Exhibit "B"**.

### C. Claims of Creditors That Were Timely Filed, but are not Reflected in the Claims Register of the Court Should be Allowed and Treated as Timely Filed Claims

Creditors who timely file a proof of claim are entitled to the first level of distribution under 11 U.S.C. § 726(a)(2)(A). In the present case, four claims were timely filed with the court, but not reflected in the claims register: Margarita A. McCarley in the amount of $71,680.00 ("McCarley Claim"), Armandina Grimaldo in the amount of $64,512.00 ("Grimaldo Claim"), Marta & Margarita Whyrick in the amount of $74,607.00 ("Whyrick Claim") and Nona Vineyard in the amount of $100,000.00 ("Vineyard Claim").[9] Regarding the McCarley Claim, Grimaldo Claim and Whyrick Claim, these creditors have copies of their proofs of claim that were filed stamped by the court on June 6, 2012. On November 19, 2014, the bankruptcy court issued a Notice of Timely Filed Proof of Claims [Docket No. 1523]. In the Notice, the court acknowledged its clerical error in not docketing the timely filed proofs of claim and assigned claim numbers to the proofs of claim: McCarley Claim (POC 503), Grimaldo Claim (POC 504) and Whyrick Claim (POC 505). The Trustee believes that these claims should all be treated as timely filed with the court and should receive the benefit of distribution under section 726(a)(2)(A).

Regarding the Vinyard Claim, Mrs. Vinyard originally filed her proof of claim via certified mail, return receipt requested on June 13, 2012, in the amount of $100,000.00. The Court signed the return receipt on June 13, 2012, acknowledging receipt of the proof of claim,

---

[9] According to the Debtor's schedules and books and records, $57,500.00 of the $157,500.00 Vinyard Claim represents claimant's investment in American Pacific Financial Group, Ltd., which itself holds an allowed claim on behalf of its investors. As a result, $57,500.00 of the Vinyard Claim is duplicative of the allowed unsecured claim filed by American Pacific Financial Group, Ltd.

09250-04/1449531_2.doc

but did not docket the claim in the claims register. Mrs. Vinyard subsequently refiled her claim on December 9, 2015 (POC 519) attaching a copy of the return receipt signed by the court. Based on the information provided by Mrs. Vinyard that her claim was timely filed with the Court, the Trustee believes that the Vinyard Claim should be allowed as a timely filed proof of claim, and should likewise receive the benefit of distribution under section 726(a)(2)(A).

**D.** **Pursuant to the Mail Box Rule, Those Claims That Were Timely Mailed to the Bankruptcy Court, but Were not Docketed in the Claims Register Should be Treated as Timely Filed Claims**

Ninth Circuit case law provides protection for creditors who demonstrate they timely mailed their proofs of claim, notwithstanding that the mailed claims were never received by the clerk of the court. This is referred to as the "mailbox presumption." The "mailbox presumption" was explained in *Hagner v. United States*, 285 U.S. 427, 52 S. Ct. 417, 76 L. Ed. 861 (1932), where the Supreme Court stated "the rule is "well settled that proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed." The mailbox presumption is a well-established rule in the Ninth Circuit. *Nunley v. City of Los Angeles*, 52 F.3d 792 (9th Cir. 1995); *Anderson v. U.S.*, 966 F.2d 487 (9th Cir. 1992); *Jones v. United States*, 226 F.2d 24 (9th Cir. 1955).

In the bankruptcy context involving the filing of proofs of claim, there is a split of authority among the courts regarding the applicability of the "mailbox presumption." Some courts have rejected the "mailbox rule," insisting that a proof of claim actually be filed with the clerk.[10] In *In re Pyle*, 201 B.R. 547 (Bankr. E.D. Ca. 1996), the Bankruptcy Court for the Eastern District of California held that the mailbox presumption applied where the creditor mailed a proof of claim on October 31, 1995, before the proof of claim deadline of February 20, 1996. *Id.* at 548. The bankruptcy court's file did not reflect the proof of claim mailed by the creditor, even

---

[10] *See Chrysler Motors Corporation v. Schneiderman*, 940 F.2d 911, 913-15 (3rd Cir. 1991); *In re Wallace*, 277 B.R. 351 (Bankr. N.D. Ohio 2001); *In re 50-Off Stores, Inc.*, 220 B.R. 897, 905-06 (Bankr. W.D. Tex. 1998). On the other hand, some courts have accepted the "mailbox rule." *In re Nimz Transportation, Inc.*, 505 F.2d 177 (7th Cir. 1974) (holding that timely mailing raises a rebuttable presumption of filing); *In re Graham*, 290 B.R. 424 (Bankr. N.D. Ga. 2003); *In re Pyle*, 201 B.R. 547 (Bankr. E.D. Cal. 1996); *In re Kero-Sun, Inc.*, 63 B.R. 50 (Bankr. D. Conn. 1986).

09250-04/1449531_2.doc

though the creditor's billing statement reflected mailing charges for the services. *Id.* at 548-49. The court reached this conclusion by relying upon Ninth Circuit precedent, in accordance with Supreme Court decisions regarding the "mailbox presumption." *Id.* at 551 (*citing Nunley v. City of Los Angeles*, 52 F.3d at 796; *Anderson v. United States*, 966 F.2d at 491; *Jones v. United States*, 226 F.2d at 27. The bankruptcy court in *In re Pyle* held that it was not at liberty to disregard those precedents, and in the context of proof of claim filings, absent a showing of any prejudice to the debtor or some other creditors, the Seventh Circuit's ruling in *Nimz* was deemed the better rule. *Id.* at 551.

In this case there are three proofs of claim that appear to fall within the mailbox presumption: POC 478 filed by Helen Nelson ("Nelson Claim"), POC 485 filed Karl and Barbara Zinner ("Zinner Claim"), and POC 502 filed by Mary Elaine Snedden ("Snedden Claim"). Regarding the Nelson Claim and as set forth in her reply [Dkt. No. 1578], Mrs. Nelson prepared and signed her proof of claim on June 1, 2012, with the assistance of her granddaughter. According to the Declaration of the granddaughter, Jennifer Bolanis-Roger, the granddaughter placed the signed proof of claim in an envelope addressed to the clerk of the U.S. Bankruptcy Court for the District of Nevada and mailed the proof of claim to the bankruptcy court on June 1, 2012, by first class postage.

Regarding the Zinner Claim, the Zinners state that they received the form proof of claim, signed it, dated it and mailed it to the Court on June 2, 2102 [Dkt. No. 1519]. Eleven (11) months later on May 3, 2013, the Zinners state that they received a notice from the Court that the document did not contain an original signature and to submit an amended filing. The Zinners refiled their claim on May 6, 2013. In addition to the mailbox presumption, it should also be noted that pursuant to Rule 5005(a)(1), the clerk cannot refuse to accept for filing any paper presented for the purpose of filing solely because it is not presented in proper form as required by the bankruptcy rules. *See also In re Nittany Enters.*, 502 B.R. 447, 454 (Bankr. W.D. Va. 2012) (a signature on a proof of claim is not required by either the bankruptcy code or the bankruptcy rules (*citing In re Shabazz*, 206 B.R. 116, 123 (Bankr. E.D. Va 1996)).

. . .

Regarding the Snedden Claim, as set forth in Ms. Mary Elaine Snedden Reply [Dkt. No. 1716], she believed that her husband, who died in a plane crash on July 2, 2011, timely filed their proof of claim, although not reflected in the Court's docket (the "Snedden Claim"). According to Ms. Snedden, "I do remember him saying he filed electronically under our names but I was unable to find a printed copy of the actual claim number…he said he took care of it." *See* Snedden Reply, p. 1, ll. 25-27 [Dkt. No. 1716].

Based on the above, the Trustee believes that the mailbox presumption should be applied to allow the Nelson Claim, the Zinner Claim, and the Snedden Claim as timely filed claims in the bankruptcy case. Moreover, there is no prejudice to the Debtor or other creditors where the Trustee anticipates another substantial distribution toward the end of the first quarter of 2015.

**E.    The Late-Filed Claims of Creditors With No Notice of Conversion to Chapter 7, Even with Notice of Chapter 11, Does Not Constitute "Notice or Actual Knowledge" of Case Under 11 U.S.C. § 726(a)(2)(C) Should be Treated as Timely Filed Claims for Distribution Purposes.**

In the present case, it appears that certain creditors did not receive formal notice of the Chapter 7 bankruptcy case. A list of these creditors is set forth in **Exhibit "C"**. On February 15, 2012, the *Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines* ("Notice of Chapter 7") was filed with the Court [Dkt. No. 577]. On February 17, 2012, the clerk's *Certificate of Notice* for the Notice of Chapter 7 was filed with the Court [Dkt. No. 582]. According to the *Certificate of Notice*, the addresses on the proofs of claim filed by the creditors listed in **Exhibit "C"** are different than the addresses listed in the Certificate of Notice.[11] According to the responses filed by these creditors they were not aware of the Claims Bar Date. The Claims Bar Date is referenced in the Notice of Chapter 7; however, the reason these creditors may not have been aware of the proof of claim bar date is because they did not receive the Notice of Chapter 7. Based on the information available to the Trustee, the Trustee believes

---

[11] Two of the claimants that filed late proofs of claim, Randal Kasamoto (POC 506) and Alecia J. Rdzak (POC 514), are not listed on the Certificate of Notice; however, these claimants are not creditors of APFC, but creditors of Funds that filed proofs of claim in the case. Mr. Kasamoto is actually a creditor of American Pacific Financial Group II, Ltd. Mrs. Rdzak is actually a creditor of American Financial Group, Ltd.

that the late-filed claims of these creditors should be treated as timely filed claims under section 726(a)(2)(C), unless the creditors received the Notice of Chapter 7 notwithstanding the incorrect address, or had actual knowledge of the Chapter 7 case in time to file a timely proof of claim.

**F.    The Late-filed claims of Creditors that Fall Within the Incompetence Exception Under Rule 3002 of the Federal Rules of Civil Procedure Should be Treated as Timely Filed Claims for Distribution Purposes**

One of the exceptions for treating a tardy proof of claim in a Chapter 7 bankruptcy case as a timely filed claim for distribution purposes is set forth in Rule 3002(c)(2) of the Federal Rules of Bankruptcy Procedure. Rule 3002(c)(2) provides as follows:

> (c) Time for Filing.
>
> In a chapter 7 liquidation, chapter 12 family farmer's debt adjustment, or chapter 13 individual's debt adjustment case, a proof of claim is timely filed if it is filed not later than 90 days after the first date set for the meeting of creditors called under §341(a) of the Code, except as follows:
>
> \*\*\*
>
> (2) In the interest of justice and if it will not unduly delay the administration of the case, the court may extend the time for filing a proof of claim by an infant or incompetent person or the representative of either.

BANKR. R. 3002(c)(2).

In *In re Thomas*, 181 B.R. 674, 676 (Bankr. S.D.Ga. 1995), the court held that the six enumerated exceptions contained in Bankruptcy Rule 3002(c) are the exclusive means available to a creditor with notice of the bankruptcy proceedings to file a late proof of claim. *Id.*[12] Under Rule 3002(c)(2), the Court has discretion to extend the time to file a proof of claim for an infant or incompetent person, or their representative, if such extension is in the interest of justice and will not cause undue delay. *See Vicenty v. San Miguel Sandoval (In re San Miguel Sandoval)*, 327 B.R. 493 (B.A.P. 1st Cir. 2005). An extension under Rule 3002(c)(2) is permissive, not mandatory. *Id.*; *In re Wilson*, 96 B.R. 257, 263 (B.A.P. 9th Cir. 1988).

. . .

---

[12] *Citing Matter of Jones*, 154 Bankr. 816 (Bankr. M.D. Ga. 1993) (the excusable neglect standard only applies to cases under Chapter 11 of the Bankruptcy Code); *In re Hamilton*, 179 Bankr. 749 (Bankr. S.D. Ga. 1995).

09250-04/1449531_2.doc

The case law on the incompetence prong of Rule 3002(a)(2) is limited, but the unpublished decision of *In re Toriello*, 2010 Bankr. LEXIS 3543 (Bankr. D.N.J. 2010) (Not for Publication), is instructive. In *Toriello*, the Court undertook an inquiry regarding competency in the context of a proof of claim that was filed fifteen (15) months after the proof of claim bar date.[13] As neither the Bankruptcy Code nor the Rules define "incompetent" and the *In re Toriello* court was unaware of any reported cases interpreting the term as used in Rule 3002(c)(2), the court looked to state law for the definition of incompetence, and examined the doctor's letters speaking to the creditors' incompetence, as well as the timing of the doctor's letters, in ruling that the creditors did not demonstrate incompetence under Rule 3002(c)(2).

In Nevada, "incompetence" is defined under Chapter 159 of the Nevada Revised Statutes. This statute governs guardianships, conservatorships and trusts, and defines incompetence as follows:

> "Incompetent" defined.  "Incompetent" means an adult person who, by reason of mental illness, mental deficiency, disease, weakness of mind or any other cause, is unable, without assistance, properly to manage and take care of himself or herself or his or her property, or both. The term includes a person who is mentally incapacitated.

NEV. REV. STAT. § 159.019.

Based upon the information available to the Trustee, it appears that three of the late-filed claims fall within this exception: POC 470 in the amount of $186,472.59 filed by Mable Greer ("Greer Claim"), POC 471 in the amount of $104,325.55 filed by James Inman Revocable Trust

---

[13] In *In re Toriello*, Mr. and Mrs. Jasovsky, the creditors, resided with their daughter, Colleen Howell, since 2004. At the time of filing and throughout the pendency of bankruptcy case, Howell handled the creditors financial affairs, including the debts owed to them under the loan documents. Mr. Jasovsky was incapacitated as a result of several strokes, which predated the filing of the petition. Mrs. Jasovsky suffered from mild memory loss and the early onset of Alzheimer's disease. Despite living with the creditors and maintaining their finances, Howell claimed she did not have knowledge of the Notice until sometime in July 2008, when she discovered it "buried in their files." Howell asserted she immediately contacted the debtor to question him about the Notice. She stated the debtor told her "that it was his personal bankruptcy and had nothing to do with" the creditors. According to Howell, the debtor's statements caused her to not seek independent legal advice. She did not consult an attorney until late 2009. *Id.* at *3-*4. The Court rejected the creditors' argument of equitable estoppel, on the basis that such an argument fell within rubric of the "excusable neglect" standard of Rule 9006(b)(1) to extend the time for filing a proof of claim under Rule 3002(c), finding the Court was limited solely to the enumerated exceptions under Rule 3002(c). *Id.* at *12 (noting that "[w]hile the Court is mindful of the Creditors' advanced age and circumstances, the Bankruptcy Rules simply do not confer on the Court the discretion to extend the deadline for excusable neglect").

("Inman Claim"), and POC 472 in the amount of $193,205.65 filed by Gene A. Rogers ("Rogers Claim"). In the case of Mrs. Greer, prior to the Claims Bar Date, she lived in a care home as she suffered from failing health at the age of 88. Mrs. Greer passed away on May 19, 2012, one month prior to the Claims Bar Date. Mrs. Greer's daughter, Darlys Jean Robertson and the executrix of Mrs. Greer's estate, was in the process of organizing the affairs of Mrs. Greer after she passed away. In so doing, on June 19, 2012, Mrs. Robertson discovered the notice for the proof of claim deadline, and contacted counsel shortly thereafter to assist with the filing of the Greer Claim. Ultimately, the Greer Claim was received by the Clerk of the Court on June 25, 2012, less than a week after the Claims Bar Date. *See* Reply of Mabel Greer [Dkt. No. 1501].

Regarding the Inman claim, Mr. Inman explained that the Inman Claim was tardily filed because he is 89 years old and is the sole caregiver for his wife. Mr. Inman's wife suffers from dementia. Additionally, Mr. Inman suffers from sight problems, and requires a magnifying glass to read the fine print on the bankruptcy court mailings he receives in this case. As a result of the above, Mr. Inman missed the proof of claim deadline in fine print. *See* James Inman letter dated November 18, 2014 [Dkt. No. 1610]. The Inman Claim was filed with the Court four (4) days after the Claims Bar Date [Dkt. No. 1610].

Regarding the Rogers Claim, Mr. Rogers states in his Verified Motion to Allow Late-Filed Claim (472-1) ("Rogers Motion"), that the Rogers Claim was four (4) days late because, prior to the Claims Bar Date his wife was critically ill with non-Hodgkin's lymphoma. His wife also suffered from side-effects arising from complications with treatments. In addition to assisting his wife with her serious illness, Mr. Rogers further explained that all of their mail was being forwarded to a post office box system, and for some inexplicable reason, much of their mail became "uncollectable" even though the mail was not rejected. Mr. Rogers believes that the Notice of Chapter 7 Case was inadvertently disregarded by the postage service Mr. and Mrs. Rogers were using at the time it was mailed by the Bankruptcy Court. *See* Rogers Motion [Dkt. No. 1542].

Regarding the "interest of justice" and "undue delay" prongs under Rule 3002(c)(2), there is no concern in the instant case regarding the undue delay in the administration of the case

09250-04/1449531_2.doc

arising from the late-filed proofs of claims relating to the Greer Claim, Inman Claim and Rogers Claim. The Chapter 7 Trustee has made an initial distribution in the amount of $10,753,124.73 to creditors with allowed general unsecured claims. *See Notice of Trustee's Interim Final Report and Applications for Compensation and Deadline to Object (NFR)* [Dkt. No. 1491]. The Trustee has not made a final distribution to the creditors yet, and more than $17 million in additional funds was paid to the estate pursuant to the Polhill Settlement from which the Trustee will make an additional distribution to creditors. As a result, sufficient funds are available to include the late-filed proofs of claims to include the Greer Claim, Inman Claim and Rogers Claim without disrupting the distribution process. Based on the information available to the Trustee, he believes that the Greer Claim, Inman Claim and Rogers Claim each qualify under the incompetence factor set forth under Rule 3002(c)(2) and should be allowed as timely filed proofs of claim.

**G.      Creditor Explanations for the Remaining Tardily Filed Proofs of Claim Seem to be Based on Factors Constituting Excusable Neglect Which Does Not Appear to be Sufficient Justification for Treating Late-Filed Claims as Timely Filed Claims for Distribution Purposes Under Chapter 7.**

Creditor explanations for the remaining tardily filed proofs of claim seem to be based on factors constituting excusable neglect. A list of the remaining creditors with tardily filed proofs of claim that filed responses to the Notice Order is attached as **Exhibit "D"**. This is the most difficult group of tardily filed claims for the Trustee to address. A significant number of these creditors assert that the Debtor, through its agents, expressly instructed them not to file a proof of claim in the bankruptcy case.

For example, Mike and Melanie Svedin and Michael Bryce Svedin state in their response that they "went to Mr. Doran Wheeler and asked him if there was anything I needed to do in regards to these letters I was receiving…Doran Wheeler told me then, I did not need to do anything. American Pacific would do everything that needed to be done." [Dkt. No. 1547]. Chelsea Stakkeland Harris states in her response that "…I talked specifically with Doran Wheeler of APFC and was told that I would not need to file any claims because APFC would file them on our behalf." [Dkt. No. 1553]. Marilyn B. Darling writes in her response that "[e]ach time I received a letter I would call for advice from Doran Wheeler, my APF agent. When I

received the paperwork requesting a claim to be filed, he said I didn't need to file that it would be taken care of for me." [Dkt. No. 1564]. The response filed by Monte L. and Kristine E. Hurd has a similar refrain [Dkt. No. 1551].

Joanne Ruhl and Russell Ruhl likewise make similar allegations in their response and attach an email from the Debtor repeatedly stating that there is no need to file a proof of claim in the bankruptcy case [Dkt. No. 1588] (*See* Exhibit "1" email from Debtor dated October 9, 2010 to the Ruhls, stating "Your individual claim is listed on the schedules you will be receiving shortly. As they are filed, **you DO NOT have to file or return the Proof of Claim Form** that was one of the first mailing sent to you by the US Trustee or Law Firm." (emphasis added)).

The Trustee empathizes with these creditors; however, there are other factors that must also be considered. **First**, the representations by the Debtor appear to have been made during the course of the Chapter 11 and before the case was converted to a case under Chapter 7. For example, the email attached as Exhibit "1" to the Ruhl response is dated October 9, 2010. Rule 3002 of the Federal Rules of Bankruptcy Procedure expressly provides that a creditor in a chapter 11 bankruptcy case need not file a proof of claim unless such claim is either not scheduled by the debtor or is scheduled as being disputed, contingent or unliquidated. *See* Rule 3002(b)(1) and (c)(2).

**Second**, there is limited case law addressing the situation where a debtor representative makes a representation relied upon by a creditor in refraining from filing a timely proof of claim. The Trustee only found one such case which was an unreported decision. In *In re Toriello, supra*, the creditors' guardian asserted that when she learned of the bankruptcy after the bar date, she immediately contacted the debtor to question him about the Notice. *In re Toriello*, 2010 Bankr. LEXIS 3543 at *3. She stated the debtor told her "that it was his personal bankruptcy and had nothing to do with" the creditors. *Id.* According to Howell, the debtor's statements caused her to not seek independent legal advice, and, as a result, she did not consult an attorney until late 2009. *Id.* at *3-*4.

After considering the evidence regarding the debtor's purported misleading statements, the court found that the creditors had undisputed notice of the claims bar date with ample time to

act prior to expiration; rather than seek independent legal advice, the creditors' guardian chose to rely solely on the debtor's alleged representations to her, claiming the debtor "actively mislead her as to the legal effect of the bankruptcy case," which the debtor denied. *Id.* at *16. The court also expressed its concern regarding undue delay in the administration of the case, where the Chapter 13 Plan was confirmed and provided for a 100% recovery to creditors. *Id.* at *17. The court noted that the debtors could not make the additional payments to the Jasovskys under the current plan payments, and that a modified plan would have to be considered. *Id.* Ultimately, the court did not find that the interest of justice demanded an extension under the totality of the facts. *Id.*[14]

**Third**, aside from the creditors identified in **Exhibit "C"** as not having received the Notice of Chapter 7, all other creditors appear to have received the Notice of Chapter 7 based on the Certificate of Notice and conforming addresses on the tardily filed proofs of claim.

**Finally**, excusable neglect does not form the basis for treating a tardily filed claim as a timely filed claim in chapter 7 bankruptcy cases.

The Trustee has diligently searched for other exceptions to permit late-filed claims to be treated as timely filed for distribution purposes based on the responses filed by other creditors without any success. *See* Reply of Carol Louise Baker Somerday [Dkt. No. 1538] (missed proof of claim deadline due to extended trip); *see* Reply of Hock C. Hwan and Joseph & Cecilia Colantonio [Dkt. No. 1552] (received numerous filings but did not realize they had to file proof of claim); *see* Reply of Suman Agarwal [Dkt. No. 1499] (around time of claims deadline, Suman Agarwal was out of the country with mother who was seriously ill and eventually passed away). To the extent creditors listed on **Exhibit "D"** rely solely upon excusable neglect as the basis upon which their tardily filed claims should be treated as timely filed, the Trustee cannot find

---

[14] Admittedly the facts in *In re Toriello* are distinguishable from the present case. *In re Toriello* involved a chapter 13 case with a confirmed plan. This case is a Chapter 7 bankruptcy case. Allowing the late-filed claim in *In re Toriello* would affect distributions under a confirmed chapter 13 plan. In this case, the Trustee will be making another sizeable distribution in the next several months and can true-up distributions to all creditors such that all creditors can receive an equal prorate distribution. As a result undue delay is not a factor.

09250-04/1449531_2.doc

1   any legal or equitable support for this proposition. As such the Trustee does not believe that

2   these tardily filed claims can be treated as timely filed for distribution purposes.

3

**H.    Numerous Proofs of Claim Were Filed by Creditors After the Notice for Which the**
4       **Trustee has no Information Upon Which to State a Position.**

5          After the Notice was sent to creditors of record who had filed tardy proofs of claim, a

6   number of other creditors filed first time claims in the case. Between November 14, 2014, and

7   January 8, 2015, twenty (20) creditors filed additional proofs of claim in the case; however, only

8   one of these creditors, Mary Ellen Snedden [Dkt. No. 1716] filed a response to the Notice Order.

9   The Trustee cannot provide the Court with a position regarding these late-filed claims absent

10  additional information from each creditor regarding why he/she filed his/her proof of claim after

11  the Claims Bar Date. The Trustee suggests that the Court set a deadline for these creditors to

12  provide evidence to this Court to explain why these newly filed claims were tardily filed. In the

13  event these creditors demonstrate that they fall within the rubric of one of the permitted

14  exceptions for tardy filed claims, they may be entitled to have their late-filed claims treated as

15  timely filed for distribution purposes.

16                          **III.    CONCLUSION**

17         The Trustee offers his position, reached following analysis and research, for the Court's

18  consideration in determining the appropriate treatment of the tardily filed proofs of claim as set

19  forth above.

20         Dated this 8th day of January, 2015.

21                                          **HOLLEY, DRIGGS, WALCH,**
22                                          **PUZEY & THOMPSON**

23

24                                          Richard F. Holley, Esq. (NV Bar No. 3077)
                                            Ogonna M. Atamoh, Esq. (NV Bar No. 7589)
25                                          400 South Fourth Street, Third Floor
                                            Las Vegas, Nevada 89101
26                                          Telephone:702/791-0308
                                            Facsimile: 702/791-1912

27                                          *Attorneys for Dotan Y. Melech, Chapter 7*
                                            *Trustee*
28

09250-04/1449531_2.doc                            - 19 -

# EXHIBIT "A"

# American Pacific Financial Corporation
## Exhibit A - Tardily Filed Claims

| Claimant | POC No. | Date Filed | Amount | Notes |
|---|---|---|---|---|
| PJ Simpson Revocable Living Trust | 426-2 | 06/20/12 | 15,957.95 | |
| Washburn, Jason | 427-1 | 06/20/12 | 10,344.11 | |
| Rubin, Barbara L. | 432-1 | 06/20/12 | 61,350.68 | |
| Hurd, Monte L. | 457-1 | 06/21/12 | 41,289.41 | |
| Somerday, Carol Louise Baker | 458-1 | 06/21/12 | 57,134.29 | |
| Svedin, Michael Bryce | 459-1 | 06/21/12 | 2,025.70 | |
| Harris, Chelsea Stakkeland | 460-1 | 06/21/12 | 13,547.34 | |
| Svedin, Michael & Melanie | 461-1 | 06/21/12 | 15,247.81 | |
| McClelan Jaggi, Lael R. | 462-1 | 06/21/12 | 10,938.51 | |
| Watson, Linda | 463-1 | 06/21/12 | 28,311.63 | |
| Darling, Donald & Marilyn | 464-1 | 06/21/12 | 703,628.64 | |
| Scheider, Margaret | 467-1 | 06/22/12 | 23,213.60 | |
| Colantonio, Joseph & Cecilia | 468-1 | 06/22/12 | 102,095.89 | |
| Hwan, Hock C. | 469-1 | 06/22/12 | 156,995.39 | |
| Greer, Mabel | 470-1 | 06/25/12 | 186,472.59 | |
| James Inman Family Revocable Trust | 471-1 | 06/27/12 | 104,325.55 | |
| Rogers, Gene A. | 472-1 | 06/26/12 | 193,205.65 | |
| Susan M. Schrecengost Trust | 474-1 | 07/05/12 | 49,876.71 | |
| Nickel, Frank H. | 475-1 | 07/05/12 | 150,000.00 | |
| Williams, Mark & Sandra | 476-1 | 07/09/12 | 76,265.02 | 1 |
| McIntyre, Lee | 477-1 | 07/11/12 | 96,748.40 | |
| Gus F. Nelson U Cr Trust | 478-1 | 07/11/12 | 406,343.22 | |
| Stafford, Brandi | 479-1 | 07/11/12 | 8,010.29 | |
| White, Mark & Elisa | 480-1 | 07/16/12 | 27,420.92 | |
| Zinner Trust | 485-1 | 05/06/13 | 522,653.62 | |
| Darling, Cynthia | 486-1 | 05/06/13 | 53,966.69 | |
| Barnett, Rosemarie | 487-1 | 05/08/13 | 80,062.88 | |
| Baca, Linda | 488-1 | 05/13/13 | 127,810.67 | |
| Ruhl, Russell H. & Joanne M. | 490-2 | 03/14/14 | 2,498,012.00 | 2 |
| Bhattacharyya, Swatsi | 491-1 | 05/28/13 | 9,746.99 | |
| Agarwal, Suman | 496-1 | 09/22/14 | - | 3 |
| Suman Agarwal Suv Tst 1999 | 497-1 | 09/24/14 | 110,500.00 | 4 |
| Crandall, Bradley J. | 499-1 | 09/30/14 | 11,289.55 | |
| J Stevenon Estate | 500-1 | 09/30/14 | 33,305.34 | |
| Alberta Lou Manzo Estate | 501-1 | 10/06/14 | 51,348.26 | |
| Snedden, Mary | 502-1 | 11/14/14 | 119,485.73 | |
| Kasamoto, Randal | 506-1 | 11/17/14 | 138,000.00 | 5 |
| Jones, B. Allan & Lillian | 507-1 | 12/01/14 | 15,367.39 | 6 |
| Jones, B. Allan | 508-1 | 12/01/14 | 30,250.00 | 5 |
| Jones, Lillian | 509-1 | 12/01/14 | 39,500.00 | 5 |
| Jones, B. Allan | 510-1 | 12/01/14 | 30,250.00 | 5 |
| Mark W. and Mary F. Thompson Trust | 511-1 | 12/01/14 | 109,908.00 | |
| Thomason, Robert E. & Valerie Anne | 512-1 | 12/01/14 | 265,876.71 | |
| Walborn, Larry | 513-1 | 12/03/14 | 200,000.00 | 6 |
| Rdzak, Alecia J. | 514-1 | 12/03/14 | 49,750.00 | 7 |
| Williams, Mark & Sandra | 515-1 | 12/02/14 | 76,265.02 | 1 |
| Grob, Stephen F. and Oki | 516-1 | 12/03/14 | 200,000.00 | 7 |
| Slowik, Paul and Sharon | 517-1 | 12/05/14 | 180,661.64 | |

# American Pacific Financial Corporation

## Exhibit A - Tardily Filed Claims

| Claimant | POC No. | Date Filed | Amount | Notes |
|---|---|---|---|---|
| Elllen Kaye Svedin Trust | 518-1 | 12/05/14 | 10,000.00 | |
| Vinyard, Nona | 519-1 | 12/09/14 | 157,500.00 | 7 |
| Knerr, Kurt N. | 520-1 | 12/15/14 | 59,489.06 | |
| Borden, Alpha Lynette | 521-1 | 01/06/15 | 30,605.00 | |
| Ludwig, Catherine | 522-2 | 01/06/15 | 15,647.00 | |
| Kruggel, Carolyn | 523-1 | 01/07/15 | 44,861.00 | 8 |
| Kruggel, Carolyn | 523-2 | 01/07/15 | 44,861.00 | 8 |
| Kruggel, Carolyn | 524-1 | 01/07/15 | 59,237.00 | 8 |
| Kruggel, Carolyn | 524-2 | 01/07/15 | 59,237.00 | 8 |
| **TOTAL** | | | 7,812,862.44 | |

Notes:

1. Claims 476-1 and 515-1 are duplicate claims.

2. A stipulation was entered into between the Trustee and claimant [Dkt. No. 1489] whereby Claim 490-2 shall be allowed as a general unsecured claim for Russell H. Ruhl in the amount of $569,925.85 and that Claim 490-2 shall be allowed as a general unsecured claim for Norma V. Ruhl in the amount of $275,000.00. An order has not yet been entered approving the stipulation.  This stipulation did not address the tardily filed claim issue.

3. The Court's deficiency notice indicated that Claim 496-1 was deficient because it did not include a proper proof of claim form.  Claimant subsequently filed claim 497-1.

4. The Court's deficiency notice indicated that Claim 497-1 was deficient because it did not include an original signature.

5. The full amounts of Claims 506-1, 508-1, 509-1 and 510-1 are for claimants' investments in American Pacific Financial Group II, Ltd. (APFG II), which itself holds an allowed claim on behalf of its investors. Therefore, Claims 506-1, 508-1, 509-1 and 510-2 are duplicative of APFG II's claim and are not allowable against the Debtor. Also, Claims 508-1 and 510-1 are duplicate claims.

6. Claim 507-1 and a portion of Claim 513-1 were filed as secured claims; however, claimants do not have a security interest in any asset owned by the Debtor and, therefore, any allowed claims are unsecured.

7. The full amounts of Claims 514-1 and 516-1 and a portion of Claim 519-1 ($57,500) are for claimants' investments in American Pacific Financial Group, Ltd. (APFG), which itself holds an allowed claim on behalf of its investors. Therefore, Claims 514-1 and 516-1 and $57,500 of Claim 519-1 are duplicative of APFG's claim and are not allowable against the Debtor.

8. Claim 523-2 amends Claim 523-1 and Claim 524-2 amends Claim 524-1. Claim 524-2 appears to be a claim for an investment in American Pacific Financial Group, Ltd. and other amounts for which the Debtor is not liable and/or are duplicative of the amounts included in Claim 523-2.

# EXHIBIT "B"

American Pacific Financial Corporation

**Exhibit "B"** – Creditors with Late Filed Claims who Failed to File a Response
Pursuant to the Notice Order

| Claimant | POC No. | Date Filed | Amount |
|---|---|---|---|
| PJ Simpson Revocable Living Trust | 426-2 | 06/20/12 | $15,957.95 |
| Washburn, Jason | 427-1 | 06/20/12 | $10,344.11 |
| McClelan Jaggi, Lael R. | 462-1 | 06/21/12 | $10,938.51 |
| Watson, Linda | 463-1 | 06/21/12 | $28,311.63 |
| Scheider, Margaret | 467-1 | 06/22/12 | $23,213.60 |
| Nickel, Frank H. | 475-1 | 07/05/12 | $150,000.00 |
| Barnett, Rosemarie | 487-1 | 05/08/13 | $80,062.88 |
| Bhattacharyya, Swatsi | 491-1 | 05/28/13 | $9,746.99 |
| Crandall, Bradley J. | 499-1 | 09/30/14 | $11,289.55 |
| J Stevenon Estate | 500-1 | 09/30/14 | $33,305.34 |
| Alberta Lou Manzo Estate | 501-1 | 10/06/14 | $51,348.26 |

# EXHIBIT "C"

American Pacific Financial Corporation

**Exhibit "C"** – Due Process
(Addresses on Proof of Claims Filed do not Match Address for Mailing Matrix on
Notice of Conversion of Case)

| Claimant | POC No. | Date Filed | Amount |
|---|---|---|---|
| Harris, Chelsea Stakkeland[*] | 460-1 | 06/21/12 | $13,547.93 |
| Colantonio, Joseph & Cecilia[*] | 468-1 | 06/22/12 | $102,095.89 |
| Hwan, Hock C.[*] | 469-1 | 06/22/12 | $156,995.39 |
| McIntyre, Lee[*] | 477-1 | 07/11/12 | $96,748.40 |
| Stafford, Brandi[*] | 479-1 | 07/11/12 | $8,010.29 |
| Baca, Linda[*] | 488-1 | 05/13/13 | $127,810.67 |
| Walborn, Larry | 513-1 | 12/03/14 | $200,000.00 |
| Kasamoto, Randal[†] | 506-1 | 11/17/14 | $138,000.00 |
| Rdzak. Alecia J.[‡] | 514-1 | 12/03/14 | $49,750.00 |

---

[*] Filed responses to Notice of Untimely file Proof of claims.

[†] Randal Kasamoto does not appear on the mailing matrix for the Notice of Chapter 7 Case. Mr. Kasamoto is actually a creditor of American Pacific Financial Group II, Ltd. and not a creditor of APFC.

[‡] Alecia J. Rdzak does not appear on the mailing matrix for the Notice of Chapter 7 Case. Mrs. Rdzak is actually a creditor of American Financial Group, Ltd. and not a creditor of APFC.

# EXHIBIT "D"

American Pacific Financial Corporation

**Exhibit "D" – Excusable Neglect**

| Claimant | POC No(s). | POC File Date | Reply Dkt. No. | Date Reply Filed | Amount |
|---|---|---|---|---|---|
| Suman Ararwal and Suman Agarwal Suv Trust 1999 | 496-1 and 497-1 | 09/22/14 and 09/24/14 | 1499 and 1560 | 11/13/14 | $110,500.00 |
| Carol Louise Baker Somerday | 458-1 | 06/21/12 | 1538 | 11/24/14 | $57,134.29 |
| Susan M. Schrecengost Trust | 474-1 | 07/05/12 | 1539 | 11/24/14 | $49,876.71 |
| Michael & Melanie Svedin | 461-1 | 06/21/12 | 1547 | 11/25/14 | $15,247.81 |
| Kristine E. Hurd and Monte L. Hurd | 457-1 | 06/21/12 | 1551 | 12/01/14 | $41,289.41 |
| Joseph & Cecilia Colantonio | 468-1 | 06/22/12 | 1552 | 11/26/14 | $102,095.89 |
| Hock C. Hwan | 469-1 | 06/22/12 | 1552 | 11/26/14 | $156,995.39 |
| Harris, Chelsea Stakkeland | 460-1 | 06/21/12 | 1553 | 12/02/12 | $13,547.93 |
| Darlys Jean Robertson | 470-1 | 06/25/12 | 1556 | 12/01/14 | $186,472.59 |
| Barbara Rubin | 432-1 | 06/20/12 | 1557 | 12/01/14 | $61,350.68 |
| Ellen Kaye Svedin Trust | 518-1 | 12/05/14 | 1558 | 12/01/14 | $10,000.00 |
| Michael Bryce Svedin | 459-1 | 06/21/12 | 1558 | 12/01/14 | $2,025.70 |
| Sandra E.S. Williams and Mark Williams | 476-1 and 515-1 | 07/09/12 and 12/02/14 | 1561 | 12/02/14 | $76,265.02 |
| Elisa White and Mark White | 480-1 | 07/16/12 | 1562 | 12/02/14 | $27,420.92 |
| Cynthia Darling | 486-1 | 05/06/13 | 1563 | 12/03/14 | $53,966.69 |
| Marilyn B. Darling | 464-1 | 06/21/12 | 1564 | 12/03/14 | $703,628.64 |
| Russell H. Ruhl | 490-2 | 03/14/14 | 1588 | 12/05/14 | $2,498,012.00[1] |

---

[1] A stipulation was entered into between the Trustee and claimant [Dkt. No. 1489] whereby Claim 490-2 shall be allowed as a general unsecured claim for Russell H. Ruhl in the amount of $569,925.85 and that Claim 490-2 shall be allowed as a general unsecured claim for Norma V. Ruhl in the amount of $275,000.00. An order has not yet been entered approving the stipulation. This stipulation did not address the tardily filed claim issue.

## **CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of Holley, Driggs, Walch, Puzey & Thompson, and that on the 8th day of January, 2015, I caused to be served a true and correct copy of TRUSTEE'S POSITION RE CREDITOR RESPONSES TO TRUSTEE'S MOTION TO APPROVE NOTICE TO HOLDERS OF TARDILY FILED CLAIMS AND TO ESTABLISH A DEADLINE FOR SUCH CLAIMANTS TO SUBMIT EVIDENCE THAT THEY DID NOT HAVE NOTICE OR ACTUAL KNOWLEDGE OF CASE IN TIME TO FILE A TIMELY PROOF OF CLAIM (ECF NO. 1471) in the following manner:

☒ (ELECTRONIC SERVICE) Under Administrative Order 02-1 (Rev. 8-31-04) of the United States Bankruptcy Court for the District of Nevada, the above-referenced document was electronically filed on the date hereof and served through the Notice of Electronic Filing automatically generated by that Court's facilities.

☐ (UNITED STATES MAIL) By depositing a copy of the above-referenced document for mailing in the United States Mail, first class postage prepaid, at Las Vegas, Nevada, to the parties listed on the attached service list, at their last known mailing addresses, on the date above written.

☐ (OVERNIGHT COURIER) By depositing a true and correct copy of the above-referenced document for overnight delivery via Federal Express, at a collection facility maintained for such purpose, addressed to the parties on the attached service list, at their last known delivery address, on the date above written.

☐ (FACSIMILE) That I served a true and correct copy of the above-referenced document via facsimile, to the facsimile numbers indicated, to those persons listed on the attached service list, on the date above written.

An employee of Holley, Driggs, Walch, Puzey & Thompson

09250-04/1449531_2.doc